IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-687 |
| | ) | |
| BENLIN YUAN and | ) | Hon. Kenneth M. Hoyt |
| FANYUE GONG, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BENLIN YUAN'S OPPOSED
MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO COMPEL**

For weeks on end, Benlin Yuan has endeavored to secure critical discovery from the government, including items that Rule 16 requires be produced. But in the face of the government's intransigence, his efforts have mostly proved fruitless. Now, with the trial scheduled to begin in just four weeks, the government's continued inability or unwillingness to provide Mr. Yuan with the massive amounts of data that remain outstanding has blown past mere discourtesy and inconvenience and risen instead to the level of actual prejudice, which at this point neither an admonishment nor a continuance can cure. The appropriate remedy in this circumstance is exclusion of the missing evidence. And if not that, only a motion to compel with real teeth stands any chance of engendering a long overdue course correction by the government.

**RELEVANT BACKGROUND**

The government's consistently nonchalant approach to discovery in this case continues to perplex and prejudice Mr. Yuan. In his first motion to compel, Mr. Yuan enumerated his counsel's repeated, unavailing efforts to obtain a single piece of discovery—or even a simple response to an email—from government counsel. *See* Dkt. 62 at 2–4. It was not until January 29, 2026—*i.e.*, more than 40 days after Mr. Yuan's indictment and three days after the Court's then-operative pretrial-

motions deadline—that the government finally deigned to begin making discovery available to the defense. The government proceeded to dump on the defense a massive jumble of confusingly organized, incomplete, and often inaccessible discovery. Since then, the government has largely reverted to reticence, refusing to rectify these deficiencies promptly (if at all) or, once again, even to respond to most emails. This is no longer surprising, but it remains shocking.

### A.     The Inaccessibility of Discovery Provided by the Government

In terms of the data storage capacity that they demand, the government's discovery productions to date, which when combined top out at more than two terabytes, have been voluminous. They have not, however, been easily digestible. In part that is because of their disorganization. The government has not provided a conventional log indicating what it is turning over, nor has it Bates-stamped the documentary records it has produced. Instead, the government has merely provided vague, unintuitive folder structures that often raise more questions than they answer. Here is a representative example:



And another:



In the government's through-the-looking-glass view, this is "self-explanatory."

Although it might not be a model of organization, much of the discovery is accessible in the literal sense of being downloadable, searchable, and reviewable. But not all of it. Indeed, there are numerous files, including, among other things, data that the government extracted from Mr. Yuan's electronic devices, that the defense still cannot review nearly *three months* after the government's belated productions began and notwithstanding the government's obligation under Rule 16(a)(1)(E) to provide it.[1] Email chains between counsel for Mr. Yuan and counsel for the government tell the tale of the obstacles that the defense has confronted and the impasse at which Mr. Yuan finds himself because of the government's powerlessness to produce discovery promptly in a form that permits it to be reviewed by his attorneys and allows him to be prepared for his fast-approaching trial. *See* Exs. A, B.

In the same vein, at trial, Mr. Yuan anticipates that the government, during its case-in-chief, will call the individual identified in the complaint affidavit as Cooperating Witness-1 ("CW-1"). The government has "produced" over seven months' worth of text correspondence between the lead case agent and CW-1 not by downloading and providing it in its native form or even by

---

[1] The government seized from Mr. Yuan two Lenovo ThinkPad X1 laptops, an Apple iPhone, and a SanDisk USB drive. The government refers to the laptops as the "Camiwell ThinkPad" and the "Supsyc ThinkPad." The government was able to extract data from the former but not from the latter. The government previously produced the data from the Camiwell ThinkPad, but it was in an unusable format. The same goes for the data that the government obtained from Mr. Yuan's SanDisk USB drive. Since March 8, 2026, defense counsel have repeatedly asked the government to re-produce these datasets in a useable format, and on April 7, 2026, the defense provided the government with an external hard drive to facilitate the government's compliance with its discovery obligations. On April 17, 2026, after multiple requests to provide the long overdue data, the government notified defense counsel that a hard drive was ready to be retrieved from the U.S. Attorney's Office. Yet the cover letter accompanying the hard drive inexplicably suggests that *none* of the sought after data is actually on the hard drive. As of this motion's submission, government counsel have not responded to defense counsel's request for clarification. At any rate, the bottom line is that the defense still has not received the data, which combined totals nearly one terabyte.

