IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-687 |
| | ) | |
| BENLIN YUAN and | ) | Hon. Kenneth M. Hoyt |
| FANYUE GONG, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT BENLIN YUAN'S MOTION *IN LIMINE* TO EXCLUDE THIRD-PARTY WECHAT MESSAGES AS INADMISSIBLE HEARSAY

The affidavit supporting the complaint by which the government initially charged Benlin Yuan is rife with excerpts from messages exchanged over WeChat, a popular Chinese application for, among other things, instant messaging. Recent filings confirm what the complaint affidavit foreshadowed: the government intends to make its case largely by moving for the admission of these WeChat messages en masse. *See, e.g.*, Dkt. 123-1 (enumerating collections of WeChat messages that the government's putative Chinese language expert has translated into English).

Critically, though, Mr. Yuan is at best a peripheral figure in these messages—indeed, he is not even a party to most of the group chats that the government will attempt to introduce, and where he is a member of the group, the government has no way of showing in most instances whether Mr. Yuan even read, much less ratified, what others were writing. Moreover, not even the government knows who several of the individuals among the shifting set of participants in the group chats are, and with one exception (namely, the government's cooperating witness), the users that the government has been able to identify will not be testifying at trial, either because they lie beyond the reach of this Court's subpoena power or because their whereabouts are unknown.

No exception to the rule against hearsay applies to the WeChat messages. The government's only hope of getting them into evidence is to argue that these out-of-court statements offered for their truth are not hearsay at all but rather qualify as Mr. Yuan's statements under Federal Rule of Evidence 801(d)(2)(E) because they were made by his alleged co-conspirators. This is a bridge too far. The government cannot show, as it must, that the WeChat messages were sent during and in furtherance of a single conspiracy of which he and the assortment of other WeChat users were members. Therefore, pursuant to Federal Rule of Evidence 104(a), the Court should preclude the government from introducing the WeChat messages of all parties, except those of Mr. Yuan, at trial.

## RELEVANT BACKGROUND

The WeChat messages come from two sources: an Apple iPhone that the government seized from Mr. Yuan, and the cooperating witness' phone. In both cases, the government photographed native WeChat messages on the phones to capture select content and then had the Mandarin portions of the communications translated into English before marrying the two to create the exhibits that the government seeks to admit at trial.[1]

The government's WeChat exhibits primarily consist of group chats—*i.e.*, running, mostly written conversations in Mandarin in which three or more users send text messages to one another. Some of the group chats selectively excerpted by the government are relatively succinct, consisting of only a handful of communications, while others are lengthy, spanning several weeks. Some of these group chats have just a few participants while others have many. In some of the government's

---

[1] Contemporaneously with this motion's submission, Mr. Yuan is moving to suppress the contents of his iPhone, including WeChat messages located therein, and moving to exclude the WeChat messages obtained from the cooperating witness' phone. Depending on how the Court rules on those motions, the instant motion could be mooted, either partially or entirely.

exhibits, the group chat's membership is static while other exhibits feature the addition of new members over time. According to the government's taxonomy, some of the WeChat participants are co-conspirators; others are "unidentified users"; and the remainder evidently merit no designation. Ultimately, the government does not know the true identities of any of the WeChat users (save for Mr. Yuan and the cooperating witness), although that is to be expected when so many of them have inscrutable names, such as "Micoo" and "Blanc," or in the case of one user, just a series of dots:



## **LEGAL STANDARD**

Rule 801(d)(2)(E) treats statements made by a party's co-conspirator during and in furtherance of the conspiracy as party statements, and thus admissible even if hearsay, when offered by the opposing party. It is a "very narrow exception to the hearsay rule." *United States v. Pineda-Ortuno*, 952 F.2d 98, 105 (5th Cir. 1992). Indeed, Rule 801(d)(2)(E) was intended as a check on the admissibility of co-conspirator statements. *See Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir. 1989) ("Rule 801(d)(2)(E) requires that, in order to be admissible, a coconspirator's statement must have been made 'during the course and in furtherance of the conspiracy.' This is a *limitation* on the admissibility of coconspirators' statements that is meant to be taken seriously."); *see also Dutton v. Evans*, 400 U.S. 74, 82 (1970) ("[T]he limited scope of the hearsay exception in federal conspiracy trials is a product . . . of the Court's disfavor of attempts to broaden the

already pervasive and wide-sweeping nets of conspiracy prosecutions." (internal quotation marks and citation omitted)).

"Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). This requires the court to make specific findings. *See United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992) ("This case strayed off the procedural track in that the court never made any findings as to the predicate facts under Rule 801(d)(2)(E)."). Ultimately, to admit a statement under Rule 801(d)(2)(E), the government must "prove by a preponderance of the evidence (1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy." *United States v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011) (internal quotation marks and citation omitted).

## **ARGUMENT**

The government is incapable of satisfying its obligation to show that the WeChat messages (other than those it can prove were sent by Mr. Yuan) meet the Rule 801(d)(2)(E) criteria. As such, they constitute hearsay. And because no exception to the rule against hearsay is applicable to them, the remaining WeChat messages are inadmissible. The Court should therefore exclude them.

**I.     Unless they were sent by Mr. Yuan, the WeChat messages are not party-opponent statements and are therefore hearsay.**

To admit the WeChat messages sent by users other than Mr. Yuan, the government must show by a preponderance of the evidence the existence of a conspiracy and, with respect to each message, that the statement within it was made (1) by a co-conspirator of Mr. Yuan, (2) during the course of the conspiracy, and (3) in furtherance of the conspiracy. *See El-Mezain*, 664 F.3d at 502;

*United States v. Thomas*, No. 7:23-CR-00481-NSR-1, 2025 WL 2860312, at *9 (S.D.N.Y. Oct. 9, 2025) ("While the Government's proffer suggests that certain communications may fall within [Rule 801(d)(2)(E)], admissibility must be evaluated on a statement-by-statement basis, with sufficient foundation established for each."). Because the government fails to clear this bar, the WeChat messages are hearsay.

> **A.    The government fails to carry its burden of adducing evidence beyond the WeChat messages themselves to demonstrate the existence of a conspiracy of which Mr. Yuan and the other WeChat users were members.**

A threshold requirement for a statement's qualification under Rule 801(d)(2)(E) is that the declarant and the party against whom the statement is offered are *members* of the *same* conspiracy. *See United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002) ("As a general proposition, the statements of a non-conspirator are not admissible under Rule 801(d)(2)(E)."). "[M]ere association with co-conspirators . . . or knowledge that something illegal is going on is insufficient to establish membership in a conspiracy under the [Rule 801(d)(2)(E)] standard." *United States v. Williams*, 798 F.2d 1024, 1028 (7th Cir. 1986). Instead, "when determining whether a conspiracy existed under Rule 801(d)(2)(E), the key is coordinated action." *United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022) (cleaned up).

To be sure, for purposes of Rule 801(d)(2)(E), the objective of the conspiracy need not be criminal. *See El-Mezain*, 664 F.3d at 502. There must, however, be a common goal. *See* 30B Jeffrey Bellin, *Federal Practice and Procedure* § 6778 (2026 ed.) ("[S]ome specificity of objective is required to activate the agency fiction that motivates the rule."); *see also United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999) ("It is the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E) in the first place—organized crime membership alone does not suffice.").

To demonstrate these criteria—two or more people endeavoring to achieve a mutually understood and desired ambition—requires the government to proffer more than just the statements that it contends satisfy Rule 801(d)(2)(E). *See* Fed. R. Evid. 801(d)(2) (providing that the statement at issue "must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it"). This requirement for more corroborating proof than just the hearsay statements themselves recognizes that those statements "are presumptively unreliable." *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996).

Here, the government sweeps up all of the conduct covered by its investigation, spanning roughly two years, and lumps it into a single conspiracy. But that is too facile. The facts instead reveal several different conspiracies involving different sets of individuals—conspiracies to acquire wholesale GPUs under false pretenses, to ship and store GPUs around the country, to affix fake labels to GPUs, to attempt to export GPUs, etc.—all with a common denominator: none involve Mr. Yuan. The complaint affidavit supports this understanding and undermines the government's position that all of the WeChat messages are non-hearsay under Rule 801(d)(2)(E)— if, as the government maintains, there was one big, all-encompassing conspiracy and membership in these WeChat groups is evidence of participation in that conspiracy, why does the government only classify some of the WeChat users as co-conspirators? The government's selective application of that designation speaks volumes.

While Mr. Yuan was included in three WeChat groups that the government contends have evidentiary value, even a cursory glance at them reveals the innocuousness of Mr. Yuan's role— his participation in one work-related group predated the events at issue in this case, and he only "joined" the other two groups because he was added to them by his superiors in China. Regarding the latter two groups, Mr. Yuan barely interacted with the other members of one of the groups, and

in the other, he did not write a word. Mere proximity to a conspiracy is inadequate to join it. *See United States v. Sanchez*, 634 F.2d 938, 941 (5th Cir. 1981). Rather, as noted, "the key is coordinated action." *Musaibli*, 42 F.4th at 615. Here, the evidence of such is utterly lacking. Indeed, all that the government has are the attenuated WeChat messages themselves. But that, as the Fifth Circuit has stated, is not enough. *See El-Mezain*, 664 F.3d at 502 ("The content of the statement may be considered as part of the analysis, but there must also be independent evidence establishing the factual predicates for Rule 801(d)(2)(E).").

**B.       The government fails to carry its burden of demonstrating that the WeChat messages were all sent during a conspiracy of which he was a member.**

As just articulated, the facts of this case reveal myriad agreements among collections of individuals, some of whom communicated with one another over WeChat. But the majority of those "conspiracies" had nothing to do with Mr. Yuan. Any appropriately defined agreements to which Mr. Yuan was a party (*e.g.*, his agreement to help coordinate an out-of-state inventory check of unspecified merchandise at the behest of superiors in China, or his agreement to allow unspecified computer spare parts to be stored temporarily at Asiacom Americas' office), were highly circumscribed, both temporally and in terms of the number of individuals who arguably shared a common goal regarding those agreements.

The government offers a boundless definition of its conspiracy, claiming that it includes the general effort by anyone, anywhere, at anytime to smuggle Nvidia GPUs out of the United States. For reasons discussed in this motion and elsewhere, Mr. Yuan disputes this construction of the relevant conspiracy, which is obviously significant. *See United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993) ("In light of the [Supreme] Court's expressed concern that conspiracy prosecutions not be further broadened, a court must carefully ascertain the nature and extent of a conspiracy in determining whether acts or statements can properly be viewed as made during its

existence." (citing *Grunewald v. United States*, 353 U.S. 391, 404 (1957)). But even if this Court were to accept the government's limitless interpretation of its conspiracy, a substantial portion of the WeChat messages should still be excluded because they postdate the conspiracy's failure. *See* Fed. R. Evid. 801(d)(2)(E) advisory committee's note ("The rule is consistent with the position of the Supreme Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved." (citing *Wong Sun v. United States*, 371 U.S. 471 (1963); *Krulewitch v. United States*, 336 U.S. 440 (1949)).[2]

Regarding the GPUs being stored at the warehouse in New Jersey, that failure occurred on May 13, 2025, when the government detained them (and certainly by May 28, 2025, when the government revealed that fact). As for the GPUs that were temporarily stored at Asiacom Americas' office, that failure occurred on June 6, 2025, when those GPUs were interdicted by law enforcement. Because WeChat messages sent after these points in connection with the two batches of GPUs contain statements that were not made "during . . . the conspiracy," Fed. R. Evid. 801(d)(2)(E), they cannot qualify as co-conspirator statements.

### C. The government fails to carry its burden of showing that the WeChat messages were sent in furtherance of a conspiracy of which he was a member.

A statement written by a party's co-conspirator during the conspiracy is not admissible as non-hearsay unless the statement is "in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E); *see also United States v. McConnell*, 988 F.2d 530, 533 (5th Cir. 1993) ("Mere conversation between conspirators is not admissible under the exception."). A statement is in furtherance of the

---

[2] To be sure, conspiracy law does not contain an "automatic termination" rule whereby a conspiracy necessarily ends when its object becomes impossible to achieve. *See United States v. Jimenez Recio*, 537 U.S. 270, 272 (2003). But as the Fifth Circuit has explained, "[c]onspiracy as an evidentiary rule differs from conspiracy as a crime." *El-Mezain*, 664 F.3d at 503 (internal quotation marks and citation omitted).

conspiracy only if it "advances the ultimate objects of the conspiracy." *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999). "Mere idle chatter, even if prejudicial and made among co-conspirators, is not admissible under Rule 801(d)(2)([E])." *Id.* (internal quotation marks and citation omitted); *see also id.* at 783–84 ("[C]onversations that . . . are mere narratives of past conduct are not in furtherance of the conspiracy because the statement and the conversation were not intended to further the conspiracy, regardless of whether an individual co-conspirator was implicated in the conversation.").

As previously stated, the government, with one anticipated exception, will not be calling as witnesses any of the participants in the WeChat groups (and even if the government calls the cooperating witness, he is incapable of explaining messages that he never saw or articulating the intent of individuals in China who he had never met and whose names he mostly did not know). Thus, the jury will not hear from any witnesses who could possibly separate the in-furtherance wheat from the idle-chatter chaff.

Evidently, the government hopes that the Court will give it a pass when it inevitably says that the messages speak for themselves or argues that doubts about whether messages satisfy the in-furtherance requirement go to weight, not admissibility. The Court should not let the government skate or allow Mr. Yuan's liberty to hinge on the unexplained hearsay of mostly anonymous individuals residing half a world away (although no one really knows where they were located). While the in-furtherance requirement might not be "a strict one, it is a necessary one, and the proponent of admissibility"—here, the government—"must satisfy it by a preponderance of the evidence." *Id.* at 782.[3]

---

[3] Should the Court overrule Mr. Yuan's Rule 801(d)(2)(E) objections, Mr. Yuan reserves the right to argue that the WeChat messages are nevertheless inadmissible pursuant to Rule 403.

The government can no more satisfy the in-furtherance requirement than it can the other prerequisites to admissibility under Rule 801(d)(2)(E). Accordingly, the WeChat messages are hearsay.

## II. No exception to the rule against hearsay applies to the WeChat messages, rendering them inadmissible.

The Federal Rules of Evidence prescribe several exceptions to the Rule 802 default that hearsay is inadmissible. *See* Fed. R. Evid. 803 (enumerating exceptions for which the declarant's availability as a witness is irrelevant); Fed. R. Evid. 804 (setting forth exceptions that apply when the declarant is unavailable); Fed. R. Evid. 807 (codifying a residual exception). None of these exceptions apply to the WeChat messages. Accordingly, the messages are inadmissible.

\* \* \*

Over 40 years ago, the Fifth Circuit issued a warning concerning the admissibility of alleged co-conspirator statements:

> Although we find that the government in this case presented enough evidence to allow the introduction of a coconspirator's statements at trial, this court, the district court and the attorneys for the United States should always remain cognizant of the words of Justice Jackson in *Krulewitch v. United States*. In a concurrence joined by Justices Frankfurter and Murphy, Justice Jackson referred to conspiracy as an "elastic, sprawling and pervasive offense." Conceding that the basic [principle] of conspiracy is necessary in modern criminal law, Justice Jackson stated that "even when appropriately invoked, the looseness and pliability of the doctrine present inherent dangers which should be in the background of judicial thought wherever it is sought to extend the doctrine to meet the exigencies of a particular case."

*United States v. Horton*, 646 F.2d 181, 185 n.2 (5th Cir. 1981) (citations omitted). This caveat applies with equal force today. And here, it counsels in favor of exclusion.

## CONCLUSION

Because the WeChat messages are inadmissible hearsay, the Court should grant this motion *in limine* and preclude the government from introducing them at trial.

10

Respectfully submitted,

/s/ Alexander E. Blanchard
John L. Brownlee (*pro hac vice*)
Ashley Akers (*pro hac vice*)
Alexander E. Blanchard (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8600

Samuel J. Louis
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone: (713) 821-7000

Hannah Myslik Maloney
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
Phone: (512) 472-1081

*Counsel for Benlin Yuan*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I filed the foregoing electronically using the Court's

CM/ECF system, which will send a notification of such filing to all counsel of record.


*/s/ Alexander E. Blanchard*
Alexander E. Blanchard