IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-687 |
| | ) | |
| BENLIN YUAN and | ) | Hon. Kenneth M. Hoyt |
| FANYUE GONG, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT BENLIN YUAN'S OPPOSED MOTION
### TO COMPEL PRODUCTION OF PROSECUTOR NOTES

> Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

*United States v. Agurs*, 427 U.S. 97, 106 (1976). Half a century on, these admonitions remain as vital as they are valid. Yet in this case, the government continually fails to heed them, forcing Benlin Yuan once again to seek the Court's intercession.

As before, the government's reticence follows Mr. Yuan's efforts to uncover exculpatory material—specifically, in this latest instance, additional information conveyed to the government about some of Mr. Yuan's alleged co-conspirators that directly undermines its theory of the case. That information resides in notes taken by the prosecutors. Ordinarily, the attorney work product doctrine inoculates such notes against disclosure, but not here, where the notes memorialize exculpatory information that the government has not otherwise divulged. Accordingly, the Court should order the government to provide Mr. Yuan copies of the notes or, at a minimum, submit them to the Court for *in camera* review and a determination regarding whether any redaction of the notes is warranted prior to their provision to the defense. In either case, Mr. Yuan respectfully

asks that a compulsion order issue promptly. Without immediate relief, the government will simply run out the clock before the trial, which is scheduled to begin in two weeks, commences. Such an outcome would intolerably reward the government's foot-dragging at the expense of Mr. Yuan's right to due process.

**RELEVANT BACKGROUND**

On April 6, 2026, defense counsel received an unexpected email from one of the prosecutors on this case, Fatema Merchant, a Trial Attorney with the Counterintelligence & Export Control Section of the U.S. Department of Justice's National Security Division. *See* Ex. A. Her note was brief:

> Asiacom counsel orally informed DOJ of the following: When interviewed, [Co-conspirator 3] said that he understood the GPUs could not be exported to China. He was told by [a shareholder of Shenzhen Technology Company] that the GPUs were destined for Southeast Asia and the inventory check did not create a problem. When interviewed, [Co-conspirator 2] said that he did not recall being told that the destination was China until [Cooperating Witness-1] said they were supposed to go to China.

*Id.*[1] These disclosures, while succinct, were significant insofar as the information they conveyed is exculpatory. Consider that Mr. Yuan faces a charge of willfully conspiring to export GPUs to China without a license, yet one of his alleged co-conspirators, Co-conspirator 3, understood that the GPUs were actually bound for Southeast Asia (*i.e.*, Thailand, Vietnam, Malaysia, etc.), in which case a license would not be required to export them. That understanding, in turn, led Co-conspirator 3 to believe, as Mr. Yuan did, that the inventory check conducted at the warehouse in New Jersey was entirely innocuous—a routine cataloguing of computer parts, this time done merely as a favor for a client of Asiacom Americas' parent company.

---

[1] The actual names of the individuals mentioned in Ms. Merchant's email have, where applicable, been replaced with the pseudonyms by which the government identified them in the affidavit supporting the complaint charging Mr. Yuan. Those names have also been redacted in Exhibit A hereto.

The information provided by Co-conspirator 2 was similar and no less exonerating. He, too, did not initially know that the GPUs were destined for China, only learning as much when he was informed by Cooperating Witness-1, who—unlike Mr. Yuan—engaged in substantial communications with the individuals abroad who were coordinating the transportation and exportation of the GPUs.

Shortly after receiving Ms. Merchant's email, defense counsel wrote back, asking the government for "*complete* summaries of all interviews the government received from Asiacom counsel." *Id.* (emphasis added). The reason for the request was apparent: it was implausible that the content of readouts from two witnesses who purportedly conspired with Mr. Yuan could fairly be reduced to just three sentences. Likewise, it was doubtful that Co-conspirator 3 and Co-conspirator 2 had nothing else exculpating to say.

After two weeks went by without a response, defense counsel followed up:

> The information in your brief summary alone is exculpatory and strongly suggests that both [Co-conspirator 3] and [Co-conspirator 2] made additional exculpatory statements, which would have been conveyed to the government by Asiacom's counsel. We presume that an agent was present when Asiacom's counsel provided the government with readouts from their interviews, and we further presume that a report memorializing the meeting was prepared. Please send us that report ASAP. And if no report was written, please send us the agent's notes from the meeting.

*Id.* In her response, Ms. Merchant startlingly revealed that while an unnamed agent was present for the readouts, he or she did not prepare a report or even take notes. *See id.*

Replying to Ms. Merchant on April 21, 2026, defense counsel inquired who among the prosecutors and agents on the case attended the readouts and who, if not an agent, took notes. *See id.*[2] That email went unanswered, as did a follow-up inquiry on April 27, 2026. *See id.*

---

[2] Defense counsel presume that when she first disclosed the information about Co-conspirator 3 and Co-conspirator 2, Ms. Merchant did not rely exclusively on her own recollection of what was said during the readouts but instead consulted a set of notes, whether her own or those taken by another.

## LEGAL STANDARDS

### A.  *Brady*, Its Progeny, and Expansion of the Duty to Disclose

The government has a constitutional obligation to disclose evidence that is materially favorable to the defendant. *See generally Brady v. Maryland*, 373 U.S. 83 (1963); *see also Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009) ("[I]f a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors."). *Brady* merely sets a constitutional floor; federal prosecutors' disclosure obligations sweep more broadly. *See, e.g.*, U.S. Dep't of Just., Just. Manual § 9-5.001(C) (2020) ("[T]his policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt[.]"); *id.* § 9-5.001(C)(3) ("Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence."). All the more so in Texas. *See* Tex. Disciplinary R. of Pro. Conduct R. 3.09(d) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense[.]"); *Schultz v. Comm'n for Law. Discipline of the State Bar of Tex.*, No. 55649, 2015 WL 9855916, at *1 (Tex. Bd. Disciplinary App. Dec. 17, 2015) ("Rule 3.09(d) is broader than *Brady*."); 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules . . . governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.").

### B.  Rule 16(a)(1)(E)(i) and the Court's Broad Discretion

"[Rule] 16 grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). When an item "within the government's possession, custody,

or control" is "material to preparing the defense" and the defendant has asked for it, the government must produce it. Fed. R. Crim. P. 16(a)(1)(E)(i).

"Materiality," for purposes of this Rule, "is a low threshold[.]" *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) ("[Rule 16's] materiality standard normally is not a heavy burden[.]" (internal quotation marks and citation omitted)); *United States v. Royal*, No. CR421-135-6, 2022 WL 677577, at *5 (S.D. Ga. Mar. 7, 2022) (finding that defendant had "met the low bar of showing materiality under Rule 16"); 2 Peter J. Henning & Cortney E. Lollar, *Federal Practice and Procedure* § 254 (4th ed. 2026) ("Too much should not be required in showing materiality."). Notably, "Rule 16 is . . . broader than *Brady*." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). That is because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Id.*; *see also United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (noting that evidence is material when it is "useful to counter the government's case or to bolster a defense" (internal quotation mark and citation omitted)).

"Evidence is material to preparing the defense if it would significantly help in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal." *United States v. Owens*, 18 F.4th 928, 935 (7th Cir. 2021) (cleaned up). Said differently, there must be "some indication" that the evidence would "alter the quantum of proof in [the defendant's] favor." *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975).

The Court has broad authority to "determine or modify the time, place, manner, or other aspects of [discovery] to facilitate preparation for trial." Fed. R. Crim. P. 16.1(b); *cf.* Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, . . . grant other appropriate relief."). Significantly, "[Rule 16] 'is intended to prescribe the minimum amount of discovery to which the parties are entitled,' and leaves intact a court's 'discretion' to grant or deny the 'broader' discovery

requests of a criminal defendant." *United States v. Jordan*, 316 F.3d 1215, 1249 n.69 (11th Cir. 2003) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1974 amendment); *accord United States v. Campagnuolo*, 592 F.2d 852, 857 n.2 (5th Cir. 1979) ("It is within the sound discretion of the district judge to make any discovery order that is not barred by higher authority.").

### C.     The Relationship Between Rule 16 and *Brady*

To be sure, *Brady* "is not a pretrial remedy." *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975); *see also Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) ( "*Brady* claims involve 'the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense.'" (quoting *Agurs*, 427 U.S. at 103). But Rule 16's definition of materiality necessarily subsumes evidence that is favorable to the accused under *Brady*. *See* Fed. R. Crim. P. 16 advisory committee's note to 1974 amendments ("Although the Advisory Committee decided not to codify the Brady Rule, the requirement that the government disclose documents and tangible objects 'material to the preparation of his defense' underscores the importance of disclosure of evidence favorable to the defendant."); *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1076 (D. Mont. 2005) ("[A]ny information requested by a defendant that is 'favorable to the accused' under *Brady* is also material under Rule 16(a)(1)(E)(i) and therefore must be disclosed under that rule."); 2 Peter J. Henning & Cortney E. Lollar, *Federal Practice and Procedure* § 256 (4th ed. 2025) ("[I]f evidence is 'material either to guilt or punishment' and 'favorable to an accused,' within the Brady formulations, it seems that a fortiori it must be 'material to the preparation of his defense' under Rule 16(a)(1)(E)[.]").

### D.     The Relationship Between *Brady* and the Attorney Work Product Doctrine

As a general matter, Rule 16 does not authorize discovery of "reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). However, this procedural rule—

essentially the criminal counterpart to the work product doctrine developed in the civil realm—cannot supersede the Constitution, including the due process protections underpinning *Brady* that it enunciates. *See United States v. Armstrong*, 517 U.S. 456, 474–75 (1996) (Breyer, J., concurring in part and concurring in the judgment) ("Because *Brady* is based on the Constitution, it overrides court-made rules of procedure. Thus, the work-product immunity for discovery in Rule 16(a)(2) prohibits discovery under Rule 16 but it does not alter the prosecutor's duty to disclose material that is within *Brady*." (internal quotation marks and citation omitted)); *United States v. Nixon*, 881 F.2d 1305, 1310 n.3 (5th Cir. 1989) (describing as "rather dubious" the district court's conclusion that a memorandum was not discoverable under *Brady* because it constituted the prosecutor's work product); *United States v. Harold*, 734 F. Supp. 3d 1102, 1112 (D. Or. 2024) ("Rule 16(a)(2) does not apply to disclosures required under *Brady*."); *United States v. Edwards*, 777 F. Supp. 2d 985, 995 (E.D.N.C. 2011) ("*Brady* requires disclosure despite work product protections. This is because *Brady* is a constitutional right that overrides the statutorily created work-product privilege." (footnote omitted)); *United States v. Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) ("Of course, if [work product] material be of a *Brady* nature, then it must be produced."); *Castleberry v. Crisp*, 414 F. Supp. 945, 953 (N.D. Okla. 1976) ("[T]he 'work product' discovery rule cannot, of course, be applied in a manner which derogates a defendant's constitutional rights as propounded in *Brady*.").

## **ARGUMENT**

The circumstances here are straightforward: the government surely learned more exculpatory information from the readouts of interviews of Mr. Yuan's alleged co-conspirators than it has disclosed, and that information was almost certainly recorded in notes taken by some number of prosecutors, yet the prosecutors refuse to confirm as much or even divulge who attended

the readouts.[3] This informational imbalance is incompatible with due process and fundamental fairness, and if it holds, Mr. Yuan will be prejudiced by it. That is so for at least three reasons.

*First*, Mr. Yuan cannot subpoena his alleged co-conspirators and question them himself because they are in China. *Second*, while the co-conspirators' statements, as relayed to the government, might not themselves be admissible at trial, admissibility is not a *sine qua non* of *Brady*; rather, evidence is material for *Brady* purposes if it could lead to the discovery of favorable evidence that would be admissible. *See United States v. Andrews*, 532 F.3d 900, 906 (D.C. Cir. 2008) (observing that rough interview notes may be *Brady* material because they could allow defense counsel to discover or pursue leads not apparent from other discovery). Similarly, it is blackletter law that evidence need not be independently admissible for it to be permissibly used to impeach a witness. *Third*, there is scarcely enough time remaining before Mr. Yuan's trial begins for him to make meaningful use of the *Brady* information he seeks. *See United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("[T]he Government must make [*Brady*] disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously.").

The Court can rectify this inequity by compelling the government to turn over the prosecutor notes to the defense. *See United States v. Park*, 319 F. Supp. 2d 1177, 1179 (D. Guam

---

[3] It is strange enough that, as the government has stated, an agent was present for the readouts but did not produce a report thereafter or even take contemporaneous notes. *Cf. United States v. Gupta*, 848 F. Supp. 2d 491, 493 & n.1 (S.D.N.Y. 2012) (recounting that neither the AUSAs nor the SEC attorney working a joint investigation took notes during witness interviews but that an FBI agent did and that the government produced *Brady* material in those notes to the defense). It would be odder still—perhaps even unprecedented—if none of the prosecutors in attendance took notes either. If that was actually the case (and again, the defense cannot be sure because government counsel have refused to confirm one way or the other), it would be remarkable and would prompt a question for which the Court should demand an answer: why was the government so careful not to create a record of information gleaned about people who it contends committed the same crimes for which it has indicted Mr. Yuan?

2004) (granting the defendant's motion to compel production of the notes allegedly taken by an Assistant U.S. Attorney during an interview regarding information material to the defendant's guilt). Although those notes might constitute attorney work product and therefore be privileged and confidential in the ordinary course, they lose such protection when they contain exculpatory information that has not otherwise been disclosed to the defense.

Alternatively, the Court could require the government to submit the notes to chambers for review. Even though such an approach would deny Mr. Yuan "the benefits of an 'advocate's eye,'" *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987), it is a mechanism that courts have employed in scenarios involving prosecutor notes like this one, *see United States v. Smith*, 31 F.3d 1294, 1304 n.10 (4th Cir. 1994); *United States v. Dupuy*, 760 F.2d 1492, 1501–03 (9th Cir. 1985); *Ferrara v. United States*, 384 F. Supp. 2d 384, 402 (D. Mass. 2005). In conducting an *in camera* review of the notes, the Court would identify anything exculpatory, including impeachment information,[4] and order the government to produce those portions of the notes. *See Ritchie*, 480 U.S. at 60 (observing that a court, upon conducting an *in camera* review of files, is "obligated to release [to the defense] information material to the fairness of the trial").

Regardless of the form of relief the Court extends, Mr. Yuan respectfully requests that an order issue as quickly as possible, lest the government's stall tactics be countenanced and he be

---

[4] The "*Brady* duty extends to impeachment evidence as well as exculpatory evidence." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). Thus, to the extent that the notes in question memorialize information that falls within the ambit of *Giglio v. United States*, 405 U.S. 150 (1972), the defense is entitled to that as well. *See United States v. Flores*, No. CR 08–0730 WHA, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011) (clarifying that statements by out-of-court co-conspirator declarants admissible under Rule 801(d)(2)(E) are not exempt from *Giglio*). This should be uncontroversial given the stance the government has previously taken in this Court. *See, e.g.*, *United States v. Johnson*, No. H–14–171S–3, 2015 WL 93907, at *2 (S.D. Tex. Sept. 30, 2020) ("The Government . . . notes that it will provide all *Giglio* material related to co-conspirator statements that are admitted at trial."). For the avoidance of doubt, Mr. Yuan maintains, as he has elsewhere argued, *see* Dkt. 127, that the statements of his alleged co-conspirators do not satisfy Rule 801(d)(2)(E) and are thus inadmissible hearsay that should be excluded.

left without time to make use of further *Brady* information. *See Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (noting that *Brady* disclosures must be timed so that the defense has a sufficient opportunity to use them).

## CONCLUSION

It is difficult to square the government's approach to the readouts of the alleged co-conspirator interviews with "the special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Either the notes that were taken contain no more exculpatory information than has thus far been disclosed (unlikely, in Mr. Yuan's view, but theoretically possible), in which case the government should have no qualms about what Mr. Yuan might learn from them, or the notes do contain additional exculpatory information, in which case furnishing them to Mr. Yuan would permit the government to fulfill its legal and ethical obligations and facilitate a fair trial. Thus, the government should not have a dog in this fight. Yet for whatever reason, it plainly believes it does. With no indication that the government's posture will change, Mr. Yuan's respectfully asks the Court to intervene by issuing an order that immediately compels the government either to produce the prosecutor notes to the defense or submit them for *in camera* review to determine which portions must be disclosed.

10

Respectfully submitted,

*/s/ Alexander E. Blanchard*
John L. Brownlee (*pro hac vice*)
Ashley Akers (*pro hac vice*)
Alexander E. Blanchard (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8600

Samuel J. Louis
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone: (713) 821-7000

Hannah Myslik Maloney
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
Phone: (512) 647-4391

*Counsel for Benlin Yuan*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2026, I filed the foregoing electronically using the Court's CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard

## CERTIFICATE OF CONSULTATION

Based on the foregoing, it is safe to say that the government opposes the relief requested by this motion.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard