**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| BENLIN YUAN and | § | Case No. 4:25-cr-687 |
| FANYUE GONG, | § | |
| | § | |
| *Defendants*. | § | |

**NVIDIA CORP.'S MEMORANDUM IN SUPPORT OF OPPOSED MOTION
TO QUASH DEFENDANT BENLIN YUAN'S RULE 17(c) SUBPOENA**

**TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................. ii

Introduction .............................................................................................................. 1

Nature and Stage of the Proceeding ........................................................................ 3

Statement of the Issue .............................................................................................. 6

Summary of the Argument ........................................................................................ 6

Argument .................................................................................................................. 8

    I.     Yuan served an invalid subpoena because he failed to wait for the Court's separate order designating a return date and location. ............................................. 9

    II.    Yuan has failed to carry his burden to demonstrate that the subpoenaed materials are relevant, admissible, and requested with adequate specificity. ........ 10

        A.    Yuan has failed to show that the subpoenaed materials are relevant. ........ 10

            i.    The subpoenaed materials are irrelevant to whether the exports were prohibited. ................................................................. 11

            ii.    The subpoenaed materials are irrelevant to Yuan's intent. ............. 16

        B.    Yuan has failed to demonstrate that the subpoenaed materials are admissible. ................................................................................................ 18

        C.    Yuan has failed to establish that his subpoena is sufficiently specific. ................................................................................................... 21

Conclusion .............................................................................................................. 25

Certificate of Service ............................................................................................. 27

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
594 U.S. 595 (2021).................................................................................................25

*BE & K Constr. Co. v. NLRB,*
536 U.S. 516 (2002).................................................................................................24

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988).................................................................................................15

*Bowman Dairy Co. v. United States,*
341 U.S. 214 (1951).................................................................................8, 9, 21, 22

*Brown & Root, Inc. v. La. State AFL-CIO,*
10 F.3d 316 (5th Cir. 1994) .....................................................................................24

*Charles v. Consol. Fabrications Constr., Inc.,*
686 F. App'x 300 (5th Cir. 2017) .............................................................................20

*Dunn v. State Farm Fire & Cas. Co.,*
927 F.2d 869 (5th Cir. 1991) ....................................................................................18

*First Choice Women's Res. Ctrs., Inc. v. Davenport,*
No. 24-781 (U.S. Apr. 29, 2026) ..............................................................................25

*Rock v. Huffco Gas & Oil Co.,*
922 F.2d 272 (5th Cir. 1991) ....................................................................................21

*United States v. Arditti,*
955 F.2d 331 (5th Cir. 1992) ......................................................................6, 8, 10, 21

*United States v. Beckford,*
964 F. Supp. 1010 (E.D. Va. 1997) ...................................................................9, 10, 24

*United States v. Bermingham,*
2007 WL 1052600 (S.D. Tex. Apr. 5, 2007) ........................................................9, 10

*United States v. Blakstad,*
2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020).............................................................24

*United States v. Brown,*
2023 WL 5672836 (S.D. Tex. Sep. 1, 2023) ............................................................23

*United States v. Bullard,*
    458 F.2d 17 (5th Cir. 1972) ...............................................................................................17

*United States v. Butler,*
    429 F.3d 140 (5th Cir. 2005) ........................................................................................10, 17

*United States v. Carriles,*
    263 F.R.D. 400 (W.D. Tex. 2009) .................................................................................22, 23

*United States v. Cone,*
    714 F.3d 197 (4th Cir. 2013) .............................................................................................21

*United States v. Daneshvar,*
    925 F.3d 766 (6th Cir. 2019) .............................................................................................21

*United States v. Garza,*
    448 F.3d 294 (5th Cir. 2006) .............................................................................................20

*United States v. Hoeffner,*
    254 F.R.D. 302 (S.D. Tex. 2008)........................................................................................18

*United States v. Murra,*
    879 F.3d 669 (5th Cir. 2018) .............................................................................................18

*United States v. Najarian,*
    164 F.R.D. 484 (D. Minn. 1995).......................................................................................9, 10

*United States v. Nixon,*
    418 U.S. 683 (1974)...........................................................................6, 7, 8, 18, 21, 23

*United States v. Reinhart,*
    2024 WL 4031826 (N.D. Tex. Aug. 30, 2024)....................................................................23

*United States v. Skilling,*
    2006 WL 1006622 (S.D. Tex. Apr. 13, 2006) .....................................................................18

*United States v. Stanford,*
    2011 WL 13202537 (S.D. Tex. Sep. 2, 2011) .......................................................................5

*Wilson v. Zapata Off-Shore Co.,*
    939 F.2d 260 (5th Cir. 1991) .............................................................................................21

**Statutes**

18 U.S.C. § 2...........................................................................................................................3, 11

18 U.S.C. § 554.....................................................................................................................3, 11, 16

50 U.S.C. § 4819................................................................................................................3, 10, 17

iii

## Regulations

15 C.F.R. § 736.2 ...............................................................................................3, 6, 11, 12

15 C.F.R. § 742.6 ...........................................................................................3, 6, 11, 12, 15

15 C.F.R. § 764.2 ..........................................................................................................3, 11

91 Fed. Reg. 1684 (Jan. 15, 2026) ..............................................................................14, 15

## Rules

Fed. R. Crim. P. 17 ..................................................................................5, 8, 9, 24, 25

Fed. R. Evid. 401 .......................................................................................................10, 16

Fed. R. Evid. 402 ............................................................................................................19

Fed. R. Evid. 801 ......................................................................................................19, 20

Fed. R. Evid. 802 ............................................................................................................19

Fed. R. Evid. 803 ............................................................................................................20

## Other Authorities

5th Cir. Pattern Jury Instructions (Criminal Cases) § 2.04 (2024 ed.)..........................................11

5th Cir. Pattern Jury Instructions (Criminal Cases) § 2.26 (2024 ed.)..........................................11

6 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 24.3(f) (5th ed. 2025)..................24

**INTRODUCTION**

Defendant Benlin Yuan's third-party trial subpoena to NVIDIA is improper under Rule 17 and should be quashed.  The subpoena could not possibly lead to any relevant evidence for Yuan because the law is the law, and the law always required that Yuan obtain licenses to export the products at issue to China.  Yuan does not argue that the law was or is otherwise.  Nor does he claim that he sought and received the applicable licenses.

Instead, Yuan has embarked on a stratagem to inject NVIDIA into his trial, even though it is undisputed that NVIDIA had no involvement in the exports underlying this case.  Yuan further ignores that NVIDIA, like the rest of the world, consistently has recognized that the export of its products to China was and is subject to strict controls and required a license—a regulatory framework that NVIDIA set forth on its website and in public filings with the Securities and Exchange Commission, which were available to Yuan before, during, and after the charged scheme.

Faced with these considerable hurdles, Yuan posits that it is relevant to his trial defense if NVIDIA has advocated for changes to the regulatory framework for the export of its products.  But the primary event Yuan points to occurred in December 2025 (a Truth Social post by President Trump), *after* the alleged scheme, thus undermining his own theory of relevance:  Any exercise of NVIDIA's First Amendment right to petition the government about trade policy could not have affected the legality of Yuan's export of products to China in May and June 2025.  And beyond Yuan's conflated timeline, he misleadingly downplays that, although the government decided to start issuing some export licenses for H200 GPUs[1] (as opposed to the previous presumption of denial across the board) it did not change the export controls applicable to *any* products Yuan is

---

[1]   A GPU is a datacenter accelerator often associated with AI workloads.

accused of smuggling.  It is undisputed that Yuan never sought the required license, and it is undisputed that a license was required at all relevant times.  Any change in the government's attitude towards license applications is irrelevant, and any alleged "change" to the governing law, actual or proposed, is irrelevant to his defense.

Yuan's subpoena is also improper because the documents he seeks are inadmissible.  The subpoena is so broad that it captures many categories of privileged or highly sensitive documents.  NVIDIA's communications with its lawyers about the legality of exporting products to China are protected by attorney-client privilege, and its internal assessments about the permissibility of such exports are protected attorney work product.  Moreover, the subpoena seeks highly sensitive and confidential documents.   The license applications that NVIDIA submits include confidential business information like pricing, customer names, the identity of end users of the products, and NVIDIA's distribution chain.  NVIDIA's communications with the government about the impact of certain export controls also contain sensitive business information.  For example, NVIDIA discusses nonpublic information regarding its product roadmaps, cybersecurity issues, the roadmaps of its competitors, information about the global markets, the economics of NVIDIA's business, and NVIDIA's revenue expectations.  None of that has anything to do with the charges against Yuan, and so is inadmissible on relevance in addition to other grounds.

Yuan's overbroad subpoena is an improper attempt to buttress Yuan's motion to dismiss the indictment—by serving an absurdly overbroad subpoena on NVIDIA that demands a wide range of irrelevant, inadmissible, confidential, and classified materials, and following the expected objections, demanding that the government drop its case.  That is an abuse of Rule 17.  If, as he now claims, Yuan had any doubt about the export control rules, he could have simply read the law or NVIDIA's public statements confirming the same.  Instead, Yuan ignored the clear public

2

information available to him, and allegedly sought to smuggle products to China. The Court should quash the subpoena.

## NATURE AND STAGE OF THE PROCEEDING

On November 28, 2025, the United States filed a criminal complaint against Benlin Yuan, the president of a Virginia-based subsidiary of a Chinese information technology company. Complaint (ECF 1) at 6. The complaint arose from a government investigation into "a sophisticated illicit procurement conspiracy and smuggling network" orchestrating the unlawful export of NVIDIA products—including GPUs, baseboards, and servers—to China. *Id.* at 7. The NVIDIA products that Yuan allegedly smuggled are subject to clear and unambiguous export control restrictions and cannot be exported to China without a license:

- NVIDIA A100, H100, and H200 GPUs,
- NVIDIA A100 and H200 baseboards, and
- SuperMicro servers with NVIDIA A100 baseboards.

*Id.* at 5, 7–8. NVIDIA played no role in Yuan's alleged efforts to ship controlled products without a license. Yuan and his co-conspirators obtained the NVIDIA products through "straw purchasers and intermediaries"—not from NVIDIA. *Id.* at 8.

Yuan was indicted on December 17, 2025 and charged with three counts: one count of conspiracy to violate the Export Control Reform Act and the Export Administration Regulations, 50 U.S.C. §§ 4819(a)(1), (a)(2)(A), (a)(2)(D), (b); 15 C.F.R. §§ 736.2(b)(1), 742.6, 764.2, and two counts of smuggling goods from the United States, 18 U.S.C. §§ 554, 2. Indictment (ECF 16) at 1–2. The grand jury charged that Yuan engaged in smuggling in May and June 2025. *Id.* at 2. He allegedly joined the conspiracy in May 2025. *See* Complaint at 8. Yuan was arrested on November 28, 2025 and has remained in custody or home detention since. Mem. and Ord. Including Detention (ECF 47) at 3.

3

On February 22, 2026, Yuan moved for issuance of a subpoena directed to NVIDIA under Federal Rule of Criminal Procedure 17(c).  Mot. to Issue Subpoena (ECF 89).  The subpoena requests "any documents, records, communications, and correspondence" from January 2025 to December 2025 related to several broad categories:

- NVIDIA communications concerning potential or actual U.S. government restrictions on the export of NVIDIA GPUs and baseboards to China, including communications with or regarding the U.S. Department of Commerce, Department of State, Department of Defense, Department of Justice, or any other federal agency;

- NVIDIA communications—including with any federal agency—concerning any easing, suspension, delay, or modification of U.S. government restrictions on the export of NVIDIA GPUs and baseboards to China;

- Any and all communications between NVIDIA CEO Jensen Huang (or his agents or representatives) and any member of the Trump Administration concerning potential or actual restrictions on the export of NVIDIA GPUs and NVIDIA baseboards to China;

- Any and all notes, recordings, memoranda, or records of any conversations between Huang and President Trump or Secretary of Commerce Lutnick concerning the export of NVIDIA GPUs and baseboards to China;

- Any internal NVIDIA assessments, legal opinions, or compliance memoranda regarding the legality or permissibility of GPUs exports to China during January 2025 through December 2025.

*Id.* at 1–2.

Relying on a Truth Social Post by President Trump from December 2025—months after Yuan's alleged criminal activity and after his arrest—and an April 2025 dinner that allegedly addressed a product that Yuan is not even accused of smuggling (the NVIDIA H20 GPU), Yuan argues that NVIDIA's internal documents might call into question the illegality of his conduct:

> Evidence that export restrictions were under reconsideration, modification, or suspension during the relevant period—or that Nvidia was engaged in discussions with senior officials regarding those restrictions—bears directly on whether the charged conduct was unlawful at all. If the regulatory framework was in flux or under active reconsideration, that fact is probative of whether the exports at issue were prohibited at the time they allegedly occurred.

Mem. in Support of Mot. to Issue Subpoena (ECF 89-1) at 6.  Yuan also asserted that NVIDIA's discussions with the government, about which Yuan did not know, might somehow negate his criminal intent.  *Id.*

The United States opposed Yuan's motion on relevance, admissibility, and specificity grounds.  U.S. Resp. to Mot. to Issue Subpoena (ECF 106).  The Court granted Yuan's motion over the United States' objections.  The Court noted that the government's opposition "seems to suggest that the government is aware of the nature and content of the evidence sought, yet it has not agreed to timely provide same to the defendant or submit same *in camera* to the Court in order that the Court may make an independent and informed ruling."  Order on Mot. to Issue Subpoena (ECF 117) at 1.  Because the Court concluded that the "issues of hearsay, relevance, and the like are crucial matters for review for an informed ruling" and that the defendant's "bill of particulars" was sufficient, it said it would grant the motion "by separate Order."  *Id.* at 1–2.

NVIDIA is not aware of entry of any such separate order and, in subsequent communications about the subpoena, defense counsel could not identify one.  Yuan nevertheless served his subpoena on NVIDIA on April 23, 2026 and requested a pretrial return date in just six business days, on May 4, 2026, along with a demand to produce the subpoenaed documents directly to Yuan's counsel.  Ex. A, Subpoena at 1.

NVIDIA disputed the validity of the subpoena based on those defects.  In response, counsel for Yuan threatened to file a motion to compel.  NVIDIA now timely moves to quash the subpoena.  *See* Fed. R. Crim. P. 17(c)(2); *United States v. Stanford*, 2011 WL 13202537, at *1–2 (S.D. Tex. Sep. 2, 2011) (considering motions to quash filed 15 and 20 days after service of subpoenas).

**STATEMENT OF THE ISSUE**

Whether the Court should quash Yuan's Rule 17(c) subpoena because it is defective and because he has failed to carry his burden to show that the subpoenaed documents are relevant, admissible, and have been requested with adequate specificity. *See United States v. Nixon*, 418 U.S. 683, 700 (1974); *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992).

**SUMMARY OF THE ARGUMENT**

**I.** Yuan's subpoena is invalid because he served it in violation of this Court's directive and Rule 17. In its order on Yuan's motion for issuance of a Rule 17(c) subpoena, the Court stated that the "motion is Granted by a separate Order." Order on Mot. to Issue Subpoena at 2. No such separate order has been issued, nor has the Court addressed the time and location of any production. Yuan nevertheless issued his subpoena, demanding the rapid pretrial production of documents to his counsel rather than the Court in violation of the Court's instructions and Rule 17(c).

**II.** Even if the subpoena were valid, it should still be quashed because Yuan has failed to carry his burden to show that the evidence he seeks is relevant, admissible, and requested with adequate specificity.

**A.** Yuan has failed to carry his burden to show that the evidence he seeks in his subpoena is relevant to the charges against him. That is reason enough to quash the subpoena. *See Arditti*, 955 F.2d at 345.

**i.** Any responsive materials would be irrelevant because they have no bearing on the lawfulness of Yuan's unlicensed exports of NVIDIA products. At the time of Yuan's alleged conspiracy (and at all times since), the Export Administration Regulations prohibited the export of certain NVIDIA products—including those that Yuan exported—to China without a license from the Department of Commerce. 15 C.F.R. §§ 736.2(b)(1), 742.6(a)(6)(iii)(A). That is fully

consistent with NVIDIA's expression of the law.  NVIDIA publicly stated in SEC filings that the products at issue were subject to export controls and required a license to export to China.  After the President's December 2025 Truth Social post about restrictions on the H200, NVIDIA did not immediately begin shipping that product into China; it waited for the necessary regulatory change so it could then apply for the necessary license.  NVIDIA's views on the policies underlying the export controls (which have promoted the interests of NVIDIA's Chinese competitors such as Huawei and Cambricon) did not change the licensing requirement for anyone—including the defendant.  Thus, any NVIDIA communications about the wisdom of the controls, and any *possible* changes in the law are not relevant to Yuan's defense—they only suggest that he violated existing law.

      **ii.**      Any responsive materials would also be irrelevant to Yuan's intent.  The documents Yuan requests are either confidential communications between NVIDIA and the government or internal NVIDIA documents—many of which are privileged.  Yuan never had access to these materials and they could not possibly have affected his subjective intent at the relevant time.  To the contrary, the NVIDIA documents Yuan could see, like its SEC filings, clearly disclose that export of the products at issue to China was controlled and subject to license requirements.

      **B.**      Yuan has also failed to demonstrate that the requested documents "contain[ ] evidence admissible with respect to the offenses charged in the indictment," *Nixon*, 418 U.S. at 700—another independent basis for quashing the subpoena.  The type of documents Yuan seeks are inadmissible hearsay because they are out-of-court statements he intends to offer for the truth of what they supposedly reveal about the law governing exports of NVIDIA products.  They are not statements of a party opponent because neither NVIDIA nor its CEO are opposing parties to Yuan.  Nor are they admissible as business records because they were not created on a regular

basis.  And a large number of potentially responsive documents are protected by attorney-client privilege, the work-product doctrine, or both.  Finally, many potentially responsive documents contain highly confidential and sensitive business information that are inadmissible due to their irrelevance.  Yuan's request for inadmissible documents is improper under Rule 17(c).

**C.**     Yuan has also failed to show that the subpoena's requests are sufficiently specific, providing yet another ground for quashing the subpoena.  By seeking expansive categories of documents he is not sure even exist, rather than identifying specific materials, Yuan attempts to use his subpoena as "an additional means of discovery," which Rule 17(c) does not permit. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  The subpoena also exhibits other telltale signs of being a prohibited "fishing expedition to see what may turn up," *id.*, such as demanding "any and all" materials on a variety of topics, Mot. to Issue Subpoena at 1–2.

Because the subpoena was invalidly issued and seeks documents that are not relevant, not admissible, and not specifically identified, the Court should quash the subpoena.

## ARGUMENT

Federal Rule of Criminal Procedure 17(c) authorizes "the court [to] direct [a] witness to produce . . . designated items in court before trial."  "On motion made promptly, the court may quash or modify" a Rule 17(c) subpoena for the pretrial production of documents "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).  Under this standard, Yuan bears the burden to show: "that (1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity." *Arditti*, 955 F.2d at 345 (citing *Nixon*, 418 U.S. at 700).  If Yuan fails to make any one of those showings, his subpoena must be quashed.  *Id.* at 346. Yuan's subpoena, which seeks production of a slew of irrelevant documents, many of which are privileged or highly confidential, fails this test at every turn.  The Court should quash the subpoena.

8

**I.    Yuan served an invalid subpoena because he failed to wait for the Court's separate order designating a return date and location.**

The subpoena Yuan served on NVIDIA is invalid because he failed to heed the instruction this Court gave when ruling on his motion for issuance of the subpoena.  In its order, the Court stated that "[t]he defendant's motion is Granted by a separate Order."  Order on Mot. to Issue Subpoena at 2.  No such order has issued.  When it does, that order will presumably address such critical matters as the return date of the subpoena and where any documents are to be produced— issues reserved for the Court.  That is because Rule 17(c) states that "[t]he *court* may direct the witness to produce the designated items in *court* before trial."  Fed. R. Crim. P. 17(c)(1) (emphases added).  It therefore "affords the court"—not the party requesting the subpoena—"authority to decide whether production before trial is permissible at all, and, if so, when."  *United States v. Beckford*, 964 F. Supp. 1010, 1020–21 (E.D. Va. 1997).  Rule 17(c)'s reference to production "in court" also demonstrates "an express intent that the Court supervise the production of evidentiary materials in advance of trial."  *United States v. Najarian*, 164 F.R.D. 484, 487 (D. Minn. 1995).  As a result, "[i]f the Court authorizes the production in advance of trial, the subpoenaed documents are to be produced in Court"—not to the requesting party's counsel.  *United States v. Bermingham*, 2007 WL 1052600, at *7 (S.D. Tex. Apr. 5, 2007) (citing *Bowman Dairy*, 341 U.S. at 220 n.5).

Rather than waiting for the Court's separate order determining the return date and location of production, however, Yuan jumped the gun and served a subpoena on NVIDIA requiring production by a date of his own choosing and to his own counsel—and all to be completed within just six business days. Ex. A at 1.  That violated the Court's order and Rule 17(c), which requires the Court to determine the date of pretrial production and requires documents to be produced to

9

the Court, subject to its supervision.  *See Beckford*, 964 F. Supp. at 1020–21; *Najarian*, 164 F.R.D. at 487; *Bermingham*, 2007 WL 1052600, at *7.  Yuan's subpoena should be quashed as invalid.[2]

**II.    Yuan has failed to carry his burden to demonstrate that the subpoenaed materials are relevant, admissible, and requested with adequate specificity.**

Even if the Court deems the subpoena valid, it should still be quashed because Yuan has failed to carry his burden to establish that the subpoenaed documents are relevant, admissible, and requested with adequate specificity.  *Arditti*, 955 F.2d at 345.

**A.    Yuan has failed to show that the subpoenaed materials are relevant.**

Yuan bears the burden to show that the evidence he requests has "real relevance to the particular counts for which he was charged."  *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005) (per curiam).  Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401(a)–(b).  Establishing relevance "require[s] more than the title of a document and conjecture as to its contents"—instead, the party seeking evidence under Rule 17 must "giv[e] reasons that permit[ ] a rational inference of relevance."  *Arditti*, 955 F.2d at 345–46.  Here, the requested documents have no bearing on any element of the charges.

The United States has charged Yuan with one count of conspiracy to violate the Export Control Reform Act, and two counts of smuggling goods from the United States.  Indictment at 1–2.  The Export Control Act criminalizes willful conspiracies to violate the Export Administration Regulations.  50 U.S.C. §§ 4819(a)(1), (a)(2)(A), (a)(2)(D), (b).  To convict Yuan of this charge, the United States must prove:

---

[2] If the Court denies this motion in any part, it should at minimum modify the subpoena to make the documents returnable to the Court (not Yuan's counsel) and to provide a sufficient period of time to respond given the scope of documents requested.  *See Bermingham*, 2007 WL 1052600, at *7.  It should also issue a protective order to ensure that highly sensitive information will be protected from public disclosure, which is a particularly acute concern given that Yuan has been charged with illegally exporting NVIDIA products to China.

(1) a conspiracy existed to violate the Export Control Reform Act and Export Administration Regulations by exporting items requiring a license without one; and

(2) Yuan willfully joined that conspiracy.

*See id.*; 15 C.F.R. §§ 736.2(b)(1), 742.6, 764.2.

To convict Yuan of smuggling goods from the United States, the government must prove:

(1) Yuan knowingly exported or attempted to export articles from the United States or aided and abetted another in doing so;

(2) the exportation was contrary to law or regulation, including the Export Control Reform Act and Export Administration Regulations; and

(3) Yuan knew the exportation was contrary to law or regulation.

18 U.S.C. §§ 554, 2; 5th Cir. Pattern Jury Instructions (Criminal Cases) §§ 2.04, .26 (2024 ed.).

Yuan erroneously contends that the subpoenaed materials are relevant to two elements of these charges: whether "the exports at issue were prohibited" under the Export Control Reform Act and Export Administration Regulations "at the time they allegedly occurred," and whether he "acted willfully and with the requisite criminal intent" in arranging those exports. Mem. in Supp. of Mot. to Issue Subpoena at 6. The materials Yuan seeks have no bearing on either issue.

### i.    The subpoenaed materials are irrelevant to whether the exports were prohibited.

Yuan is wrong that the subpoenaed materials relate to whether his unlicensed exports of NVIDIA products to China were prohibited. A license was required to export those products to China throughout Yuan's conspiracy—just as it is today. Yuan allegedly joined the conspiracy exporting NVIDIA GPUs, baseboards, and servers to China in May 2025 and engaged in smuggling those units in May and June 2025. Complaint at 8; Indictment at 2. He was arrested in November 2025 and indicted in December 2025. Indictment at 1–2; Mem. and Ord. Including Detention at 3. Throughout that period, the Export Administration Regulations prohibited the export of the products at issue to China without a license from the Department of Commerce—

11

including the A100, H100, and H200 GPUs that Yuan allegedly exported. 15 C.F.R. §§ 736.2(b)(1), 742.6(a)(6)(iii)(A); *see* Complaint at 5 (identifying Export Control Classification Numbers applicable to the above products). The same license requirement remains in effect today.

Not only is the law clear, but throughout the relevant period, NVIDIA reiterated that the products at issue were subject to export controls and could not be exported to China absent a license. In its August 2022 8-K, NVIDIA disclosed that the government had informed it of a new license requirement on the export of A100 and H100 GPUs to China. Ex. B, NVIDIA Aug. 2022 8-K at 2. In its October 2023 8-K, NVIDIA disclosed that the government had announced the imposition of additional licensing requirements for the export of A100 and H100 GPUs to China. Ex. C, NVIDIA Oct. 2023 8-K at 2. In its February 2025 10-K, NVIDIA disclosed a pending proposal by the government to implement a "worldwide license requirement" that would apply to various NVIDIA products, including A100 and H100 GPUs. Ex. D, NVIDIA Feb. 2025 10-K at 10. And in its February 2026 10-K, NVIDIA reiterated this history and explained that the government had imposed license requirements on A100 and H100 GPUs to China since August 2022. Ex. E, NVIDIA Feb. 2026 10-K at 9–11. NVIDIA's website even includes a list of its products and their corresponding Export Control Classification Number that would allow anyone to determine applicable export controls for such product. *See* NVIDIA Corp., NVIDIA Export Regulation Compliance (visited May 4, 2026), bit.ly/48HjiUa.

Contrary to Yuan's speculation, NVIDIA's view that a license was required to export these products to China did not change even after the President's December 2025 Truth Social post—made long after Yuan's conduct. The February 2026 10-K notes that NVIDIA itself applied for and received a license to ship H200 products to specific China-based customers in February 2026.

12

Ex. E at 10.  NVIDIA's public conduct is uniformly consistent with the widely-held understanding that the products at issue required a license, just as the law itself makes clear.

Yuan's basis for his subpoena falls apart on inspection.  Yuan asserts that "[e]vidence that export restrictions were under reconsideration, modification, or suspension during the relevant period . . . bears directly on whether the charged conduct was unlawful at all."  Mem. in Supp. of Mot. to Issue Subpoena at 6.  To support this argument, Yuan cites two events that supposedly indicated to him that he could ignore existing law: (1) a dinner in April 2025 where NVIDIA's CEO allegedly discussed export controls with the President; and (2) the President's December 2025 Truth Social post—made months after Yuan's wrongful conduct, and indeed, even after his arrest—about allowing the sale of a specific NVIDIA GPU to China.  Neither event shows that NVIDIA's documents are relevant.

First, although Yuan asserts that "shortly after" the April 2025 dinner, "the President reversed course on *Nvidia's GPUs*, putting a scheduled plan for additional restrictions on hold," Mem. in Support of Mot. to Issue Subpoena at 3 (emphasis added), the discussion in April was about an uncontrolled NVIDIA GPU, the H20, and whether the government would add the H20 to the list of restricted products.  But Yuan is not even accused of smuggling *H20s* to China.  Yuan smuggled *different* GPUs, which are subject to a different (and stricter) classification.  Moreover, the government ultimately decided to *restrict* the H20—tightening the controls on GPUs far beyond their previous scope.  The fact that NVIDIA discussed potential restrictions on the H20, which the government ultimately decided to *restrict*, does not mean that Yuan could ship the A100 and H200 to China.

13

If anything, the H20 episode was a highly public warning sign to Yuan—if the government decided to control the H20 (which has much lower performance than the H200), then obviously the government was *not* relaxing the controls on the H200.

Yuan's argument is akin to saying that because the government decided to restrict the speed limit to cover the slower H20 he could somehow assume that the faster H200 was suddenly legal. The defendant himself quotes NVIDIA's press release where NVIDIA indicates that its efforts to persuade the government not to tighten the controls to cover the H20 had failed and therefore NVIDIA would be filing applications for licenses to export the H20 to certain approved, vetted customers in China and expectation that the licenses would be granted.  Mot. to Dismiss Indictment (ECF 125) at 6.  In other words, the government did not "relax" the export controls over NVIDIA products—exports of the H20, which is not at issue in this case, were swept into the control regime, not excluded from it.

Second, the President's Truth Social post in December 2025 about the H200 shows that Yuan's subpoena seeks only irrelevant materials.  The President clearly indicated that the H200 was still subject to restriction and that the government would allow H200 to be shipped only to "approved customers" and "under conditions that allow for continued strong National Security." Mot. to Dismiss Indictment at 10. As the President's post explained, the Department of Commerce was responsible for "finalizing the details."  *Id.*  Accordingly, a month after the post, the Department issued a rule adjusting the licensing processing and providing for a third-party inspection of H200 GPUs.  91 Fed. Reg. 1684 (Jan. 15, 2026).  But even the eventual issuance of that rule did not change the prohibition on exporting NVIDIA GPUs (including the H200), baseboards, or servers without a license.  Instead, it included strict additional conditions on any licensing (including the third-party inspection process in the United States), and restated and

14

underscored that licenses were required. *Id.* at 1685. While maintaining strict control (and capping the volume of GPUs that could be shipped to each customer in China), the government allowed for case-by-case review, to be conducted by the Interagency Process that includes the Department of State, the Department of Energy, the Department of War, and the Department of Commerce. *Id.*; *see* 15 C.F.R. § 742.6(b)(10)(iii)(A)(1). The Commerce Secretary has stated publicly that "the license terms are very detailed" and that they "are terms Nvidia must live with." Ex. F, D. Lawder & A. Alper, *Nvidia Must Live With Guardrails Around Its Sales to China, Lutnick Says*, Reuters (Feb. 10, 2026), bit.ly/3R0Ss37.

A license was still required to export these products—just as it was at all times during Yuan's conspiracy, and just as it remains required today. *See* 15 C.F.R. § 742.6(a)(6)(iii). As explained in its February 2026 10-K, NVIDIA applied for and received some licenses to export a limited number of H200 GPUs to certain vetted and approved customers in China, under strict conditions regarding the use and security of those products. Ex. E. Unlike NVIDIA, Yuan did not; so, even under his claimed change-in-law theory, he violated the law.

Moreover, because Yuan is charged with smuggling in May and June 2025, Indictment at 2, allegedly joined the conspiracy in May 2025, Complaint at 8, and was arrested in November 2025, the President's December 2025 post has no bearing on whether Yuan's conduct was illegal at the time he engaged in it. The same is true of the government's adjustments to the H200 licensing process. Those adjustments were promulgated and made effective in the year following Yuan's charged exporting, so they also could not have altered the law during the alleged offenses. *See* 91 Fed. Reg. at 1685 (effective Jan. 15, 2026); *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result.").

15

During Yuan's conspiracy and still today, the Export Administration Regulations required a license to export H200 and A100 NVIDIA GPUs to China. Yuan allegedly exported those products without first obtaining a license, never sought one, and did not comply with any of the government's conditions for license approvals. Indeed, he never even sought one. Nothing Yuan seeks can alter any of those realities. Any communications between NVIDIA and the federal government concerning the *possible* modification of restrictions on the export of NVIDIA GPUs and baseboards to China cannot change those facts. Mot. to Issue Subpoena at 1. Any communications between NVIDIA's CEO and members of the Trump Administration concerning those restrictions cannot change those facts. *Id.* at 1–2. Any internal NVIDIA memoranda on the legality of certain exports to China cannot change those facts. *Id.* at 2. In short, nothing Yuan seeks can make whether Yuan engaged in unlawful exports any more or less probable. *See* Fed. R. Evid. 401.

In short, Yuan's relevance argument is specious. Yuan's argument is akin to him driving 90 on an expressway with a posted speed limit of 45. When caught, Yuan tries to defend himself with documents from a third party in which the third party suggests to the government that the speed limit is benefiting competing travel avenues, and a different speed limit would be better for national interests. NVIDIA's view of the current export controls, or proposed changes to those controls, is completely irrelevant to Yuan's disregard of existing law.

### ii.   The subpoenaed materials are irrelevant to Yuan's intent.

Yuan next wrongly contends that any responsive materials would be relevant to his intent. He asserts that "[e]vidence reflecting uncertainty, modification, or evolving government positions regarding NVIDIA GPU exports has a clear tendency to make more or less probable whether Yuan knowingly and intentionally violated the law." Mem. in Supp. of Mot. to Issue Subpoena at 6. But because any responsive materials would be either confidential communications between

16

NVIDIA and the federal government or internal NVIDIA documents—neither of which Yuan had access to—they could not have affected Yuan's state of mind.

Whether Yuan "willfully" conspired to violate the Export Control Act or "knowingly" exported goods unlawfully is a subjective inquiry, so it depends on what he personally knew at the time that he committed the alleged criminal actions. 18 U.S.C. § 554(a); 50 U.S.C. § 4819(b); *see United States v. Bullard*, 458 F.2d 17, 18 (5th Cir. 1972) ("Knowledge of the accused" is "a subjective element of the crime."). That means that only information that was available to Yuan before his November 2025 arrest is relevant to his intent. By contrast, information that Yuan did not have access to when exporting the NVIDIA products could have no effect on his state of mind.

The information Yuan's subpoena requests falls into the latter category. That subpoena seeks various categories of NVIDIA's confidential communications. It requests any NVIDIA communications with the federal government, including with President Trump and Secretary of Commerce Lutnick, regarding export restrictions on NVIDIA GPUs and baseboards. Mot. to Issue Subpoena at 1–2. The subpoena also seeks internal legal memoranda regarding the legality of exporting GPUs to China. *Id.* at 2. To the extent any such documents and communications exist, they are private and confidential and were not made available to members of the public.

To the contrary, NVIDIA's public statements in its SEC filings—to which Yuan had access—refute Yuan's speculation about NVIDIA's internal documents. *See* Ex. B–Ex. D. Yuan has no plausible basis to assert that internal NVIDIA documents to which he was not even privy could have affected his view of the export control regime—especially when NVIDIA's public statements confirm that Yuan's view of his ability to export controlled products to China was wrong. Yuan's subpoena should be quashed because any responsive materials lack "any real relevance to the particular counts for which he was charged." *Butler*, 429 F.3d at 149.

17

**B.      Yuan has failed to demonstrate that the subpoenaed materials are admissible.**

Yuan's subpoena should also be quashed because the materials it seeks are inadmissible. A party seeking a third-party Rule 17(c) subpoena must make a "sufficient preliminary showing that [the requested material] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700.  "Conclusory allegations of admissibility are insufficient." *United States v. Skilling*, 2006 WL 1006622, at *3 (S.D. Tex. Apr. 13, 2006).  Yuan has failed to demonstrate that any responsive documents are admissible.

*First,* many of the materials Yuan's subpoena seeks are inadmissible because they are protected by attorney-client privilege, the work-product doctrine, or both.  Any NVIDIA communications with its lawyers about the legality of exporting GPUs to China would be privileged because they would be (1) confidential communications (2) between NVIDIA and its lawyers (3) for the primary purpose of securing a legal opinion or legal services. *See United States v. Murra*, 879 F.3d 669, 681–82 (5th Cir. 2018).  NVIDIA's internal assessments, legal opinions, or compliance memoranda on the permissibility of these exports would be protected attorney work product because they are documents prepared in anticipation of litigation by NVIDIA's lawyers. *See Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).  Because such documents would be privileged or protected from disclosure, requiring NVIDIA to comply with the subpoena and supply Yuan with any internal legal documents would be "unreasonable and oppressive under Rule 17(c)(2)." *United States v. Hoeffner*, 254 F.R.D. 302, 307 (S.D. Tex. 2008).

Yuan hypothesizes that, "[t]o the extent such materials were shared with third parties," they may not be privileged.  Reply in Supp. of Mot. to Issue Subpoena at 9.  But he offers nothing beyond speculation to suggest that the documents he imagines may have been shared outside NVIDIA.  Such "[c]onclusory allegations of admissibility are insufficient." *Skilling*, 2006 WL 1006622, at *3.

18

*Second,* the documents requested by the subpoena are also inadmissible because they are irrelevant, for the reasons already explained. Fed. R. Evid. 402. Given the breadth of the subpoena, it captures virtually all communications with the government about export controls, including communications about individual licenses, communications about the impact of export controls, and communications about ongoing or past investigations. Many of those documents are highly sensitive. For example, NVIDIA's communications with the government about the impact of certain export controls contain highly confidential business information, like NVIDIA's product roadmaps, information about NVIDIA's competitors, sensitive information about the global markets, the economics of NVIDIA's business, and NVIDIA's revenue expectations. The documents include material, non-public information that NVIDIA does not disclose except in extremely narrow and controlled circumstances. None of these highly sensitive documents will help Yuan show that he had the right to smuggle NVIDIA products to China without a license. Because these highly sensitive documents are entirely irrelevant to the offenses Yuan is charged with, they are inadmissible. Fed. R. Evid. 402.

*Third,* the materials that Yuan's subpoena seeks would also be inadmissible hearsay. Hearsay covers statements that (1) "the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Yuan's subpoena seeks communications between NVIDIA and the federal government about restrictions on exporting NVIDIA GPUs and baseboards to China as well as NVIDIA's internal memoranda on that subject. Mot. to Issue Subpoena at 1–2. All these materials would be out-of-court statements. And if, as Yuan claims, these materials show that the export regulations were "in flux or under active reconsideration," Mem. in Supp. of Mot. to Issue

19

Subpoena at 6, he is using them to prove the truth of the matter asserted in the statements. The materials are therefore all inadmissible hearsay. Fed. R. Evid. 802.

Yuan disagrees because he would supposedly offer them to show the communications' effect on the listener—by which he apparently means himself. Mem. in Supp. of Mot. to Issue Subpoena at 7. But Yuan was not privy to any conversations between NVIDIA and the federal government or internal NVIDIA documents, so the materials had no effect on Yuan, and he could not possibly offer them for that purpose. *See supra* Part II.A.ii.

Yuan also contends that any responsive documents could be admissible as party-opponent statements or as business records. Mem. in Supp. of Mot. to Issue Subpoena at 7; Reply in Supp. of Mot. to Issue Subpoena (ECF 110) at 8–9. Neither argument has merit.

For a statement to be admissible as an opposing party's statement, it must be "offered against an opposing party" and, as relevant here, must have been "made by the party in an individual or representative capacity" or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(A), (D). Because NVIDIA's and Huang's statements would not be made by the government, they are not statements of a party opponent. *See Charles v. Consol. Fabrications Constr., Inc.*, 686 F. App'x 300, 303 (5th Cir. 2017) (per curiam). And to the extent Yuan intends to offer any government officials' communications to NVIDIA and Huang (rather than the other side of those conversations), those communications would not be admissible as opposing party statements either. Statements made by government agents are not admissible in criminal trials under Federal Rule of Evidence 801(d)(2)(D). *United States v. Garza*, 448 F.3d 294, 298–99 (5th Cir. 2006).

For a statement to be admissible as a business record, it must be "kept in the course of a regularly conducted activity of a business." Fed. R. Evid. 803(6)(B). Any responsive documents

20

would not be admissible as business records because NVIDIA's and Huang's statements to the government would not have been made in the "regular course of business." *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 279 (5th Cir. 1991) (citation omitted). Yuan seeks supposed records of what would be high-level meetings, such as those involving the Commerce Secretary or the President. The records requested were therefore not "created on a day-to-day basis," as is required for the business records exception to apply. *Id.* Nor are emails automatically or even typically treated as business records. *See United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019); *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). In addition, to the extent the records Yuan seeks contain statements by government officials, Rule 803(6) does not permit the admission of those records because "the source of the information is an outsider" to NVIDIA's business. *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991). Yuan has failed to demonstrate that any responsive materials fall into any exceptions to the rule against hearsay. They are inadmissible for that reason as well.

Because Yuan has failed to make a "sufficient preliminary showing that [the subpoenaed materials] contain[ ] evidence admissible with respect to the offenses charged in the indictment," his subpoena should be quashed. *Nixon*, 418 U.S. at 700.

### C.      Yuan has failed to establish that his subpoena is sufficiently specific.

Yuan's subpoena should also be quashed because its requests are not adequately specific. "[R]ule 17(c) was not intended to provide an additional means of discovery"—much less "a fishing expedition to see what may turn up." *Bowman Dairy*, 341 U.S. at 220–21. Rule 17(c)'s specificity requirement polices that boundary, requiring parties to "set forth what the subpoena's materials contain" so that courts are not required "to speculate as to the specific nature of their contents." *Arditti*, 955 F.2d at 346. Merely providing "the title of a document and conjecture as to its contents" is not enough. *Id.* at 345.

21

But Yuan has not attempted even to provide the insufficient title of documents and conjecture about their contents. That is not surprising because his speculation that any of these documents might exist flows largely from a single Truth Social post. It is nothing but guesswork. As such, Yuan "has neither demonstrated" that the materials he seeks "exist in fact nor has he identified them with any degree of particularity." *United States v. Carriles*, 263 F.R.D. 400, 404 (W.D. Tex. 2009). Because Yuan fails to even "confirm the[] existence" of the requested documents, his subpoena "is inappropriate for Rule 17(c) considerations." *Id.* at 403–04.

Coming up so short of the required level of specificity, all Yuan can do is cast his net over huge categories of generically described communications. These broad and vague categories give his subpoena every hallmark of discovery forbidden under Rule 17(c) and render compliance with the subpoena "unreasonable and oppressive." *Bowman Dairy*, 341 U.S. at 220–21. Among other documents, the subpoena seeks NVIDIA communications concerning "potential or actual U.S. Government restrictions" on exporting NVIDIA GPUs and baseboards to China, including with or regarding "any . . . federal agency," as well as NVIDIA communications concerning "any easing, suspension, delay, or modification" of such restrictions. Mot. to Issue Subpoena at 1. These categories could encompass tens of thousands of documents given that, as described above, NVIDIA frequently communicates about export restrictions for a variety of reasons. As written, these categories would capture every communication NVIDIA has with the government about every license application, any conditions attached to them, and responses to any questions the government may ask. None of those tens of thousands of documents would be relevant and it would be burdensome for NVIDIA to collect and produce them and for the Court to review *in camera*. By "set[ting] forth" sprawling "categor[ies] of materials, without a description of or reference to actual items known to exist," Yuan has engaged in "an impermissible effort to broaden

22

discovery by seeking an entire class of materials without itemization." *Carriles*, 263 F.R.D. at 404.

The broad categories of unidentified and generically described documents encompassed by Yuan's requests stand in stark contrast to the narrowly tailored third-party trial subpoena requests for particular documents that courts have concluded satisfy Rule 17(c)'s specificity requirement. To cite two examples of compliance with the specificity that Rule 17(c) requires, courts have issued subpoenas for call detail records of specific phone numbers, *see United States v. Brown*, 2023 WL 5672836, at *4 (S.D. Tex. Sep. 1, 2023), or title records for specific cars identified by VIN numbers, *United States v. Reinhart*, 2024 WL 4031826, at *5 (N.D. Tex. Aug. 30, 2024). Those requests are a world apart from Yuan's vague and broad requests.

Yuan's subpoena bears other classic indicators of a fishing expedition. In addition to the expansive categories described above, the subpoena demands "*[a]ny and all* communications between Jensen Huang" "and any member of the Trump administration concerning" restrictions on exporting NVIDIA GPUs and baseboards to China. Mot. to Issue Subpoena at 1 (emphasis added). It also requests "*[a]ny and all* notes, recordings, memoranda, or records reflecting any conversation between Jensen Huang" and either President Trump or Secretary Lutnick. *Id.* at 2 (emphasis added). And it further seeks "*[a]ny* internal [NVIDIA] assessments, legal opinions, or compliance memoranda regarding the legality" of GPU exports to China. *Id.* at 2 (emphasis added). Courts routinely hold that Rule 17(c) subpoenas seeking "any and all documents" or similar formulations are insufficiently specific. *Reinhart*, 2024 WL 4031826, at *5 (collecting cases). Just so here.

The subpoena's breadth highlights another flaw: Much of the information Yuan seeks—such as any communications regarding "U.S. Government restrictions on the export of Nvidia

23

GPUs" with "the U.S. Department of Commerce . . . or any other federal agency," Ex. A—is available from another source, namely, the government. As a related condition of obtaining materials under Rule 17(c), Yuan must show that "[t]he subpoenaed materials are not available from any other source." *Nixon*, 418 U.S. at 702; *see also* 6 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 24.3(f) (5th ed. 2025) (explaining that a Rule 17(c) subpoena is not appropriate where "the items are available from the government through discovery"). District courts have often rejected or quashed a Rule 17(c) subpoena where, as here, the materials sought by the movant were in the government's possession. *See, e.g.*, *Beckford*, 964 F. Supp. at 1031 ("The Government correctly notes that a Rule 17(c) subpoena duces tecum is improper where it calls for the production of *Brady*, *Jencks*, or *Giglio* material. That is because those materials are subject only to limited discovery pursuant to Fed. R. Crim. P. 16."); *United States v. Blakstad*, 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020) (denying motion for Rule 17(c) subpoena where the movant "has not shown that he is unable to get this same information through the normal channels of Rule 16 discovery").

Yuan's subpoena fails this requirement too, because many of the documents it seeks could be obtained from a party—the United States. The rationale for this baseline rule is especially strong here given the subject matter of these communications. The government would know whether producing these documents to a defendant charged with exporting technology to China in violation of federal law raises national security issues and could assert any related privileges.

The vast overreach of Yuan's subpoena also places significant burdens on NVIDIA's protected First Amendment speech, making plain the "unreasonable and oppressive" nature of the request. Fed. R. Crim. P. 17(c). Any communications between NVIDIA and the government about reconsideration or modifications to export control rules would constitute an exercise of

24

NVIDIA's First Amendment "right to petition"—"one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (internal quotation marks and citation omitted); *see Brown & Root, Inc. v. La. State AFL-CIO*, 10 F.3d 316, 326 (5th Cir. 1994). It is "unreasonable and oppressive" to require production of such documents when they are irrelevant and inadmissible in a criminal proceeding. Fed. R. Crim. P. 17(c)(2).

If NVIDIA—and companies like it—were at risk of having their private discussions with the government forcibly produced through third-party Rule 17(c) subpoenas based on nothing more than unsupported speculation, they might hesitate before engaging in constitutionally protected petitioning. Indeed, the Supreme Court has recognized that compelled disclosure—including via subpoena—has the potential to burden protected First Amendment conduct by discouraging individuals and organizations from freely expressing their ideas and beliefs. *See First Choice Women's Res. Ctrs., Inc. v. Davenport*, No. 24-781, slip op. at 10–13 (U.S. Apr. 29, 2026); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606–07, 610 (2021). Those chilling concerns make all the more clear that the Court should not permit Yuan's brazen attempt to scour NVIDIA's files for documents that could have no possible bearing on the license requirement he is charged with violating.

## CONCLUSION

The Court should quash Yuan's Rule 17(c) subpoena.

Dated: May 4, 2026

Respectfully submitted,

*/s/ Gregg J. Costa*

Gregg J. Costa
*Attorney-in-Charge*
   Texas Bar No. 24028160
   S.D. Tex. Bar No. 32779
Jack B. DiSorbo
   Texas Bar No. 24120804
   S.D. Tex. Bar No. 3695628
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620
*gcosta@gibsondunn.com*
*jdisorbo@gibsondunn.com*

Winston Y. Chan[*]
   California Bar No. 214884
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
*wchan@gibsondunn.com*

Stephen J. Hammer
   Texas Bar No. 24116477
   S.D. Tex. Bar No. 3963953
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
*shammer@gibsondunn.com*

*Counsel for NVIDIA Corp.*

---

[*]   Application for admission *pro hac vice* forthcoming.

26

## CERTIFICATE OF SERVICE

I hereby certify that, on May 4, 2026, a true and correct copy of this document was served by CM/ECF on all counsel of record.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Gregg J. Costa*
Gregg J. Costa
