# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

**UNITED STATES OF AMERICA**

   **v.**

**BENLIN YUAN and**
**FANYUE GONG,**
**a/k/a TOM**

**CRIMINAL NO.: 4:25-cr-687**

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNCONSTITUTIONALLY VAGUE COUNT UNDER THE EXPORT CONTROL REFORM ACT

Defendant Benlin Yuan moves under Federal Rule of Criminal Procedure 12(b)(3) to dismiss Count One because the Export Control Reform Act ("ECRA") and its implementing regulations, the Export Administration Regulations ("EAR") are unconstitutionally vague both facially and as applied. Defendant expansively argues that all of ECRA and the EAR are unconstitutionally vague on their face and as-applied to Defendant. Defendant's motion fails on multiple grounds, any of which is dispositive. Every federal circuit to address a vagueness challenge to export control statutes and regulations has rejected it and this Court should too.

As a threshold matter, Defendant cannot complain about arbitrary enforcement when he is charged with willfully violating a statute. ECRA criminalizes "willful" conduct. That is, a defendant must know that his conduct is unlawful to be convicted. 50 U.S.C. § 4819(a)(1); *see Bryan v. United States,* 524 U.S. 184, 191-93 (1998). This willfulness requirement remedies any potential vagueness in the regulations, because the government must prove not only that the items – in this case, Nvidia Graphic Processing Units ("GPUs") – were export-controlled, but also that Defendant knew that fact and conspired to export the controlled Nvidia GPUs anyway.

1

*See, e.g.*, *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1123 (scienter requirement means "government was required to prove beyond a reasonable doubt that Defendant *knew* that a license was required for the export" of the controlled item and "Defendant intended to violate the law by exporting or attempting to export [the item] to China without such a license." (emphasis in original)).

The Defendant cites no contrary authority because no such authority exists.

Further, the motion fails for several other independent reasons. First, the EAR is administered through a structured and published framework that gave fair notice. *See Zhi Yong Guo*, 634 F.3d at 1122-23. "[T]he test is whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid" *Id.* (rejecting vagueness challenge to the EAR).

Second, ECRA and the EAR regulate narrow economic activity (the export of specific export-controlled items) and thus, a less strict vagueness test applies. That is because sophisticated parties like Defendant can be expected to consult relevant regulations and have administrative mechanisms to clarify the regulation. See *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) ("economic regulation" is "often more narrow" and "businesses which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.").

Third, the as-applied challenge cannot proceed because Defendant's alleged conduct here is at the heart of the regulatory regime – unlicensed exports of controlled technologies to a prohibited destination. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-20 (2010) (one "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Fourth, the motion relies on facts such as presidential statements, a Mar-a-Lago dinner, and a December 2025 Truth Social post, that are wholly irrelevant to the constitutional vagueness question.

The Court should deny the motion. Because the issues are pure questions of law, the Court can dispose of the motion on the papers and no oral argument is required.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2025, a grand jury in the Southern District of Texas indicted Defendant on three counts, one of which is conspiring to violate ECRA. Specifically, the indictment alleges that Defendant conspired to knowingly and willfully export to China items on the Commerce Control List ("CCL"), without first having obtained a license from the Department of Commerce. To satisfy the willfulness element of the crime, the government must prove that the defendant knew that his conduct was illegal. The Nvidia products that Defendant helped smuggle included A100, H100 and H200 Nvidia GPUs. Specifically, the first shipment of controlled Nvidia GPUs that Defendant assisted in smuggling was detained by law enforcement on May 13, 2025; the second load he assisted in smuggling was detained on June 11, 2025. A criminal complaint was filed against Defendant on November 28, 2025, and he was arrested that day. Defendant was indicted on December 17, 2025. On April 20, 2026, Defendant filed several motions, including the motion at hand.

## RELEVANT LAWS AND REGULATORY FRAMEWORK

ECRA governs the export, reexport, and in-country transfer of specified commodities, software and technology. 50 U.S.C. §§ 4811, 4812. Pursuant to ECRA, the Department of Commerce reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the EAR, 15 C.F.R. parts

730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be exported lawfully from the United States or re-exported lawfully from one foreign destination to another.

The most sensitive items subject to EAR controls are identified on the CCL, published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN corresponds to export control requirements depending on the destination, end user, and end use. The Commerce Country Chart in 15 C.F.R. Part 738 lists the export restrictions relevant to each foreign country by setting out the reasons for control applicable to each country. A person can determine whether the regulations control the export of a specific item by (1) connecting the relevant description of the item in the CCL; (2) identifying the reasons for control for that item; and (3) reviewing the Commerce Country Chart to see whether the reasons for control for that relevant country would require a license.

The EAR establish the responsibility of Bureau of Industry and Security ("BIS") to approve or deny export license applications with the input of other federal agencies. If a license is required for a transaction subject to the EAR and the transaction does not qualify for a specific license exception, a U.S. person must submit a license application to BIS and receive a license prior to engaging in the transaction. The license may be subject to certain terms and conditions defined by BIS or other federal agencies.

Pursuant to 50 U.S.C. § 4819(a)(1), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this subchapter or of any regulation, order,

license, or other authorization issued under this subchapter, including any of the unlawful acts described in paragraph (2)." Such unlawful acts include, among others, that: "[n]o person may engage in any conduct prohibited by or contrary to, or refrain from engaging in any conduct required by [ECRA and the EAR], or any order, license or authorization issued thereunder," 50 U.S.C. § 4819(a)(2)(A), including the unlicensed export or reexport of an item subject to the EAR and on the CCL. 15 C.F.R. § 736.2(b)(1).

Beginning on October 7, 2022, BIS began amending the EAR to implement new controls on advanced computing integrated circuits ("ICs"), computer commodities that contain ICs, and certain semiconductor manufacturing items, including certain Nvidia-manufactured GPUs, through an interim final rule (effective on October 7, 2022). *See* 15 C.F.R. § 744.23; 87 Fed. Reg. 62186 (Oct. 7, 2022). BIS further imposed additional export controls on certain advanced computing semiconductor chips (chips, advanced computing chips, integrated circuits, or ICs), transactions for supercomputer end-uses, and transactions involving certain entities on the Entity List. *Id.* These restrictions applied to high-performance ICs that are useful in data center processing and artificial intelligence, with a total processing performance of 4800 or more, or a total processing performance of 1600 or more and a performance density of 5.92 or more. *Id.* These controls and restrictions applied to the People's Republic of China ("PRC" or "China"), including Hong Kong and Macau. *Id.*

On October 25, 2023, BIS released an interim final rule (effective on November 17, 2023) that expanded the export controls related to advanced computing and semiconductors, including with respect to additional Nvidia-manufactured GPUs, which had been developed specifically for the PRC following the October 7, 2022 restrictions. 88 Fed. Reg. 73458 (Oct. 25, 2023). According to the interim final rule, "[t]hese revisions protect U.S. national security

5

interests by further restricting China's ability to obtain critical technologies to modernize its military capabilities in ways that threaten the national security interests of the United States and its allies." *Id*.

## LEGAL STANDARDS

To be unconstitutionally vague, a statute must be "impermissibly vague in all its applications," including its application to the party bringing the vagueness challenge. *United States v. Clark*, 582 F.3d 607, 612–13 (5th Cir. 2009) (quoting *Hoffman,* 455 U.S. at 494-495); *see Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 546–47, 551 n. 19 (5th Cir. 2008). "Objections to vagueness under the Due Process Clause rest on the lack of notice and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Clark*, 582 F.3d at 613 (quoting *Maynard v. Cartwright,* 486 U.S. 356, 361(1988)).

"On the other hand, an ordinance is vague in all its applications where 'it subjects the exercise of [a] right ... to an unascertainable standard.'" *Id.* at 613 (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614 (1971). In other words, "'men of common intelligence must necessarily guess at its meaning,'" *Id.* (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391 (1926)). "When considering whether a statute is vague in all its applications, 'a reviewing court should examine the complainant's conduct *before* analyzing other hypothetical applications of the law because a [party] who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Id.* (quoting *Roark & Hardee,* 522 F.3d at 546 (quoting *Hoffman,* 455 U.S. at 497) (quotation marks and alterations omitted) (emphasis in original)). "Where constitutionally protected conduct is not threatened and 'at least some of [the defendant's] conduct is clearly proscribed' by the statute under review, it cannot be void for vagueness." *Id.* (quoting *Hoffman*, 455 U.S. at 547).

6

**ARGUMENT**

Defendant's motion argues that ECRA and the EAR are unconstitutionally vague facially and as-applied under two theories: 1) lack of fair notice and 2) risk of arbitrary enforcement. Each of the Defendant's arguments fails.

**I.    ECRA Provides Clear and Constitutionally Sufficient Notice of Prohibited Conduct**

Defendant argues that ECRA's "shifting boundaries" and "reliance on indeterminate standards" render it constitutionally deficient. Mot at 8. Defendant's argument lacks merit. ECRA and the EAR define prohibited conduct with precision through a detailed published regulatory framework, a requirement that the government prove willfulness to establish criminal liability, and a less-strict standard for regulated-industry actors who have access to channels for administrative clarification. Together, these mechanisms not only meet the constitutional standard for notice, they exceed it.

A.    The CCL Regime Provides Detailed and Specific Notice; Defendant (a Sophisticated Industry Participant) Had Multiple Avenues to Confirm its Application

Defendant argues that the CCL regime exceeds the limits of the ordinary-intelligence standard because the CCL relies on technical control parameters that require specialized expertise to interpret, "catch-all" provisions and end-use restrictions. This argument ignores the relevant constitutional standards and does not address the fact that no court has ever upheld an as-applied vagueness challenge to the export control statutes and regulations.

As noted above, "'a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.'" *See United v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005) (quoting *Hofman*, 455 U.S. at 499); *United States v. Hsu*, 364 F.3d 192, 197 (4th Cir. 2004). Every federal circuit that has considered a vagueness challenge to an export control statute and regulations has rejected such a challenge. *See United*

7

*States v. Zhen Zhou Wu*, 711 F.3d 1, 14-15 (1st Cir. 2013) (rejecting vagueness challenge to Arms Export Control Act ("AECA") and EAR; willfulness cures vagueness); *United States v. Chi Mak*, 683 F.3d 1126, 1134-36 (9th Cir. 2012) (willfulness cures vagueness in AECA context); *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122-23 (9th Cir. 2011) (rejecting vagueness challenge to EAR); *United States v. Lachman*, 387 F.3d 42, 56-57 (1st Cir. 2004) (rejecting vagueness challenge to Export Administration Act ("EAA"), predecessor statute to ECRA); *Hsu*, 364 F.3d 192, 196-98 (4th Cir. 2004) (scienter mitigates vagueness, quoting *Hoffman,* 455 U.S. at 499); *United States v. Sun*, 278 F.3d at 309 (regulated industry and scienter cures vagueness in AECA context); *United States v. Swarovski*, 592 F.2d 131, 133 (2d Cir. 1979) (rejecting vagueness challenge to AECA's predecessor statute).

Second, the CCL does not define controlled items by generalities or subjective judgments. The CCL defines controlled items by specific, published, numerical performance parameters, which provides more notice, not less. Numerical thresholds either apply to an item or they do not. While the inquiry is technical, it is not standardless. And this factor is an element of proving the offense at hand; that is, the government must prove to a jury the export classification of the items at issue and that those items required a license to export to the prohibited destination.

Third, the Ninth Circuit in *Zhi Yong Guo* stated that, "Although complicated, the Export Administration Regulations describe in detail the technologies subject to export control" and "complexity is not the same as vagueness." *Zhi Yong Guo*, 634 F.3d at 1123. Defendant complains that the CCL is technical and that ECCNs require specialized expertise to interpret. That does not add up to a vagueness defect. In *Zhi Yong Guo*, which involved the export of a thermal imaging camera to China that was controlled for export under the EAR, the court noted

8

that "one must look at four sources and read them together;" the statute, implementing regulations, the CCL and the Commerce Country Chart. *See Zhi Yong Guo*, 634 F.3d at 1122. The court found that "a statute does not fail the vagueness test simply because it involved a complex regulatory scheme, or requires that several sources be read together, and Defendant has not directed us to a single case" in which the court had held otherwise. *Id.* The same applies here. In fact, while the regulations are technical, the applicable rules are not particularly complex. The 2022 and 2023 advanced computing regulations plainly apply to the technical parameters of A100s, H100s and H200s.

Fourth, the *Hoffman* regulated-industry standard governs, and Defendant himself invoked it in the motion. Defendant, by his own admission, is a "business information technology executive" operating in a "commercial marketplace." Mot at 1. In *Hoffman*, the Supreme Court noted that the "degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Hoffman*, 455 U.S. at 498. "[E]conomic regulation is subject to a less strict vagueness test because…the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.* The Fifth Circuit has also applied this standard. *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 507-08 (5th Cir. 2001) (economic regulation is invalidated "only if it commands compliance" in terms "so vague and indefinite as really to be no rule or standard at all" or if it is "substantially incomprehensible") (internal citations and quotations omitted).

Defendant is a regulated-industry participant and therefore the less-strict standard applies. *See Hoffman,* 455 U.S. at 498. Indeed, a vagueness challenge "comes with little grace from one

9

who was fully cognizant of the wrongfulness of his acts." *United States v. Swarovski,* 592 F.2d 131, 131-32 (2d Cir. 1979).

> B.    ECRA's Controls on Nvidia GPUs Were Stable and Published Throughout the Charged Conduct; Post-Arrest Statements By Executive Branch Officials Do Not Render Them Retroactively Vague

Defendant argues that regulatory changes in export controls make ECRA a "moving target" with no fixed standards. Defendant then states that Trump's statement on December 8, 2025 – which occurred well after the alleged conduct and did not change the law requiring a license to export Nvidia H100s and H200s to China – demonstrates the lack of fixed legal standards. These arguments fail for multiple reasons.

First, statements made by the executive branch after the conduct about future regulatory or licensing policy cannot retroactively render a regulation vague. *See United States v. Lanier*, 520 U.S. 259, 259 (1997) ("touchstone is whether the statute, either standing alone or as construed by the courts, made it reasonably clear *at the time of the charged conduct* that the conduct was criminal") (emphasis added). The regulations in force published in 2022 and 2023 governed Defendant's conduct, and the interim final rules published in the Federal Register provided fair notice. *See Zhi Yong Guo*, 634 F.3d at 1122-23. Statements made in December 2025 after the Defendant's arrest are irrelevant.

Second, the cited 2025 events do not even purport to change the regulatory requirement applicable to Defendant's conduct. Until BIS publishes a rule in the Federal Register revising the relevant controls, the existing controls govern. "Agencies must publish substantive rules in the Federal Register to give them effect." *Natural Resources Defense Council v. E.P.A.*, 559 F.3d 561, 565 (D.C. Cir. 2009); *Horsehead Resource Development Co., Inc. v. E.P.A.*, 130 F.3d 1090, 1092 (D.C. Cir. 1997) ("we conclude that an OSHA standard is *promulgated* on the date that it is

10

published in the Federal Register.") (emphasis in original); *Sierra Medical Center v. Sullivan*, 902 F.2d 388, 391 (5th Cir. 1990). None of the events Defendant cites altered those controls. Indeed, Defendant's narrative confirms the regulatory baseline rather than undermining it. If anything, subsequent statements about possibly easing licensing policy on H200s confirm that strict controls existed when Defendant acted.

Third, regulatory regimes evolve constantly without becoming "vague." Securities, tax, environmental, and import regulations, among many others, all change frequently. Adopting Defendant's logic would invalidate significant portions of federal criminal law.

Defendant cites *Kolender v. Lawson* in support of the proposition that ECRA is impermissibly vague because of these "shifting and discretionary pronouncements." Mot at 11. In *Kolender*, the court found a state law impermissibly vague that required individuals to provide "credible and reliable" identification when requested by a police officer but had "no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification" and vested complete discretion in the hands of the policy to determine whether a suspect satisfied that standard." *Kolender*, 461 U.S. 352, 358 (1983). Here, the regulations in place at the time of the alleged conduct included clear, established parameters.

## II.      ECRA's Framework and Willfulness Element Prevent Arbitrary Enforcement

ECRA does not invite arbitrary enforcement. To the contrary, the statute and implementing regulations constrain arbitrary enforcement through three ways, discussed below. Further, the phrase "contrary to" is not impermissibly vague because it is not abstract but instead is pegged to specific technical requirements and because the willfulness requirement cures any potential lack of clarity. Finally, ECRA and the EAR are not unconstitutionally vague as applied

to Defendant because the alleged conduct invokes the heart of the regulation – conspiring to unlawfully export controlled technologies to a prohibited destination.

A.    ECRA and the EAR Constrain Arbitrary Enforcement Through Published Guidelines and Willfulness Requirement

Defense argues that ECRA confers "sweeping discretion" on the Commerce Department to designate items as controlled "without meaningful limiting principles." Mot at 12. That description of the regulatory framework is flawed on many levels.

First, ECRA and the EAR are rule-bound, not standardless. ECRA does not authorize the Commerce Department to make *ad hoc* designations of items as controlled. ECRA directs Commerce to develop and establish controls through a structured notice-and-comment rulemaking process under the Administrative Procedures Act ("APA") (which is subject to judicial review), publication in the Federal Register and codification in the Code of Federal Regulations. 5 U.S.C. § 553; 50 U.S.C. §§ 4814, 4817. The CCL is a published list and each ECCN is defined by specific technical parameters. 15 C.F.R. Part 774, Supp. No. 1. Each ECCN has reasons for control that are enumerated. The Commerce Country Chart ties specific controls to specified destinations. 15 C.F.R. 738.3. Defense complains that ECCN designations require expertise. That may be true, but it is irrelevant. ECRA and the EAR are based on standards and guidelines. *See Zhi Yong Guo*, 634 F.3d at 1119.

Second, Defense argues that the EAR's authority to control "emerging technologies" as evidence of standardless discretion. However, the items that are at issue here – Nvidia A100, H100 and H200 GPUs – are not "emerging technologies" subject to any interim designation. They are classified by the CCL under enumerated ECCNs with specific technical parameters. Accordingly, Defense's reference to the government's "warrant control" authority for emerging technologies is irrelevant and inapplicable.

12

Third, as noted above, ECRA's willfulness element limits prosecution to cases where the government can show a defendant knew he was violating the law. The willfulness element of ECRA protects from criminal liability a person who exports or attempts to export a controlled good without a license under the mistaken but good faith belief that the item could be exported without a license. *See, e.g.*, *United States v. Lee,* 183 F.3d 1029, 1032–33 (9th Cir.1999) (stating that inclusion of a scienter requirement in the AECA "protects the innocent exporter who might accidentally and unknowingly export a proscribed component or part whose military use might not be apparent"). The willfulness requirement substantially mitigates the risk that an unclear regulation could subject an individual to arbitrary criminal enforcement. If Defendant had a good faith belief during the conspiracy that he was not acting unlawfully, that is a defense he can put forth in trial. That willfulness requirement is a constraint on criminal enforcement discretion. A regulator with broad authority to make rules is not the same as a prosecutor with broad charging authority. *See Hoffman*, 455 U.S. at 499.

B.    The Phrase "Contrary To" Is Not Impermissibly Vague

Defense argues that the phrase "contrary to" in 50 U.S.C. § 4819(a)(2)(A) is impermissibly vague, comparing it to the Armed Career Criminal Act ("ACCA") residual clause that was struck down in *Johnson v. United States*, 576 U.S. 591 (2015). This analogy fails.

*Johnson* struck down the ACCA residual clause because the clause required courts to determine, in the abstract, whether an imagined "ordinary case" of a crime posed a "serious potential risk of physical injury" and left uncertainty about how much risk is required for a particular crime to qualify as a "violent felony." *See Johnson*, 576 U.S. at 591-92. The court found the "uncertainties produce more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id*. *Sessions v. Dimaya* also involved "an ordinary-case requirement and an ill-

13

defined risk threshold—combined in the same constitutionally problematic way." *Sessions v. Dimaya*, 584 U.S. 148, 157 (2018).

Here, there is nothing abstract or uncertain about ECRA's "contrary to" language. It does not tie liability to a vaguely defined standard such as the degree of risk in an imagined case, but rather connects liability to violations of identifiable, published EAR provisions and a defendant's actual conduct. Additionally, the Supreme Court has been clear that *Johnson* does not extend to all statutes that may resemble the residual clause in ACCA, *see Beckles v. United States*, 580 U.S. 256, 263-66 (2017), and in the more than ten years since *Johnson* was decided, no court has extended its holding to the export control context.

Moreover, the same willfulness cure that disposes of this motion as a whole, applies to this argument in particular. A defendant who knew his conduct was unlawful cannot complain that "contrary to" language failed to give him notice. *See Hsu*, 364 F.3d at 197 (under the specific intent required as an element of this offense, the government must prove that a defendant intended to violate the law to obtain a conviction, thereby eliminating any genuine risk of holding a person "criminally responsible for conduct which he could not reasonably understand to be proscribed") (quoting *Sun,* 278 F.3d at 309)).

C.      As Applied to Defendant, ECRA and the EAR are Not Unconstitutionally Vague

Defense argues that the as-applied facts of this case "illustrate the risk of arbitrary enforcement" pointing to the interim final rules issued in 2022 and 2023, asserting the framework allowed for "the Government to characterize conduct as criminal after the fact," the notation that some items were "ECCN undeterminable" in the complaint, and Trump's statements about export control policy after the alleged conduct. Mot at 13-15. These arguments are wrong as a matter of law and fact.

14

First, the conspiracy alleged is based on conduct clearly prohibited by the EAR. The interim final rules published in 2022 and 2023 implemented controls on advanced computing ICs, computer commodities that contain ICs, certain semiconductor manufacturing items, advanced computing semiconductor chips, including Nvidia GPUs. The purpose of these controls was "to protect U.S. national security interests by further restricting China's ability to obtain critical technologies to modernize its military capabilities in ways that threaten the national security interests of the United States and its allies." 88 Fed. Reg. 73458 (Oct. 25, 2023). The regulations governing these specific technologies, with respect to China, are unambiguous: a license was and is required. The alleged conspiracy targets conduct at the core of the regulation, not a marginal case. In *Holder*, the Supreme Court rejected a vagueness challenge to the federal criminal statute prohibiting the provision of material support to foreign terrorist organizations, 18 U.S.C. § 2339B, because the plaintiff's conduct was clearly proscribed by the statute. *Holder*, 561 U.S. at 18-22. The Court held that "the dispositive point is that [the statute's] terms are clear in their application to plaintiff's proposed conduct," and rejected the notion of considering "hypothetical situations testing the limits" of specific terms that were not at issue in the litigation. *Id*. That same logic applies here. The alleged conspiracy to export advanced GPUs to China without a license is not a hypothetical edge case but rather the regulations' central application.

The defense twice invokes the reference in the criminal complaint to certain detained items as "ECCN undeterminable" as evidence that the regulatory scheme is indeterminate. Mot 2, 14. That is a mischaracterization. The "ECCN undeterminable" notation refers to a limited subset of detained items whose physical inspection and verification was pending when the complaint was sworn out. That notation is not a representation that the regulatory regime cannot

15

determine ECCN classifications generally. The Indictment includes the various controlled commodities at issue and the government must prove that these items required a license for export to China.

Defense's as-applied arbitrary enforcement argument also relies on statements by the President about a change in export policy that occurred after the defendant was arrested. That argument fails on its own terms. Subsequent statements about potentially easing controls on H200s (notably, a license is still required) confirm that the controls existed during the time of the alleged conspiracy.

## CONCLUSION

For the reasons stated herein, the United States requests that Defendant's Motion to Dismiss, ECF 130, be denied.

Respectfully submitted this 4th day of May, 2026.

Respectfully submitted,

**JOHN MARCK**
ACTING UNITED STATES ATTORNEY

BY:    _____
S. MARK MCINTYRE
ROBERT JOHNSON
CRAIG FEAZEL
ASSISTANT U.S. ATTORNEYS


**JOHN A. EISENBERG**
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION


BY:    _____
FATEMA MERCHANT
TRIAL ATTORNEY

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was delivered to all counsel of record

on May 4, 2026, by electronic filing.

*/s/ Fatema Merchant*
Fatema Merchant
Trial Attorney