# EXHIBIT B

**U.S. Department of Justice**

*United States Attorney's Office*
*Southern District of Texas*

| | |
|---|---|
| *1000 Louisiana* | *Phone: (713) 567-9000* |
| *Suite 2300* | *Fax: (713) 718-3300* |
| *Houston, Texas 77002* | |

March 5, 2026

**VIA EMAIL**

John Brownlee
Holland & Knight
1650 Tysons Blvd., Suite 1700
Tysons, VA 22102

      Re:  *United States v. Benlin Yuan, Fanyue Gong*, H-25-CR-687

Dear Counsel:

This letter is in response to your December 27, 2025, letter and March 4, 2026, email requesting discovery on behalf of defendant Benlin Yuan. The government acknowledges that it must produce non-privileged material that falls within Rule 16, the Constitution, *Brady*, *Giglio*, and the Jencks Act. At this point, the government has provided discovery to both defendants that we believe satisfies our discovery obligations. To the extent additional material is identified that falls within these obligations, it will be produced.

Some of what you are requesting is far beyond the scope of discovery contemplated by the rules, U.S. Constitution and case law, and we decline to produce such material. For example, you "request any and all communications and any other records, memoranda, letters, or policy papers related to the government's decision to permit Nvidia Corporation ("Nvidia") to sell its GPUs to customers in China as announced by President Trump on or about December 8, 2025, at 4:29 pm in a Truth Social post." Yuan Ltr. at 2. This request includes "readouts" of "telephone calls between the President Trump and (1) President Xi of China," and "(2) anyone else, on the subject of GPUs being legally sold to customers in China." *Id.* In addition, by email on March 4, 2026, you request communications between government officials, including President Trump, and Nvidia concerning restrictions on the export of Nvidia GPUs and related products to China.

These requests seek information that is not exculpatory, is not relevant to any defense, and does not fall within Rule 16 or *Brady*. Rule 16 requires the government to produce items "within the government's possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Evidence is only "material to preparing the defense" if

Page 1 of 4

there is "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Reeves*, 892 F.2d 1223, 1226 (5th Cir.1990).  Evidence is material to the defense "if it could be used to counter the government's case or to bolster a defense," but "information not meeting either of those criteria is not to be deemed material within the meaning of the Rule." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).  Under *Brady* and its progeny, "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001).

Here, the government alleges that defendant Yuan conspired to violate the Export Control Reform Act.  Specifically, the indictment alleges that, between May 2025 and December 17, 2025, the defendants conspired to knowingly and willfully export to China items on the Commerce Control List, without first having obtained a license from the Department of Commerce.  To satisfy the willfulness element of the crime, the government must prove that the defendant knew that his conduct was illegal.  The Nvidia products that Yuan helped smuggle included A100 and H200 Nvidia GPUs.  The first load Yuan assisted smuggling was detained by law enforcement on May 13, 2025; the second load he assisted smuggling was detained on June 11, 2025.  The criminal complaint was filed against Yuan on November 28, 2025, and he was arrested that day.  On December 8, 2025, after Yuan was arrested and in custody, President Trump announced in his post that "the United States will allow NVIDIA to ship its H200 products to approved customers in China, and other Countries, under conditions that allow for continued strong National Security."  The grand jury returned an indictment on December 17, 2025. On January 15, 2026, regulations related to the President's post were published in the Federal Register.

Based on your statements at the hearing on February 23, Yuan apparently claims the President's December 2025 post constitutes a "change in the law" governing the export of GPUs to China, that discussions between President Trump, President Xi, Nvidia, and others leading up to this announcement may also constitute a change in the law, and that those discussions are relevant to assessing Yuan's willfulness.  This argument fails for a number or reasons.

First, at the time Yuan assisted with the smuggling operation, the law clearly prohibited the export of Nvidia A100 and H200 GPUs to China without a license.  This is still the case today—the license requirement is unchanged.  What has changed, is that it is now possible a license may be granted, depending on where the GPU is going within China and its intended use – but any export to China still requires a license, and to obtain that license, one must meet rigorous conditions in order to protect national security.  Yuan's conspiracy to export to China without a license was a crime in May and June of 2025 when he assisted with the smuggling operation, it was a crime in December of 2025 when he was indicted, and it is still a crime today.  In short there has been no change to the law that affects whether or not Yuan's conduct of endeavoring to export without a license constitutes a crime.

Second, even if President Trump's statement itself constituted a change in the law (which it does not), the statement post-dates Yuan's involvement in the crime.  The acts Yuan took in furtherance of the conspiracy, the filing of the complaint, and the arrest of Yuan all predate the

President's December 8, 2025, post. Therefore, any purported change to the law occurred <u>after</u> Yuan had committed his acts in furtherance of the scheme, making any alleged change irrelevant.

Third, discussions about changing a law do not themselves constitute a change in the law. Any discussions President Trump may have had with President Xi or others about the export of Nvidia chips did not on their own change the governing regulations, nor did policy papers or other discussions within government or with Nvidia about that issue. "Agencies must publish substantive rules in the Federal Register to give them effect." *Natural Resources Defense Council v. E.P.A.*, 559 F.3d 561, 565 (D.C. Cir. 2009); *Horsehead Resource Development Co., Inc. v. E.P.A.*, 130 F.3d 1090, 1092 (D.C. Cir. 1997) ("we conclude that an OSHA standard is *promulgated* on the date that it is published in the Federal Register."); *Sierra Medical Center v. Sullivan*, 902 F.2d 388, 391 (5ᵗʰ Cir. 1990). Under ECRA, the President sets export policy and the Commerce Secretary administers such policy. *See* 50 U.S.C. §§ 4812; 4813. On December 8, 2025, the President announced the change in licensing policy, and on January 15, 2026, rules were published in the Federal Register that, in part, revised the license review policy for exports of Nvidia H200 GPUs to China from a presumption of denial to a case-by-case review with rigorous conditions, leaving the license requirement intact. In other words, the regulatory change is wholly irrelevant here – it did not change the law that unlicensed exports of these GPUs to China are prohibited.

Fourth, regarding Yuan's intent, there is no indication, and you have not claimed, that Yuan was party to discussions between Presidents Trump and Xi or Nvidia regarding the legality of exporting Nvidia GPUs to China or otherwise knew of the discussions. If Yuan had no knowledge of the content of those discussions, those discussions could not have affected his mental state for knowledge, intent, or willfulness.

Finally, the information you seek is not in the "possession, custody, or control" of the government for purposes of disclosure under Rule 16 or *Brady*. Generally, items are deemed to be in the government's possession, custody, or control when the prosecution has actually reviewed the items, or they are in the prosecution's files. *United States v. Scott*, 2021 WL 2210925 at *2 (E.D. La. June 1, 2021). In addition,

> government possession custody or control extends to materials in the possession of another federal—or even state—agency when the prosecutor is engaged in a joint investigation with that other agency or when the other agency is so closely aligned with the prosecution as to be considered part of the prosecution team or has contributed significantly to the investigation or prosecution.

*Id.* (collecting cases); *see also United States v. Baker*, 2014 WL 722097 at *3 (W.D. Tex. Feb. 21, 2014) (denying motion to designate SEC as part of the prosecution team and denying order compelling disclosure from the SEC) (*citing United States v. Antone*, 603 F.2d 566, 569-70 (5ᵗʰ Cir. 1979). "Courts have been careful to impose the disclosure obligations created by Rule 16(a)(1) only on government attorneys and law enforcement officials actually involved in the prosecution or investigation of a particular case." *United States v. Attanasio*, 2005 WL 8153622, at *2 (E.D.N.Y. Sept. 9, 2005); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term "government" in this rule narrowly to mean the

prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the "government" in general"); *United States v. Chalmers*, 410 F.Supp. 2d 278, 287-89 (E.D.N.Y. 2006) (defendants not entitled to require government to search holdings of NSA and CIA because defendants failed to "establish that each of the [agencies] was part of the 'prosecution team'").

Here, the prosecution has not reviewed and does not have in its files transcripts of telephone calls between Presidents Trump and Xi, communications with Nvidia, or policy analyses regarding the export of chips to China. Since the White House is not part of the "prosecution team," material solely in its possession is not subject to disclosure under the discovery rules.[1]

Sincerely,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

Robert S. Johnson
Assistant United States Attorney

---

[1] To the extent Defendant seeks information not under the control of the prosecution, the *Touhy* regulations may apply. *See United States v. Soriano-Jarquin*, 492 F.3d 495, 504-05 (4th Cir. 2007).