**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No.: 4:25-cr-00687** |
| **v.** | § | |
| | § | **Honorable Kenneth M. Hoyt** |
| **BENLIN YUAN and** | § | |
| **FANTUE GONG,** | § | |
| | § | |
| **Defendants** | § | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT BENLIN YUAN'S MOTION TO SUPPRESS FOR FILTER REVIEW-RELATED CONSTITUTIONAL VIOLATIONS**

Plaintiff United States of America, by and through Acting United States Attorney John G.E. Marck and the undersigned Assistant United States Attorneys, hereby opposes Defendant Benlin Yuan's Motion to Suppress for Filter Review Related Constitutional Violations (Docket No. 131).

In his motion, Defendant Yuan incorrectly argues that the government's filter review violated his constitutional rights by contravening the separation of powers and infringing on his Sixth Amendment right to effective assistance of counsel. Defendant's chief complaint relates to Mandarin-language email communications with an attorney in California that were not found and filtered by the filter team and were made available to the prosecution team. However, no member of the prosecution team saw those communications. Indeed, no AUSA or Trial Attorney on the prosecution team has even seen the digital device extractions (or has the ability to see the extractions) that contain the complained-of communications. The only agent who reviewed the extractions never saw the communications. Additionally, all communications are in Mandarin and he does not speak Mandarin. Defendant has suffered no prejudice, and his motion should be denied.

In criminal cases, filter teams are regularly used and approved in this district and across the country. The filter procedure used by the prosecution followed procedures commonly

1

employed in similar situations. The evidence collected by the government was lawfully seized, carefully reviewed, and potentially privileged information was flagged and segregated from the prosecution team. Indeed, approximately 146 items from Defendant Yuan's iPhone were filtered and kept from the prosecution team. Six items from Defendant Yuan's Camiwell ThinkPad were initially flagged for further review. After further review those six items were determined to not be privileged and were forwarded to the prosecution team. Defendant Yuan has not asserted a privilege as to any of those six documents, or any other document actually seen by the prosecution team.

The government's filter review was implemented specifically to protect the defendant's constitutional rights and did so effectively. The filter review effectively segregated potentially privileged materials; thus, none was seen by the prosecution team. As a result, suppression or any other remedy is unwarranted.

## FACTUAL BACKGROUND

On July 7, 2025, Defendant Yuan returned to the United States via Denver on a pre-cleared Air Canada flight from Toronto, Canada. He was carrying four digital devices with him, including a Camiwell Lenovo ThinkPad ("Camiwell ThinkPad"), a Supsyc Lenovo ThinkPad ("Supsyc ThinkPad"), an Apple iPhone ("iPhone"), and a Sandisk USB drive ("USB").

At that time, Homeland Security Investigations Special Agent Jeffrey Rich of the Dallas Field Office Counterproliferation Group was investigating Defendant Yuan for violations of the Export Control Reform Act and Export Administration Regulations related to the illicit acquisition and export of Nvidia graphics processing units. Special Agent Rich requested that Defendant Yuan be referred to secondary inspection. After interviewing Defendant Yuan and manually reviewing his digital devices, agents on the scene detained the devices and sent them to the HSI Dallas Field office for forensic review and extraction. No privileged items were seen and no indications suggesting the presence of privileged items were seen at that time.

Special Agent Rich received the devices in Dallas on or about July 9, 2025. Special Agent Rich did not initially review the four devices or any of the material thereon. Rather, he transferred

the four devices to HSI Computer Forensic Analyst Zinasia Woolfolk for forensic extraction and analysis. CFA Woolfolk successfully extracted approximately 1.1 terabytes of data from the Camiwell ThinkPad, Apple iPhone, and Sandisk USB drive. She could not recover data from Supsyc ThinkPad because of a secure network boot loading process and encrypted hard drive.

Special Agent Rich received the extracted data on July 28, 2025. Special Agent Rich made a cursory review of all three devices and then focused first on the iPhone.

On August 25, 2025, while reviewing the iPhone, Special Agent Rich saw an apparently privileged conversation between Defendant Yuan and an attorney in Maryland. Special Agent Rich did not read the conversation, immediately stopped his review of the digital devices, and contacted AUSA John Marck. AUSA Marck created a filter team protocol. That filter process was to involve a filter agent, David Finley (then of the Homeland Security Investigations' Dallas Airport Group) and two Southern District of Texas AUSAs Shawn Nelson and Amanda Alum (of the Narcotics and Immigration Sections, respectively) who would review materials identified by the filter team agent as containing potentially protected or non-protected items and ensure that presumptively protected items are removed. Search terms related to the attorney's name, address, phone numbers, and email addresses were created and used.

Special Agent Finley reviewed the original iPhone extraction and found approximately 146 potentially privileged items. Special Agent Finley arranged for those items to be filtered from the original extraction, creating two new extractions. One contained the 146 potentially privileged items and the other contained all of the remaining documents. The other contained only the remaining, filtered documents. CFA Woolfolk loaded these two extractions into Cellebrite viewer software and into Axiom reviewer software. Those new extractions were loaded onto a hard drive that was delivered to AUSA Nelson in Houston. AUSA Nelson could not review the extractions within either the Cellebrite or Axiom viewer software due to IT issues – primarily network restrictions not allowing Cellebrite or Axiom .exe files to run. On September 23, 2025, AUSA Nelson consulted with the head of the IT Section, Duane Powlett. Mr. Powlett advised that approval from IT staff at the Executive Office for United States Attorneys would be needed to

install and use the necessary software. Mr. Powlett worked on obtaining that approval but that was delayed by the government shutdown, which ran from October 1, 2025, through November 12, 2025.

In the meantime, AUSA Nelson searched the iPhone extraction from which potentially privileged materials had already been filtered via keyword searches in Windows Explorer and found no additional potentially privileged information materials therein. AUSA Nelson informed Special Agent Rich that the review of the iPhone extraction could continue with the previously identified potentially privileged material removed.

Special Agent Rich then restarted his review of the iPhone extraction. As a precaution, he began that review by checking that the potentially privileged materials had been removed by entering the same search term that originally found the potentially privileged material. Special Agent Rich again saw that the same conversation came up as a "hit." Special Agent Rich again did not read the conversation, immediately stopped his review of the iPhone extraction, and consulted with CFA Woolfolk. CFA Woolfolk determined that a software error had allowed the filtered content to remain in the supposedly filtered version of the iPhone extraction. CFA Woolfolk refiltered the potentially privileged items from the iPhone extraction and provided that newly filtered iPhone extraction to Special Agent Rich. Special Agent Rich, again, as a precaution, checked for the potentially privileged conversation that he had previously seen by reentering the same search term. The previously seen potentially privileged information did not return as a hit. Special Agent Rich then reviewed the filtered iPhone extraction.

On October 10, 2025, Special Agent Finley reviewed the USB drive and found no potentially privileged information.

After reviewing the iPhone and USB drive, Special Agent Finley, reviewed the Camiwell ThinkPad and found six potentially privileged documents. Those six files were "NameHistory.csv," "NameHistory (1).csv," "Shareholders Agreement.doc," "Bylaws_Uscient_draft.doc," "$R62BLRX [AC Retainer].doc," and "ACH info Chase.docx." To

4

work around the USAO IT bottleneck, around October 23, 2025, the filter agent provided those six files to AUSA Nelson via a USAfx dropbox.

AUSA Nelson promptly reviewed those six documents. On October 28, 2025, AUSA Nelson emailed Special Agent Finley, attaching "NameHistory.csv," "NameHistory (1).csv," "Shareholders Agreement.doc," and "Bylaws_Uscient_draft.doc," and informing Agent Finley that the attachments were not privileged and could be shared with the prosecution team. On November 7, 2025, AUSA Nelson again emailed Agent Finley reaffirming that the four preceding documents could be shared with the prosecution team but that "$R62BLRX [AC Retainer].doc," and "ACH info Chase.docx" should not be shared with the prosecution team at that time. Special Agent Finley coordinated with CFA Woolfolk to filter the last two documents from the Camiwell ThinkPad. CFA Woolfolk gave Special Agent Finley a filtered ThinkPad extraction. Special Agent Finley and Special Agent Douglas Choi reviewed that extraction and confirmed that the filtered documents were not in the filtered extraction. Special Agent Finley then gave the filtered extraction to Special Agent Rich.

Defendant was charged by complaint on November 28, 2025, and the co-defendant was so charged four days later. (4:25-mj-00712, Docket No.1; 4:25-mj-00718, Docket No.1.). Defendant Yuan retained and was now represented by counsel. A grand jury indicted both defendants on December 17, 2025. (4:25-cr-00687, Docket No. 1.)

In January 2026, Special Agent Rich asked CFA Woolfolk to load the original and filtered extractions from the Camiwell ThinkPad, iPhone, and USB drive onto a hard drive so that the extractions could be produced in discovery. CFA Woolfolk loaded those extractions onto a hard drive. The filtered extractions contained a reader that made them reviewable. The raw extractions did not contain a reader; thus, they were not reviewable by the prosecution team. There was also a password protected zip file containing the potentially privileged material from the iPhone. No password was provided to the prosecution team. Thus, that file was also unreadable by the prosecution team.

5

Special Agent Rich made sure that content had been loaded onto that hard drive (he did not review any contents) and sent that hard drive to AUSA Robert Johnson on or about January 21, 2026. AUSA Johnson did not access any data on that hard drive. Rather, he coordinated the copying of the hard drive by support staff. No one at the USAO reviewed the contents of the hard drive. Copies of the hard drive were provided to the defendants on January 29, 2026. The original hard drive was returned to AUSA Johnson's office, where it sat, un-accessed and unexamined until May 4, 2026.[1]

In early March 2026, the prosecution team asked AUSA Nelson about the remaining two documents from the Camiwell ThinkPad that had been withheld. AUSA Nelson prepared a privilege log of the six documents and provided that to the prosecution team. AUSA Nelson consulted with AUSA Audrey Maness, who has expertise in attorney-client, work product, and filter issues. AUSAs Nelson and Maness determined that the two remaining documents ("$R62BLRX [AC Retainer].doc," and "ACH info Chase.docx") were also not privileged and could be disclosed to the prosecution team.

On March 13, 2026, in response to questions from the defense, AUSA Nelson provided via email and USAfx drop box the six files from the ThinkPad to the defense. The defense should have already received these documents in the unfiltered production they received in discovery on January 29, 2026. Additionally, on April 27, 2026, AUSA Nelson separately provided the 142 items that had been filtered from the iPhone extraction to the defense. Again, they should have already received these documents in the unfiltered production they received in discovery on January 29, 2026.

---

[1] On May 4, 2026, Department of Commerce Special Agent Tyler Fox accessed the hard drive to take screenshots of filenames for the government's opposition Defendant Yuan's discovery motion. He only "screenshotted" file names and did not access any of the contents of the hard drive. In fact, he would have been unable to review any of the unfiltered extractions because they were delivered as a raw forensic extraction requiring specialized software to process that raw forensic extraction to generate a format compatible with a reader. Also, the unprocessed forensic extraction did not come with a reader. Further, the communications were in Mandarin and Special Agent Fox does not read Mandarin.

**ARGUMENT**

**I.    INTRODUCTION**

Where "potentially-privileged documents are already in the government's possession … the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *In re Grand Jury Subpoenas*, 454 F.3d 511, 522-23 (6th Cir. 2006). The use of a filter team is a common procedure and has been deemed adequate to protect attorney-client communications. *United States v. Avenatti*, 559 F. Supp. 3d 274, 282 (S.D.N.Y. 2021) (citations omitted). The Government should be allowed to make fully informed arguments as to privilege if the public's strong interest in the investigation and prosecution of criminal conduct is to be adequately protected. *Id*. at 283 (quotation omitted).

While such materials can be presented to the court for review and disclosure, where the government takes precautions to shield the prosecution team from viewing potentially privileged materials such that the prosecution team receives no privileged information there is no harm to the defendant. *United States v. Neil*, 952 F. Supp. 834, 841 (D.D.C. 1997) ("If the government demonstrates that no harm, that is, no privileged information regarding trial strategy or otherwise has been communicated to the prosecutors and used to the defendant's detriment, there is no constitutional violation."); *cf United States v. Aucoin*, 964 F.2d 1492, 1499 (5th Cir. 1992) (applying the harmless error analysis to a claim of attorney-client privilege). Furthermore, inappropriate disclosures of facts are presumptively less harmful than disclosure of communications or of trial strategy. *Neil*, 952 F. Supp. at 842. This makes sense, because the attorney-client privilege itself is not a constitutional right in itself but, rather, is an evidentiary privilege. *United States v. Ritchey*, 605 F. Supp. 3d 891, 901 (S. D. Miss. 2022) (noting that the "attorney-client is not a constitutional right but rather an evidentiary privilege") (citing *United States v. Diaz*, 941 F.3d 729, 739 (5th Cir. 2019)).

7

While the privilege can be an important protector of the Sixth Amendment right to counsel, a true Sixth Amendment issue is only implicated when inappropriate disclosure of trial or litigation strategy occurs. *See Neil, supra, United States v. DeCologero*, 530 F.3d 36, 64 (1st Cir. 2008) ("The government's intrusion into the attorney-client relationship is not a per se Sixth Amendment violation; there also be some demonstration of resulting prejudice") (internal citation and quotation omitted). Furthermore, the protection of the privilege extends only to communications and not to facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (citation omitted). While it would be inappropriate to disclose to the prosecution team what a client said to an attorney, it would not be inappropriate to disclose the factual substance of that communication, apart from the communication. (*Id.*)

For a communication to be protected under the privilege, the proponent must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). The party asserting the attorney-client privilege bears the burden of establishing the privilege. *United States v. Miller*, 660 F.2d 563, 570 (5th Cir. 1981) (vacated on other grounds). Because the privilege withholds relevant information from a factfinder, it should be construed narrowly and only apply when necessary to achieve the purpose of encouraging full and frank communication between an attorney and client. *Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) *citing Equal Employment Opportunity Commission v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). "[A]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *BDO USA, L.L.P.*, 876 F.3d at 695.

## II.   DEFENDANT HAS NOT IDENTIFIED PRIVILEGED DOCUMENTS THAT ACTUALLY TAINTED THE PROSECUTION TEAM

From the two devices that contained potentially privileged materials, the filter team initially segregated approximately 152 items. Six items containing potentially privileged materials were subsequently disclosed to the prosecution team. These six items were ultimately determined to be

not privileged. The filter team withheld 146 communications from the iPhone. The filter team does not propose to share these communications with the prosecution team without notifying defendant and giving him the opportunity to object.

The six items that were initially flagged in the filter team's review, NameHistory.csv," "NameHistory (1).csv," "Shareholders Agreement.doc," "Bylaws_Uscient_draft.doc," "$R62BLRX [AC Retainer].doc," and "ACH info Chase.docx," were later determined by the filter team to not be privileged. This was not a close decision that needed special consideration or procedures. The government stands by those determinations.

**A.    The Six Disclosed Documents from the ThinkPad Are Not Covered by the Attorney Client Privilege Because They Do Not Reveal Confidential Communications**

The "Name History" files did not contain any communication or the name of Defendant Yuan's known attorney. They are clearly not privileged.

The "Shareholders Agreement" and "Bylaws" are also clearly not privileged. They were not contained in any communication and don't contain any communication, from an attorney or otherwise. The mere fact that they may have at one point been written by an attorney does not make them subject to the privilege.

The remaining two documents, the retainer and the payment information are also generally not privileged subject to exceptions that were clearly not present here. "As a general rule, client identity and fee arrangements are not protected as privileged." *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991); *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505 (5th Cir. 2020). Retainer agreements and employment contracts are not privileged. *Beanal v. Freeport McMoRan, Inc.*, 1996 WL 251839 (E.D. LA 1996), citing *In re Grand Jury Subpoena*, 926 F.2d 1423, 1431 (5th Cir. 1991). The purpose for which the attorney was retained is not privileged, nor are the steps taken by the attorney to discharge that purpose. *C.J. Calamia Constr. Co. v. ARDCO/Traverse Lift Co.*, 1998 WL 395130 *3 (E.D. LA 1998), citing *In re LTV Sec. Litig.*, 89 F.R.D. 595, 603 (N.D.Tex.1981); *Church of Scientology v. Cooper*, 90 F.R.D. 442, 443 (S.D.N.Y.1981). A narrow

exception exists when revealing the identity of the client and fee arrangements would itself reveal a confidential communication. *Reyes-Requena*, 926 F.2d at 1431. Nothing therein reveals a confidential communication. The ACH payment record is also not privileged. Materials regarding the receipt of fees from a client are usually not privileged. *In re Grand Jury Proceedings*, 517 F.2d 666, 671 (5th Cir. 1975). The documents are clearly not privileged and their disclosure to the prosecution team did not harm Defendant Yuan.

**B.**      **The Six Documents from the ThinkPad Are Not Protected by the Work Product Doctrine Because They Were Not Prepared in Anticipation of Litigation**

The "Name History" files, the ACH record and the retainer agreement are clearly not protected by the work product doctrine. Theoretically, the bylaws and the shareholders agreement could possibly be protected by the work product doctrine because they were likely created by an attorney. However, they clearly were not created in anticipation of litigation and thus are not protected.

The work product doctrine is not a privilege but rather a qualified immunity from discovery. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 (5th Cir. 1993). The doctrine provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. *In re Grand Jury Proc.*, 601 F.2d 162, 171 (5th Cir. 1979), citing *Hickman v. Taylor*, 329 U.S. 495 (1947). The core of the right protects the mental processes of an attorney analyzing and preparing a case for trial, including a criminal trial. *United States v. Nobles*, 422 U.S. 225, 238 (1975). Thus, the doctrine protects only those documents prepared in anticipation for trial and not those – in the terms of Rule 26(b)(3) – in the "ordinary course of business" even if prepared by an attorney. *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

Clearly none of the six documents were prepared in anticipation of litigation. Indeed, the bylaws and the shareholders agreement are exactly the sort of documents that are "prepared in the ordinary course of business" that are not protected. (*Id.*)

Because defendant cannot show any harm from any protected document that made it through the filter review process his motion should be denied.

### III.    THE HEIGHTENED PROTECTIONS DEFENDANT ARGUES SHOULD HAVE BEEN APPPLIED WOULD HAVE LED TO THE SAME RESULT – NO MEMBER OF THE PROSECUTION TEAM BEING TAINTED BY PRIVILEGED MATERIALS

Defendant Yuan argues that the filter review in this case was inadequate. His objections include the absence of judicial review of the government's privilege determinations and the absence of consultation with the defense. Even if the government had instituted those procedures, we would still be in the same place – with no member of the prosecution team tainted by privileged materials.

Heightened protections may be appropriate where an attorney is the target of a search (*see United States v. Avenatti*, 559 F. Supp. 3d 274, 285 (S.D.N.Y. 2021)), an attorney's office or residence is searched (*see In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 181 (4th Cir. 2019)), or a large amount of communications are involved (*see Hicks v. Bush*, 452 F. Supp. 2d 88, 103 (D.D.C. 2006)).

This case involves a defendant breaking a specific criminal law, in this case export laws. There was no indication that an attorney was involved in committing the offense. There was no search of an attorney's office, home, or other premises. In fact, until the initial search was underway, there was no specific indication that attorney-client materials would be found. Once that possible involvement of a single attorney was found, a filter protocol was enacted that withheld approximately 146 communication-related items from the prosecution team. Six documents that were initially withheld in an abundance of caution were provided to the prosecution team. None of those documents is subject to privilege or protection.

The government's approach to this relatively straightforward case with relatively straightforward attorney-client issues sufficiently protected defendant's rights by filtering approximately 142 communications-related items from the prosecution team. That filter process was directed at Defendant Yuan's known attorney in Maryland; it did not catch communications with an attorney in California. But even assuming arguendo that the communications with that California attorney are privileged, they were not seen by the prosecution team. Defendant Yuan's

proffered, heightened procedures would have led to that same result – no members of the prosecution team seeing these communications.

## IV.    **NO REMEDY IS APROPRIATE**

Even if Defendant Yuan could establish a Constitutional Sixth Amendment violation, he has not shown prejudice. Thus, no remedy is appropriate. *United States v. Morrison*, 449 U.S. 361, 366 (1981). Here, Defendant Yuan has demonstrated no prejudice of any kind to the ability of counsel to provide adequate representation in these criminal proceedings. *Id*. There is no constitutional wrong that needs to be corrected to ensure that Defendant Yuan is not unfairly convicted. *Id*.

First, Defendant Yuan cannot point to any effect on his representation in this criminal case. There has been no revealing of trial strategy or preparation. Accordingly, there is no Sixth Amendment violation to be remedied. Second, Defendant Yuan has not identified any particular document that was seen by the prosecution team in violation of the attorney-client privilege or even the work product doctrine. The evidentiary protections of that privilege or doctrine are not implicated, let alone the Constitutional dimension of revealing trial strategy or preparation. Indeed, the government carefully reviewed documents, filtered approximately 146 communication-related documents from the prosecution team, and only slowly produced the six non-communicative documents from the ThinkPad to the prosecution team after carefully satisfying itself that they were in no way privileged. Those six documents were reviewed by the filter agent and then by a filter AUSA. That filter AUSA then consulted with an AUSA with expertise in this field before disclosing the last two of the six documents.

Defendant cannot show prejudice or a violation of his attorney client privilege or the work product doctrine. As such, no remedy needs to be applied.

## CONCLUSION

The defendant's motion should be denied. At the end of the day, the application of a filter team is a results-oriented endeavor. Regardless of the filter procedures put in place and executed by the government, if the government properly segregates privileged or protected material such that no members of the prosecution team are tainted, the defendant suffers no prejudice and there is no violation. If, regardless of the procedures put in place and executed by the government, the prosecution team is tainted by privileged material, the Defendant may suffer prejudice and there might be a violation that would require a remedy. But here, the government's filter review worked – Defendant Yuan has not identified ANY privileged materials that were viewed by and thus tainted the prosecution team. He has suffered no prejudice. His motion should be denied.

Respectfully Submitted,

**JOHN MARCK**
ACTING UNITED STATES ATTORNEY

BY:    _____
S. MARK MCINTYRE
ROBERT JOHNSON
CRAIG FEAZEL
ASSISTANT U.S. ATTORNEYS


**JOHN A. EISENBERG**
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION


BY:    _____
FATEMA MERCHANT
TRIAL ATTORNEY

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was delivered to all counsel of record on May 5, 2026, by electronic filing.

<div align="center" style="margin-left:40%">

*/s/ Fatema Merchant*
Fatema Merchant
Trial Attorney

</div>