IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-687 |
| | ) | |
| BENLIN YUAN and | ) | Hon. Kenneth M. Hoyt |
| FANYUE GONG, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT BENLIN YUAN'S REPLY IN SUPPORT OF OPPOSED MOTION TO COMPEL RESPONSE TO COURT'S RULE 17(c) SUBPOENA *DUCES TECUM*

Defendant Benlin Yuan files this reply in further support of his motion to compel Nvidia Corporation's response to the Court's Rule 17(c) subpoena *duces tecum* and to oppose Nvidia's motion to quash the same.[1] The Court should grant Mr. Yuan's motion to compel—and deny Nvidia's motion to quash—because Mr. Yuan properly served a valid Rule 17(c) subpoena specifically authorized by this Court. That should end the matter. Nvidia's 25-page motion to quash and its 250 pages of exhibits—which was filed *the day* responsive records were due; incorrectly claims the Court did not approve the subpoena as served; and simply rehashes the same arguments the government previously advanced that this Court already rejected—should not persuade the Court otherwise. Moreover, Nvidia waited unduly long to move to quash. As Nvidia is well aware, with trial imminent, Mr. Yuan was forced to seek—and was granted—pretrial production of documents responsive to the subpoena, with a production deadline sufficiently early for Mr. Yuan to make practical use of them. Nvidia's delay only exacerbates the difficulty Mr. Yuan faces in adequately preparing for his trial. Thus, when Nvidia claims that it, not Mr. Yuan,

---

[1] In effect, Nvidia's motion to quash functions as an opposition to Mr. Yuan's antecedent motion to compel, hence the styling of this submission as a reply in support of the latter.

is prejudiced by the status quo, Nvidia has it exactly backward. As such, Nvidia should be ordered to produce the documents the subpoena demands immediately.

<b>RELEVANT BACKGROUND ON THE SUBPOENAED DOCUMENTS</b>

**1.   Nvidia's Campaign to Ease Restrictions on the Export of Its GPUs**

**a.   Nvidia develops the H20 for sale to China.**

In October 2023, the Biden Administration announced substantial limits on sales of advanced semiconductors to China by American firms. *See* Ann Swanson, *U.S. Tightens China's Access to Advanced Chips for Artificial Intelligence*, N.Y. Times (Oct. 17, 2023), https://tinyurl.com/5yf7hu62. But in December 2023, it was reported that the Biden Administration was in talks with Nvidia about permissible sales of artificial intelligence ("AI") chips to China. *See* David Shepardson, *US in talks with Nvidia about AI chip sales to China – Raimondo*, Reuters (Dec. 12, 2023), https://tinyurl.com/3kc3stw2. By February 2024, Nvidia was taking pre-orders for a "new China-specific" graphics processing unit ("GPU") known as the H20, "the most powerful" of three chips Nvidia had been developing specifically for the Chinese market. Yelin Mo & Brenda Goh, *Exclusive: Nvidia's new China-focused AI chip set to be sold at similar price to Huawei product*, Reuters (Feb. 1, 2024), https://tinyurl.com/mwxxr35j.

**b.   The Trump Administration signals potential restrictions on the H20.**

In late January 2025, Nvidia's CEO, Jensen Huang, visited the White House to meet President Trump for the first time and to discuss AI policy and semiconductors. *See* Tripp Mickle, *How Nvidia's Jensen Huang Persuaded Trump to Sell A.I. Chips to China*, N.Y. Times (July 17, 2025), https://tinyurl.com/3km7hcru. Before that meeting occurred, Mr. Huang spoke with President Trump's then-nominee for Secretary of Commerce, Howard Lutnick. *See* The Joe Rogan

2

Experience, *#2422 – Jensen Huang*, at 3:27 (Dec. 3, 2025), https://tinyurl.com/3bfm8vkt. During

a December 2025 interview with podcaster Joe Rogan, Mr. Huang, looking back, elaborated:

> JENSEN HUANG: And that was like literally the first conversation I had with Secretary Lutnick and he was talking about how—that he started our conversation with "Jensen, this is Secretary Lutnick. And I just want to let you know that you're a national treasure. NVIDIA is a national treasure. And whenever you need access to the President, the administration, you call us. We're always going to be available to you."
>
> Literally. That was the first sentence.
>
> JOE ROGAN: That's pretty nice.
>
> JENSEN HUANG: And it was completely true. Every single time I called, if I needed something, I want to get something off my chest, express some concern. They're always available. Incredible.

*Id.* at 4:13.

After meeting with Mr. Huang in January, President Trump, during a press conference,

confirmed he had had a good meeting with Mr. Huang and said that he was considering allowing

Nvidia to sell its H20 GPUs to China. *See* WFAA, *President Donald Trump gives remarks on

tariffs on Mexico, China and Canada*, YouTube (Jan. 31, 2025), https://tinyurl.com/yy3btnhj. By

early April, the Trump Administration was actively discussing sales of the H20 with Nvidia. *See*

Mickle, *How Nvidia's Jensen Huang Persuaded Trump*, *supra*.

### c. Mr. Huang pays $1 million to have dinner with President Trump and attempt to forestall H20 restrictions.

"[Secretary] Lutnick, who oversees export restrictions, invited Mr. Huang to Mar-a-Lago

to meet with the president and make a last-ditch appeal[.]" *Id.* As first reported by National Public

Radio ("NPR"), on April 4, 2025, Mr. Huang paid $1 million to have dinner with President Trump

at the President's home in Florida. *See* ECF 110-1. At the dinner, "Mr. Huang tried to persuade

Mr. Trump not to curb [H20] chip sales to China[.]" Mickle, *How Nvidia's Jensen Huang

Persuaded Trump*, *supra*; *see also* ECF 110-1 (reporting that "the H20 chip has become

3

increasingly coveted by artificial intelligence companies, because it is designed to support inference, a computational process used to support AI models like China's DeepSeek and other AI agents being developed by Meta and OpenAI").

According to the NPR report, Mr. Huang's gambit succeeded. *See* ECF 110-1 ("Following the Mar-a-Lago dinner, the White House reversed course on H20 chips, putting the plan for additional restrictions on hold[.]"). NPR reported that "[t]he change of course from the White House came after Nvidia promised the Trump administration new U.S. investments in AI data centers[.]" *Id.* To the news-consuming public and Mr. Yuan, NPR's widely linked-to report all but stated that President Trump and Mr. Huang had hatched out a deal: Nvidia would preserve its access to the vast Chinese market for GPUs while President Trump would extract contributions from Nvidia toward his priorities.

d.  **President Trump and Nvidia's GPUs: The art of the deal.**

In short order, Nvidia came through on its commitment to make substantial investments in the AI space, announcing on April 14, 2025, that it would manufacture AI supercomputers entirely in the United States as part of what the White House touted as the company's "pledge to produce $500 billion of AI infrastructure in the U.S. over the next four years." Press Release, *TRUMP EFFECT: NVIDIA Leads American-Made Chips Boom* (Apr. 14, 2025), https://tinyurl.com/bddfre38. Mr. Huang joined President Trump at the White House to make the announcement at a press conference:



Yet sensing that he could extract more from Nvidia, President Trump decided not to pause the plan to restrict H20 sales after all. At least not yet. On April 15, 2025, Nvidia quietly revealed in a regulatory filing that it had been informed that the government would require a license to export H20 GPUs. *See* Nvidia Corp., Current Report (Form 8-K) (Apr. 15, 2025).

### e. Mr. Huang successfully lobbies for access to the Chinese market.

Mr. Huang remained determined not to lose Nvidia's foothold in China. In mid-May, Mr. Huang traveled to the Middle East with President Trump, where they visited the Saudi Royal Court in Riyadh and met with the Crown Prince of Saudi Arabia, Mohammed bin Salman:



Two days later, President Trump and Mr. Huang announced a deal negotiated by investor David Sacks, the White House's AI czar, to "deliver hundreds of thousands of today's most advanced

chips from Nvidia annually to build one of the world's largest data center hubs in the [United Arab] Emirates." Mickle, *How Nvidia's Jensen Huang Persuaded Trump*, *supra*. "During the sales process," the New York Times reported, "Mr. Sacks and Mr. Huang began advancing the same rationale for selling A.I. chips, two people said. To win the A.I. race, they said, the U.S. government should encourage purchases of U.S. technology rather than create a reason for countries to buy similar Chinese technology." *Id.* At Nvidia, "it felt like a major breakthrough when Mr. Trump called Mr. Huang a 'friend' during the trip." *Id.*

      **f.   President Trump strikes a deal, this time in exchange for a share of Nvidia's H20 profits.**

On July 10, 2025, Mr. Huang met with President Trump again in the Oval Office. "By the end of the nearly hourlong meeting," the New York Times reported, "[President] Trump said Nvidia's chips could return to China." *See id.* On July 14, 2025, Nvidia announced Mr. Huang's victory, noting that it was filing applications to resume sales of the H20 GPU and that "[t]he U.S. government has assured . . . that licenses will be granted." Press Release, *NVIDIA CEO Jensen Huang Promotes AI in Washington, DC and China* (July 14, 2025), https://tinyurl.com/fn4h8238.

Again, weeks later, President Trump confirmed that Nvidia could sell its H20 GPUs to China and that the U.S. government would be taking 15% of the revenue earned by Nvidia on its sale of those chips. *See* John Ruwitch, *Trump says Nvidia will hand the U.S. 15% of its H20 chip sales to China*, NPR (Aug. 11, 2025), https://tinyurl.com/2yeuuczc. After initially demanding 20% as the price of admission, President Trump agreed to 15%. *See id.* In making the announcement, President Trump called the H20 GPUs "obsolete," averring that China had already developed comparably powerful chips. *Id.* To keep up with demand, Mr. Huang and President Trump understood that Nvidia would need to find a way to introduce more powerful GPUs to the Chinese market.

### g. Mr. Huang angles to expand Nvidia's access to the Chinese market.

When the White House last fall released a list of wealthy individuals and companies that had contributed funds to pay for the construction of a $300 million ballroom commissioned by President Trump, neither Nvidia nor Mr. Huang was on it. But the roster was incomplete. Less than a week later, Mr. Huang disclosed that he had, in fact, donated an unspecified amount to the fund. *See* Courtney Rozen & Stephen Nellis, *Nvidia's Huang joins tech titans funding Trump's ballroom*, Reuters (Oct. 29, 2025), https://tinyurl.com/3umkjbub.

In November, Mr. Huang was among the guests at the White House during the visit of Mohammed bin Salman, the Crown Prince of Saudi Arabia. *See* Alexander Alper, *US mulls letting Nvidia sell H200 chips to China, sources say*, Reuters (Nov. 21, 2025), https://tinyurl.com/ymwf3fjt. Days later, Reuters reported that the Trump Administration was considering approving sales of Nvidia's H200 chips to China. *See id.* While an older-generation AI chip, the H200 still offers superior performance than the H20. *See How China's AI chips stack up against Nvidia's H200*, Reuters (Dec. 9, 2025), https://tinyurl.com/3w8ayc3f ("[T]he H200 would be almost six times as powerful as the H20[.]").

### h. Mr. Huang negotiates with President Trump and encounters congressional headwinds.

On December 3, 2025, during a press availability in the Oval Office, President Trump confirmed that he had recently met with Mr. Huang at the White House yet again. *See* Reuters, *REFILE: Trump praises Nvidia CEO Jensen Huang after discussion about export controls* (Dec. 3, 2025), https://tinyurl.com/44wb26fe. An off-camera journalist asked President Trump: "In your conversations with him, have you kind of given a sense of where you are with export controls and the types of chips that Nvidia can give to China?" *Id.* President Trump answered: "He knows, he knows very well. He's done an amazing job[.]" *Id.*

That same day, several members of Congress sent Mr. Huang a letter, expressing concerns about a "potential quid-pro-quo arrangement associated with [ballroom-contribution] funds." Letter from Sen. Elizabeth Warren et al. to Jensen Huang (Dec. 3, 2025), https://tinyurl.com/bde52u24. Separately, Senators Elizabeth Warren and Andy Kim sent a letter to Secretary Lutnick, urging him not to allow Nvidia to sell advanced AI chips to China. *See* Letter from Sen. Elizabeth Warren and Sen. Andy Kim to Sec. Howard Lutnick (Dec. 3, 2025), https://tinyurl.com/4yk5xrpr.

The following day, a bi-partisan group of senators introduced the Secure and Feasible Exports (SAFE) of Chips Act of 2025, seeking to "codif[y] into law the Trump Administration's current limits on which advanced . . . chips are allowed to be sold to Communist China." Press Release, *Ricketts, Coons Introduce SAFE Chips Act* (Dec. 4, 2025), https://tinyurl.com/mtv3hkd6.

### i. President Trump announces his lifting of restrictions on Nvidia's sale of H200 GPUs to China.

On December 8, 2025, the Department of Justice issued a press release and conducted a press conference to announce the charges in this case, which had recently been unsealed. *See* Press Release, U.S. Dep't of Just., *U.S. Authorities Shut Down Major China-Linked AI Tech Smuggling Network* (Dec. 8, 2025), https://tinyurl.com/yt7xzhc4; Leslie DelasBour, *Feds say Houston-linked 'Operation Gatekeeper' broke $160M A.I. chip smuggling pipeline to China*, FOX 26 (Dec. 8, 2025), https://tinyurl.com/55zvkzrn. In so doing, the government defamed Mr. Yuan as a threat to national security for having allegedly conspired to export Nvidia's H100 and H200 GPUs, which are more powerful than the H20s. The then-U.S. Attorney for the Southern District of Texas melodramatically claimed that the government's investigation had "exposed a sophisticated smuggling network that threatens our Nation's security by funneling cutting-edge AI technology

to those who would use it against American interests." Press Release, *U.S. Authorities Shut Down*,

*supra*. He continued:

> These chips are the building blocks of AI superiority and are integral to modern military applications. The country that controls these chips will control AI technology; the country that controls AI technology will control the future. The Southern District of Texas will aggressively prosecute anyone who attempts to compromise America's technological edge.

*Id.*

Yet just hours later, President Trump took to Truth Social to announce a major policy shift

that gave the lie to the government's assertions that Mr. Yuan poses a national security risk:



**Donald J. Trump** ✓ ➕
@realDonaldTrump

I have informed President Xi, of China, that the United States will allow NVIDIA to ship its H200 products to approved customers in China, and other Countries, under conditions that allow for continued strong National Security. President Xi responded positively! $25% will be paid to the United States of America. This policy will support American Jobs, strengthen U.S. Manufacturing, and benefit American Taxpayers. The Biden Administration forced our Great Companies to spend BILLIONS OF DOLLARS building "degraded" products that nobody wanted, a terrible idea that slowed Innovation, and hurt the American Worker. That Era is OVER! We will protect National Security, create American Jobs, and keep America's lead in AI. NVIDIA's U.S. Customers are already moving forward with their incredible, highly advanced Blackwell chips, and soon, Rubin, neither of which are part of this deal. My Administration will always put America FIRST. The Department of Commerce is finalizing the details, and the same approach will apply to AMD, Intel, and other GREAT American Companies. MAKE AMERICA GREAT AGAIN!

Donald J. Trump (@realDonaldTrump), *I have informed President Xi*, Truth Social (Dec. 8, 2025, 4:29 PM).[2] That same day, the New York Times reported that President Trump's decision was "a major win for [Mr.] Huang, . . . who spent months lobbying the White House to ease its export restrictions. The move is also a departure for Mr. Trump, whose administration initially promised to restrict sales of A.I. chips to China." Tripp Mickle & Ana Swason, *Trump Clears Sale of More Powerful Nvidia A.I. Chips to China*, N.Y. Times (Dec. 8, 2025), https://tinyurl.com/249auy9a.

Nine days later, despite President Trump's determination that H200 GPUs not only could but should be exportable to China, the government indicted Mr. Yuan and a co-defendant who he had never met and to whom he had never wittingly spoken.

## ARGUMENT

1. **The subpoena was validly issued pursuant to this Court's order and must therefore be enforced.**

Nvidia explicitly acknowledges that the Court's April 15, 2026 order "granted Yuan's motion" for a Rule 17(c) subpoena. ECF 145 at 10. Yet, in the same breath, Nvidia insists this same order was somehow insufficient to approve Mr. Yuan's request for the pretrial production of documents and that, instead, Mr. Yuan needed to wait for a *second* order setting forth the Court's rationales for the first order before serving the subpoena authorized. Nvidia's stance is contradictory and wrong.[3]

---

[2] At the time, the H200 was Nvidia's second-most-powerful chip. In the Truth Social post, President Trump criticized the Biden Administration for forcing U.S. companies to spend billions of dollars building "'degraded' product that nobody wanted," a clear reference to the less capable H20.

[3] The government has, informally, taken a similar position. On the evening of April 28, 2026, days after Nvidia was served with the subpoena, the government contacted Mr. Yuan's counsel requesting that Mr. Yuan withdraw his subpoena because the Court had not yet issued a separate order. Mr. Yuan declined to do so. Less than twenty-four hours later, counsel for Nvidia contacted Mr. Yuan's counsel, copying the government, and asserted the very same message—that the issued

As detailed in Mr. Yuan's motion to compel, in moving for the Rule 17(c) subpoena, Mr. Yuan specifically requested pretrial production of the documents sought and detailed why he was entitled to such production. *See* ECF 139 at 5 (explaining Mr. Yuan's satisfaction of each prong of the *United States v. Nixon*, 418 U.S. 683, 700 (1974) test). Naturally then, when the Court granted Mr. Yuan's motion for the Rule 17(c) subpoena without qualification—which Nvidia acknowledges occurred—the Court granted *all* the relief Mr. Yuan sought, including the right to demand document production before trial. Although the Court indicated it would further memorialize its ruling by separate order, the Court gave no indication that, as Nvidia suggests, Mr. Yuan needed to wait to serve the authorized subpoena or that Mr. Yuan could not require Nvidia to produce the documents to his counsel by a pretrial date of his choosing.[4]

This interpretation makes sense, particularly considering the Court's observation that this matter required "expeditious resolution" so that Mr. Yuan could prepare for trial. Otherwise, there would be no way for Mr. Yuan to make practical use of the documents sought, which would flout the entire purpose of Rule 17(c)—and this Court's order. *See, e.g.*, *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 n.5 (1951) (Rule 17(c) affords the requesting party the opportunity to inspect subpoenaed documents in advance of trial "for the purpose of course of enabling the party to see whether he can use it or whether he wants to use it"). Considering the Court's order and the

---

subpoena was premature without an additional order from the Court. It is troubling that the government and Nvidia are so closely coordinating their efforts to keep the requested records hidden from Mr. Yuan.

[4] Indeed, after the Court granted Mr. Yuan's motion, the Court's staff informed counsel for Mr. Yuan that it would be Mr. Yuan's responsibility to fill in the subpoena's details, further giving credence to Mr. Yuan's interpretation that the Court's order authorized Mr. Yuan to proceed as he has here. In any event, even if the Court determines production in court was required, Mr. Yuan respectfully requests that the Court order Nvidia to produce the documents sought to the Court so that Mr. Yuan may inspect them immediately.

surrounding circumstances—including the fast-approaching trial—Nvidia's contention that the subpoena is defective is unpersuasive. The Court should enforce its order and its subpoena.

**2. Nvidia's substantive arguments simply repackage the government's objections to Mr. Yuan's subpoena request, which the Court already rejected.**

Nvidia also asserts that the Court's Rule 17 subpoena should be quashed because Mr. Yuan has not carried his burden of showing the evidence he seeks is relevant, admissible, or requested with adequate specificity. Again, Nvidia is incorrect. As Nvidia's motion to quash acknowledges, the government already opposed Mr. Yuan's motion requesting the Rule 17(c) subpoena on these *exact* grounds. *See* ECF 145 at 10 (noting the government "opposed Yuan's motion on relevance, admissibility, and specificity grounds"). It further acknowledges that—over these precise objections—the Court granted Mr. Yuan's Rule 17(c) subpoena request. *Id.* ("The Court granted Yuan's motion over the United States' objections."). In other words, as Nvidia concedes, the Court—after considering Mr. Yuan's and the government's arguments on these same issues—already found that Mr. Yuan *had* carried his burden to show he was entitled to the subpoena requested. *See* ECF 117 at 1 (specifically rejecting the government's arguments that the materials sought were irrelevant and unnecessary, that the information had no bearing on the legality of charges against Mr. Yuan, that the evidence would be inadmissible hearsay, and that Mr. Yuan's request lacked specificity).

Nvidia's motion to quash thus primarily operates as a motion to reconsider but fails to supply a reason for the Court to revisit its ruling insofar as it makes no new substantive arguments, cites no relevant intervening developments in the law, and describes no new facts.[5] The Court should stand on its prior order and enforce the subpoena for this reason as well.

---

[5] The minor ways Nvidia's motion differs from the government's do not move the needle. For example, Nvidia attaches its public SEC filings as evidence that it was actually illegal to export

12

### 3. Nvidia's motion to quash improperly shifts the burden to Mr. Yuan; Nvidia failed to promptly move to quash and does not carry its burden to show the subpoena is unreasonable or oppressive.

Because the Court already concluded Mr. Yuan was entitled to a pretrial Rule 17(c) subpoena, to prevail on his motion to compel, Mr. Yuan need only show that Nvidia refuses to comply with the valid subpoena. Clearly, that showing is satisfied. Now, it is *Nvidia's* burden to show it promptly moved to quash and that compliance "would be unreasonable or oppressive." Fed. R. Crim. P. 17(c); *see also United States v. Williams*, No. CR 07-35, 2007 WL 2287819, at *2 (E.D. La. Aug. 8, 2007) (observing that the party seeking to quash the subpoena must show it is unreasonable or oppressive). Nvidia fails this burden. Its motion was not prompt, as it waited until the day the responsive documents were due—despite being served with the subpoena nearly two weeks prior.[6] Nor can Nvidia show compliance would be unreasonable or oppressive. Nvidia makes only passing references to the purported oppressive nature of the subpoena, none of which work.[7] It claims Mr. Yuan seeks "broad and vague categories" of information, ECF 145 at 27,

---

the GPUs at issue. *See* ECF 145 at 22 (discussing the SEC filings). That is simply competing evidence, however; the existence of these filings does not change the availability of other relevant public information—and documents and communications underlying that public information— pointing to the opposite conclusion. Separately, Nvidia contends that Mr. Yuan cannot seek certain categories of documents from Nvidia because it assumes these documents are in the government's possession. *See* ECF 145 at 29. Mr. Yuan agrees that the government must produce certain documents *related to* those Mr. Yuan requests from Nvidia as *Brady* material—and Mr. Yuan has demanded that the government produce them. However, as the subpoena plainly notes, Mr. Yuan's requests to Nvidia are not limited to the *Brady* material Mr. Yuan seeks from the government.

[6] Nvidia cites *United States v. Stanford*, apparently to show that its delay in moving to quash was acceptable. *See* No. H-09-342, 2011 WL 13202537, at *1-2 (S.D. Tex. Sept. 2, 2011). Unlike Mr. Yuan's subpoena, however, the subpoenas issued in *Stanford* did not request that the documents be produced by a specific date and time, leaving the date for compliance undefined and at issue. *See id.* at *1 (requesting documents be produced "by INSTANTER"). Here, the date and time for compliance was clear, and Nvidia waited until the last possible moment to move to quash.

[7] Nvidia can hardly claim that locating and producing the requested records is overly burdensome as the world's most valuable company—hitting $5 trillion dollars just a few months ago. *Nvidia Becomes First Company Worth $5 Trillion*, Forbes (Oct. 29, 2025), https://tinyurl.com/bdzmk9a5.

which the Court already determined was not true. It claims Mr. Yuan seeks privileged materials, *id.* at 23, and he does not. Lastly, Nvidia claims the requests of Mr. Yuan, an individual, criminal defendant, somehow infringe on its First Amendment rights, *id.* at 29. None of these reasons are sufficient to carry Nvidia's burden, so Nvidia's motion to quash should be denied.

## CONCLUSION

For these reasons, Mr. Yuan respectfully requests that the Court grant his motion to compel, deny Nvidia's motion to quash, and order Nvidia to immediately produce the documents sought. Mr. Yuan further respectfully reiterates his request for this matter, if necessary, to be heard at the May 11, 2026 pretrial conference.[8]

Respectfully submitted,

*/s/ John L. Brownlee*
John L. Brownlee (*pro hac vice*)
Ashley Akers (*pro hac vice*)
Alexander E. Blanchard (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8600

Samuel J. Louis
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone: (713) 821-7000

Hannah M. Maloney
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
Phone: (512) 647-4391

*Counsel for Benlin Yuan*

---

[8] Nvidia alternatively requests a protective order should the Court enforce its subpoena. *See* ECF 145 n.2. Mr. Yuan does not oppose such relief.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2026, I filed the foregoing electronically using the Court's

CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ John L. Brownlee*
John L. Brownlee