**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| BENLIN YUAN and | § | Case No. 4:25-cr-687 |
| FANYUE GONG, | § | |
| | § | |
| *Defendants*. | § | |

**NVIDIA CORP.'S RESPONSE IN OPPOSITION TO DEFENDANT BENLIN YUAN'S MOTION TO COMPEL**

**INTRODUCTION**

Benlin Yuan's motion to compel is littered with mischaracterizations. The motion misstates the Court's ruling on Yuan's motion to issue his subpoena, incorrectly representing (at 5) that it held that Yuan satisfied the requirements of Rule 17(c) and that it authorized Yuan to demand the pretrial production of documents at a location of his choosing. Yuan also mischaracterizes what his subpoena seeks, casting it (at 2) as a "limited and targeted" request, when in actuality it is a deep-sea fishing expedition for sprawling categories of documents like "any documents . . . related to . . . Nvidia communications concerning potential or actual U.S. Government restrictions on the export of Nvidia GPUs and Nvidia baseboards to China"—a category that could capture every communication at NVIDIA regarding export controls to China. Mot. to Issue Subpoena (ECF 89) at 1. Finally, Yuan misstates (at 2–3) the facts and law, glossing over the critical distinction between the GPUs he allegedly exported and other GPUs not at issue in his case, insisting that news coverage revealed that the government would ease GPU-export restrictions without citing any such coverage, and asserting that the law applicable to the charges against him may have changed without ever explaining how.

Shorn of these mischaracterizations, Yuan's third-party trial subpoena is exposed as unlawful on multiple grounds. As explained in NVIDIA's motion to quash, Yuan failed to carry his burden to show that the subpoenaed documents are relevant, admissible, and requested with adequate specificity. Moreover, Yuan prematurely served his subpoena without waiting for this Court's promised separate order, improperly selecting his own return date and making the documents returnable to his own counsel rather than the Court. For the same reasons the Court should grant NVIDIA's motion to quash Yuan's unlawful subpoena, it should deny Yuan's motion to compel.

1

## NATURE AND STAGE OF THE PROCEEDING

On February 22, 2026, Defendant Benlin Yuan, who has been indicted for allegedly conspiring to unlawfully export certain NVIDIA products to China, moved for issuance of a third-party trial subpoena directed to NVIDIA under Federal Rule of Criminal Procedure 17(c). Mot. to Issue Subpoena. The subpoena requests "any documents, records, communications, and correspondence" from January 2025 to December 2025 related to several broad categories. *Id.* at 1. Among other things, it requests any NVIDIA communications concerning the federal government's restrictions on the export of NVIDIA GPUs and baseboards to China, any NVIDIA communications regarding any modification of those restrictions, any communications between NVIDIA's CEO and any member of the Trump Administration concerning those restrictions, and any records reflecting conversations between NVIDIA's CEO and President Trump or Secretary of Commerce Lutnick concerning the export of NVIDIA GPUs and baseboards to China. *Id.* at 1–2. The subpoena also seeks internal NVIDIA legal memoranda—which would obviously be privileged or protected—regarding the legality of exporting GPUs to China. *Id.* at 2.

The United States opposed Yuan's motion for issuance of a subpoena on relevance, admissibility, and specificity grounds. U.S. Resp. to Mot. to Issue Subpoena (ECF 106). The Court granted Yuan's motion over the United States's objections on April 15, 2026. The Court concluded that the "issues of hearsay, relevance, and the like are crucial matters for review for an informed ruling," and said it was granting the motion "by a separate Order." Order on Mot. to Issue Subpoena (ECF 117) at 1–2.

No such separate order has been entered. Yuan nevertheless served his subpoena on NVIDIA on April 23, 2026, with a return date on the morning of May 4, 2026, demanding that the documents be produced directly to Yuan's counsel.

After being served with the subpoena, NVIDIA's counsel explained to Yuan's counsel that the subpoena was premature because the Court had not yet issued its separate order.  Yuan nevertheless filed a motion to compel on May 3, 2026.  Mot. to Compel (ECF 139).  The next day, NVIDIA moved to quash the subpoena under Rule 17(c)(2) because Yuan failed to carry his burden of showing that the subpoena requested relevant, admissible, and specific documents and because the subpoena was invalidly issued.  Mot. to Quash (ECF 144).

## STATEMENT OF THE ISSUE

Whether the Court should deny Yuan's motion to compel because—as NVIDIA has explained in its pending motion to quash—he has failed to carry his burden to show that the subpoenaed documents are relevant, admissible, and have been requested with adequate specificity and because the subpoena is defective.  *See United States v. Nixon*, 418 U.S. 683, 700 (1974); *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992).

## ARGUMENT

The Court should deny Yuan's motion to compel for the same reasons it should grant NVIDIA's pending motion to quash—because compliance with the subpoena would be "unreasonable or oppressive" and because the subpoena is invalid.  Fed. R. Crim. P. 17(c)(2); *see* Mem. in Supp. of Mot. to Quash (ECF 145) at 8–25.

1.  The Court should deny Yuan's motion to compel because Yuan has failed to carry his burden to demonstrate that the subpoenaed materials are relevant, admissible, and requested with adequate specificity.  As explained in NVIDIA's pending motion to quash, even if the Court deems Yuan's subpoena valid, it should still be quashed because the subpoenaed documents have no relevance to the offenses Yuan is charged with, would be inadmissible on multiple grounds, and

3

have not been requested with anything approaching the necessary degree of specificity. *See* Mem. in Supp. of Mot. to Quash at 10–25.

Contrary to Yuan's assertion (at 2–3), any documents responsive to his subpoena would neither be exculpatory nor assist his defense because the law always required licenses to export the products at issue—a fact that NVIDIA itself disclosed in its SEC filings—and it is undisputed that Yuan never obtained a license. *See* Mem. in Supp. of Mot. to Quash at 10–16. Although Yuan insists (at 2) that by April 2025 news stories indicated that the government would ease restrictions on exporting certain NVIDIA GPUs to China, that attempt at misdirection goes nowhere. No stories indicated that the requirement to have a license to export A100, H100, and H200 GPUs— the GPUs Yuan allegedly illegally exported to China—was going away. In fact, the actual public reporting in April 2025 made clear that the H100 "was already banned for sale in China." J. Chater, *Nvidia: The AI Chip Giant Caught Between US and China*, BBC (Apr. 18, 2025), bit.ly/48KCzUJ.

Yuan appears to be conflating the GPUs at issue in his case with the less-powerful H20 GPU, which he is not accused of illegally exporting. Even then, news stories in April 2025 reported that the Trump Administration did not ease restrictions on anything. Rather, the Trump Administration imposed new restrictions on the sale of the less-powerful, and previously uncontrolled H20s—a clear indicator that the Trump Administration was being even *more strict* than the Biden Administration, not less. S. Nellis & K. Freifeld, *Nvidia Faces $5.5 Billion Charge as US Restricts Chip Sales to China*, Reuters (Apr. 17, 2025), bit.ly/3OY4FoP; T. Mickle, *Nvidia Says U.S. Will Restrict Sales of More of Its A.I. Chips to China*, N.Y. Times (Apr. 15, 2025), bit.ly/4wcS0Px. Yuan's obfuscation of the irrefutable and widely reported historical facts in no way supports his sweeping request for irrelevant and inadmissible documents.

Because compliance with Yuan's subpoena would be "unreasonable and oppressive," there is no basis for this Court to compel NVIDIA to comply with it.  Fed. R. Crim. P. 17(c)(2).

2.      The Court also should deny Yuan's motion to compel because the subpoena is invalid.  When ruling on Yuan's motion for issuance of the subpoena, the Court stated that "[t]he defendant's motion is Granted by a separate Order."  Order on Mot. to Issue Subpoena at 2.  But no such separate order has been entered.  Without waiting for the Court's separate order, Yuan elected to serve his subpoena while supplying his own preferred return date (May 4) and location (his counsel).  But Rule 17(c) states that "[t]he *court* may direct the witness to produce the designated items in *court* before trial," giving the Court discretion over the return date and requiring production to the Court rather than opposing counsel.  Fed. R. Crim. P. 17(c)(1) (emphases added).  By taking those matters into his own hands, Yuan violated the Court's order and Rule 17(c), rendering his subpoena invalid.  Mem. in Supp. of Mot. to Quash at 9–10.

Yuan contends (at 5) that the Court "authorized him to demand that the documents sought be returned before trial," but it did no such thing.  The Court stated that it was granting the defendant's motion "by a separate Order," which has not been entered.  Order on Mot. to Issue Subpoena at 2.  In the absence of that separate order, Yuan was not free to serve his subpoena with a return date of his own choosing.

Yuan also wrongly asserts (at 5) that the Court's order "implicitly authorized production at a location other than the Court."  On the contrary, the Court stated that the government had "not agreed to timely provide [the evidence sought] to the defendant or submit same *in camera* to the Court in order that the Court may make an independent and informed ruling," explaining that "[t]he issues of hearsay, relevance, and the like are crucial matters for review for an informed ruling."

Order on Mot. to Issue Subpoena at 1.  If anything, that suggested that production should be to the Court so that it could evaluate the evidence *in camera*.

Yuan further argues (at 5) that courts "routinely order the production of documents to defense counsel directly pursuant to Rule 17 without controversy," but he ignores that Rule 17 expressly contemplates court intervention in, and supervision of, the document production process. *See United States v. Najarian*, 164 F.R.D. 484, 487 (D. Minn. 1995) ("Unquestionably, Rule 17(c) reveals an express intent that the Court supervise the production of evidentiary materials in advance of trial.").  The rule therefore requires "the subpoenaed documents . . . to be produced in Court"—not to defense counsel.  *United States v. Bermingham*, 2007 WL 1052600, at *7 (S.D. Tex. Apr. 5, 2007) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 n.5 (1951)); *see also United States v. Al-Amin*, 2013 WL 3865079, at *10 (E.D. Tenn. July 25, 2013).

Yuan cites *United States v. Hoeffner*, 254 F.R.D. 302 (S.D. Tex. 2008), and *United States v. Brown*, 2023 WL 5672836 (S.D. Tex. Sep. 1, 2023), as examples of cases in which courts allowed production to defense counsel, but neither helps him.  First, neither *Hoeffner* nor *Brown* devoted any analysis to whether Rule 17(c) permitted production to defense counsel.  Second, unlike in *Hoeffner* or *Brown*, the Court has not ordered production to Yuan's counsel; instead, Yuan himself has made that demand.  And third, the documents requested in *Hoeffner* and *Brown* were not nearly as sensitive as those requested by Yuan here.  In *Hoeffner*, the court ordered the production of an insurance company's documents regarding silicosis settlements the company reached with the defendant's clients.  254 F.R.D. at 304, 309.  And in *Brown*, the court ordered the production of call detail records and cell-site location information for several government witnesses.  2023 WL 5672836, at *1, 5.  By contrast here, Yuan seeks sprawling categories of documents that may contain privileged, confidential, and classified materials.  *See* Mem. in Supp. of Mot. to Quash at

6

19.  Given the nature of the information Yuan seeks, it is all the more important that—if NVIDIA's motion to quash is denied in any respect (which it should not be)—production be made only to the Court, not Yuan's counsel, and with appropriate safeguards (including a protective order).

Yuan also contends (at 5) that the Court has already held that he demonstrated relevance, admissibility, and specificity, but the Court's order made clear that it had not reached a decision on "[t]he issues of hearsay, relevance, and the like."  Order on Mot. to Issue Subpoena at 1.  In all events, the Court's decision did not foreclose a subsequently filed motion to quash, which Rule 17(c)(2) expressly authorizes.  *See*, *e.g.*, *Hoeffner*, 254 F.R.D. at 304 (granting motions to quash after authorizing the issuance of Rule 17(c) subpoenas); *United States v. Bergstein*, 2017 WL 6887596, at *1 (S.D.N.Y. Dec. 28, 2017) (same).  The Court should not find that NVIDIA has lost its right to challenge the subpoena simply because the government—which does not have access to NVIDIA's documents or know their content or the burden associated with producing them—objected to the subpoena.  NVIDIA, as the party served with the subpoena, has the right to be heard on the propriety of an unreasonable and oppressive subpoena.  Fed. R. Crim. P. 17(c)(2).

Yuan seems to suggest (at 1) that NVIDIA did not "promptly" file its motion to quash, but that is incorrect.  NVIDIA filed its motion before the return time provided in the subpoena.  That was despite the fact that Yuan waited a full week to serve the subpoena after, according to him, the Court allegedly authorized it and provided an unreasonably short timeline (just six full business days) to produce the vast number of documents demanded, making it impossible for NVIDIA to comply within the allotted time period.  Moreover, during the return period NVIDIA attempted to resolve the issue without the Court's involvement by discussing the defects in the subpoena with Yuan's counsel.  When it became clear that those attempts at resolution would be unsuccessful, NVIDIA filed its motion well within the time period allowed by courts for a timely motion to

quash. *See United States v. Stanford*, 2011 WL 13202537, at *1–2 (S.D. Tex. Sep. 2, 2011) (considering motions to quash filed 15 and 20 days after service of subpoenas).

## CONCLUSION

The Court should deny Yuan's motion to compel.

Dated: May 7, 2026

Respectfully submitted,

/s/ Gregg J. Costa
Gregg J. Costa
*Attorney-in-Charge*
  Texas Bar No. 24028160
  S.D. Tex. Bar No. 32779
Jack B. DiSorbo
  Texas Bar No. 24120804
  S.D. Tex. Bar No. 3695628
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620
*gcosta@gibsondunn.com*
*jdisorbo@gibsondunn.com*

Winston Y. Chan[*]
  California Bar No. 214884
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
*wchan@gibsondunn.com*

Stephen J. Hammer
  Texas Bar No. 24116477
  S.D. Tex. Bar No. 3963953
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
*shammer@gibsondunn.com*

*Counsel for NVIDIA Corp.*

---

[*]   Application for admission *pro hac vice* pending.

9

## CERTIFICATE OF SERVICE

I hereby certify that, on May 7, 2026, a true and correct copy of this document was served by CM/ECF on all counsel of record.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Gregg J. Costa*
Gregg J. Costa