turning over screenshots but instead by giving the defense an approximately two-minute-long videorecording of the agent's phone as he scrolls through the messages. Not only does this make reading those messages very difficult, it fails to reveal the timestamps for most of the correspondence and it prevents the defense from making ready use of the messages at trial.[2]

### B.      An Aborted Meet-and-Confer

On April 1, 2026, defense counsel asked counsel for the government and Mr. Yuan's co-defendant, Fanyue Gong, for a telephonic meet-and-confer in advance of anticipated motions practice. *See* Ex. C. Government counsel asked to be able to review the draft motions on which defense counsel were working in advance of the call. *See id.* The next day, having not received any motion drafts, the government unilaterally attempted to cancel the meeting. *See id.* In response, defense counsel explained: "We request these kinds of calls as courtesies to you and your team – and with the hope that we can resolve disputes without the court. However, we rarely share our motions with counsel before we file them. We hope you will reconsider and join the call as scheduled[.]" *Id.* At the appointed time for the meet-and-confer, counsel for Mr. Yuan and Mr. Gong joined the call; no attorney for the government deigned to participate.

### LEGAL STANDARD

Courts enjoy broad discretion in determining how best to remediate a party's failure to comply with Rule 16's provisions. *See* Fed. R. Crim. P. 16(d)(2). Before employing sanctions, however, a court "must carefully weigh several factors." *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000). In particular, the court must consider: "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice

---

[2] The case agent pledged that he would try to remedy this problem. But that was two weeks ago, and, once again, the defense is left empty handed.

with a continuance of the trial; and 4) any other relevant circumstances." *Id.* Ultimately, "[i]f the district court decides to sanction a party, it 'should impose the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders.'" *United States v. Swenson*, 894 F.3d 677, 684 (5th Cir. 2018) (quoting *Garrett*, 238 F.3d at 298).

## ARGUMENT

Despite the government having had months to produce it, and with trial less than a month away, there is a substantial amount of discovery to which Mr. Yuan is entitled but that he has yet to receive. Were the government to dump this long-sought discovery on him now, Mr. Yuan would be hard-pressed to make any meaningful use of it in just a few weeks' time. Lest the Court inadvertently encourage this sort of sandbagging in future cases, a sanction should be imposed. Here, the just remedy is exclusion of the evidence. If not that, then the Court should at a minimum instruct the government to produce the missing discovery immediately (and, in so doing, make clear that a more draconian sanction, like dismissal, awaits further foot dragging).

**A.  At this juncture, the Court should preclude the government from introducing any evidence that Mr. Yuan is entitled to receive but which he has not been given.**

Plainly, the Court has the authority to exclude the undisclosed evidence. *See* Fed. R. Crim. P. 16(d)(2)(C) ("If a party fails to comply with this rule, the court may . . . prohibit that party from introducing the undisclosed evidence[.]"); *United States v. Gray-Burriss*, 791 F.3d 50, 55 (D.C. Cir. 2015) ("Rule 16 gives trial judges the option of suppressing evidence as a result of [a party's] discovery violation[.]" (internal quotation marks omitted)); *United States v. Hardy*, 586 F.3d 1040, 1045 (6th Cir. 2009) (affirming exclusion of evidence based on Rule 16 violation); *United States v. Young*, 248 F.3d 260, 270 (4th Cir. 2001) ("Exclusion of undisclosed evidence is a permissible sanction for a violation of Rule 16."). Here, the *Garrett* factors support such relief.

*First*, there are no legitimate or innocuous explanations for the government's extreme delay, particularly in light of defense counsel's repeated requests and reminders. *Second*, Mr. Yuan has been prejudiced by the government's dilatoriness insofar as there remains inadequate time before trial for him to process, load, and review the massive amount of data that has not been provided to him in an accessible format. *Third*, whereas the best "least severe sanction" for a Rule 16 violation is sometimes a continuance of the trial date, that is not so here. Mr. Yuan has unfailingly asserted his right to a speedy trial; to give the government more time would undermine that constitutionally and statutorily enshrined prerogative. Moreover, consider the consequences of a continuance. A bailout from the Court would perversely incentivize the government in future cases to do what it has done here—*i.e.*, slow play the provision of discovery in the hope of securing an eleventh-hour continuance—rather than encourage it to be ready to try the cases it indicts. *Cf. United States v. Sims*, 776 F.3d 583, 586 (8th Cir. 2015) ("Although it is possible, as the government suggests, that a continuance would have alleviated some of the prejudice to Sims, the district court reasonably concluded that a lesser sanction would not 'secure future compliance' with court orders. Though the district court did not have to remedy the situation by excluding the evidence and could have imposed an alternative sanction, the court had discretion to impose the sanction it did.").

**B.     If the Court elects not to exclude the evidence, it should at a minimum compel the government to produce it in a useable form immediately.**

The authorities from which the government's discovery obligations emanate do not dictate a particular format in which responsive information and material must be disclosed. But it is apparent that disclosure in a form the defense cannot reasonably access is disclosure in name only and undermines the due-process and general equitable interests that those authorities seek to protect.

6

Where the government's discovery is inaccessible to the defense, the Federal Rules empower courts to intervene. *See* Fed. R. Crim. P. 16.1(b) (providing that after the parties' discovery conference occurs, a court has broad discretion to "determine or modify the time, place, manner, or other aspects of [discovery] to facilitate preparation for trial"); *see also* Fed. R. Crim. P. 16.1 advisory committee's note ("The [discovery conference] requirement is particularly important in cases involving electronically stored information (ESI) or other voluminous or complex discovery."); Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").[3]

The need for such intercession is especially urgent in this case, given that some of the discovery that the defense cannot review "was obtained from or belongs to" Mr. Yuan, making its production (in a usable form) mandatory. Fed. R. Crim. P. 16(a)(1)(E)(iii). The same goes for CW-1's text correspondence with the lead case agent, which is discoverable pursuant to the Jencks Act (if not also *Giglio* and Rule 16).

In the absence of relief from the Court, the government's effective violation of Rule 16 will persist. Accordingly, the Court should order the government, on pain of dismissal should it not promptly comply, to reproduce in usable format all discovery previously produced in forms that the defense cannot access or meaningfully review. Specifically:

- all phone data currently produced in Magnet Axiom or OpenCase format shall be reproduced in UFDR format, consistent with other phone data the government has produced;

---

[3] As noted above, Rule 16 does not spell out file-format requirements, but courts have looked to the Federal Rules of Civil Procedure to divine sensible ESI management principles in criminal matters. *See, e.g.*, *United States v. O'Keefe*, 537 F. Supp. 2d 14, 19–23 (D.D.C. 2008) (invoking Rule 34(b)(2)(E)). Those Rules provide that in the absence of a request specifying a particular form for the production of ESI, "a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii).

- all laptop and computer data currently produced in Magnet Axiom Portable Case or OpenCase format shall be reproduced in E01 format, consistent with other laptop data the government has produced. The data sources subject to this provision include, without limitation:

    o AXIOM – Jan21 2026 163424;

    o SSD Drive\LI0003 Laptop\UNFILTERED\Portable Case;

    o SSD Drive\LI0003 Laptop\Filtered Laptop;

    o SSD Drive\LI0004 Thumbdrive\Portable Case; and

    o Phone Data.

- the text message correspondence between Special Agent Tyler Fox and CW-1, reflected in the video named "SA Fox & [REDACTED] Messages (5JAN26)," shall be reproduced in a reviewable format that includes timestamps and allows the defense to make use of the evidence at trial.

To the extent this imposes any burden on the government, it is a burden of the government's making. The government chose to indict Mr. Yuan—it must equip him to defend himself by at once producing in a usable form the voluminous discovery that the government has had a months-long headstart in reviewing.

## **CONCLUSION**

For the reasons stated, the Court should grant this motion and preclude the government from introducing any of the evidence enumerated above. Alternatively, the Court should enter an order compelling the government to produce the materials without delay, or else face dismissal.

8

Respectfully submitted,

/s/ Alexander E. Blanchard
John L. Brownlee (*pro hac vice*)
Ashley Akers (*pro hac vice*)
Alexander E. Blanchard (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8600

Samuel J. Louis
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone: (713) 821-7000

Hannah Myslik Maloney
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
Phone: (512) 647-4391

*Counsel for Benlin Yuan*

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I filed the foregoing electronically using the Court's

CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard

## CERTIFICATE OF CONSULTATION

Based on the foregoing, it is safe to say that the government opposes the relief requested

by this motion.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard