IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-687 |
| | ) | |
| BENLIN YUAN and | ) | Hon. Kenneth M. Hoyt |
| FANYUE GONG, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BENLIN YUAN'S MOTION *IN LIMINE*
TO PRECLUDE ALAN HAO HSU FROM TESTIFYING**

At Benlin Yuan's upcoming trial, the government is expected to call Alan Hao Hsu during its case-in-chief. Yet Mr. Hsu and Mr. Yuan do not know one another, have never interacted, and share no overlap in their alleged conduct. Their cases involve distinct charges arising from separate events.[1] Although the government portrays Mr. Yuan as a member of a sprawling conspiracy involving an untold number of participants that lasted more than two years and spanned multiple continents, it never charged Mr. Hsu as a member of that conspiracy (or any other), nor did it identify him as a co-conspirator in the complaint affidavit filed in Mr. Yuan's case. *See generally* Dkt. 1 (identifying numerous anonymized individuals as co-conspirators but describing Mr. Hsu as "Houston-Resident 1").

So attenuated is the connection between the two men that when the government previously moved to transfer Mr. Yuan's case to the district judge who presided over Mr. Hsu's case—

---

[1] *Compare* Dkt. 16 at 1–2 (charging Mr. Yuan with conspiracy to violate the Export Control Reform Act under Title 50 and two counts of smuggling between May 21, 2025, and May 28, 2025, and between May 28, 2025, and June 14, 2025, respectively) *with* Dkt. 82 at 69–70 (charging Mr. Hsu with aiding and abetting the provision of false export information under Title 13 and one count of smuggling between October 2024 and May 2025).

asserting that the matters involved "significantly overlapping facts and similar legal and factual issues," Dkt. 27 at 2—the Court rebuffed the government's maneuvering. The Court should do so again. Any probative value of Mr. Hsu's testimony is, at most, marginal and is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and/or the needless presentation of cumulative evidence. Accordingly, the Court should preclude the government from calling him as a witness.

## **RELEVANT BACKGROUND**

At the highest level, Mr. Yuan's and Mr. Hsu's cases share a patch of common ground: they both involve alleged efforts to export Nvidia graphics processing units ("GPUs"). But the similarities end there. Mr. Hsu was arrested *two weeks* before the government even alleges that Mr. Yuan joined the conspiracy, and Mr. Hsu's conduct ceased in March 2025, *two months* before Mr. Yuan allegedly became involved. Moreover, whereas the government contends that the GPUs acquired by Mr. Hsu were successfully smuggled to China, the GPUs with which Mr. Yuan was allegedly tangentially involved—none of which originated with or passed through Mr. Hsu—were intercepted before they ever left the United States.

All told, there are just two commonalities between Mr. Yuan's and Mr. Hsu's cases. *First*, the alleged hub of the conspiracy charged against Mr. Yuan, Hong Kong Logistics Company,[2] supposedly wired Mr. Hsu's company $1.5 million in January 2025, approximately five months before Mr. Yuan allegedly entered the picture, to fund the purchase of GPUs.[3] But that amount

---

[2] In referring to certain entities, this motion retains the pseudonyms employed by the government in Mr. Yuan's complaint affidavit.

[3] Mr. Hsu had no connection to Hong Kong Logistics Company's alleged affiliate, Shenzhen Technology Company, nor to Asiacom Americas or its parent company in China. By contrast, all three feature prominently in Mr. Yuan's case.

represented less than 1% of the $160 million that Mr. Hsu's company agreed to pay to Global Technology Company-1 to acquire more than 7,000 Nvidia GPUs.

*Second*, two small batches of GPUs (totaling 162 units) appear to have been purchased by Mr. Hsu and shipped to U.S. warehouses in March 2025, purportedly at the behest of PRC Logistics Company. The government contends that PRC Logistics Company later played a role in coordinating the shipment of one of the batches of GPUs at issue in Mr. Yuan's case. Even so, the government does not allege that anyone affiliated with PRC Logistics Company conspired with Mr. Yuan.

## ARGUMENT

Mr. Hsu's testimony is not relevant under Rule 401 of the Federal Rules of Evidence and is therefore inadmissible under Rule 402. Even if the testimony were marginally relevant, any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and/or the unnecessary presentation of cumulative evidence. The testimony should therefore be excludable under Rule 403.

1.      **Mr. Hsu's testimony is irrelevant and must therefore be excluded.**

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Thus, "the relevancy of evidence is the threshold consideration for admissibility." *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 400 (5th Cir. 2022). Evidence is relevant only if it tends to make a fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401; *see also Lopez v. Director, TDCJ-CID*, No. 6:22cv099, 2023 WL 8287058, at *5 (E.D. Tex. Oct. 16, 2023) ("When determining whether evidence is relevant, it is important for courts to examine the purpose for which the evidence is being introduced. . . . It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved.").

3

"Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981); *see also* 2 Clifford S. Fishman & Anne Toomey McKenna, *Jones on Evidence* § 11:3.10 (7th ed. 2025) ("At its most basic, a fact is 'of consequence,' and therefore relevant, if it relates to an element of the crime[.]").

Mr. Hsu's testimony cannot meaningfully prove any proposition of consequence in this case because it has no bearing on the elements of the charged offenses. Begin with the attempted smuggling charges in Counts Two and Three. To convict, the government must prove that Mr. Yuan (1) knowingly exported or sent or attempted to export or send items or facilitated the concealment of such items, prior to exportation, knowing them to be intended for exportation, that (2) his conduct was contrary to law or regulation, and that (3) he knew his conduct was contrary to law or regulation. Mr. Hsu, who was involved with different GPUs, at a different time, and has never spoken to Mr. Yuan, cannot possibly offer testimony tending to prove any of those elements.

Likewise for the Export Control Reform Act conspiracy charge in Count One. There, the government must prove that Mr. Yuan (1) conspired to export or cause to be exported (2) items that were on the CCL and required a license for export, (3) but for which neither he nor his alleged co-conspirators had a license, and that (4) he acted willfully. Plainly, nothing Mr. Hsu might say could move the needle with respect to the latter three elements. That leaves only the first element— *i.e.*, whether Mr. Yuan agreed with others to export GPUs.

But even on that point, Mr. Hsu—who, again, was not charged with and did not plead guilty to a conspiracy and was not identified as one of Mr. Yuan's co-conspirators in any charging document—is too far removed from Mr. Yuan, both factually and temporally, to make his separate dealings probative on this point. The reach of conspiracy law is vast, but its elasticity is not infinite.

*See United States v. Burgos*, 94 F.3d 849, 882 (4th Cir. 1996) (Michael, J., concurring) ("[T]hough the law of conspiracy is flexible in its application, it is not boundless.").

**2.    Any probative value of Mr. Hsu's testimony is substantially outweighed by the dangers identified in Rule 403.**

Even if Mr. Hsu's testimony possesses some marginal relevance, it should still be excluded because of the substantial dangers it presents. The probable risks—ranging from inviting the jury to decide Mr. Yuan's guilt on an improper basis to simply wasting the jury's time—are manifold, but they share a common denominator: each would divert the jury's attention away from the actual issues in the case.

If permitted to testify, Mr. Hsu would introduce evidence concerning tens of millions of dollars in transactions with a global technology company, complex financial transactions in foreign countries, and the alleged export of hundreds of GPUs to China—all matters with which Mr. Yuan had no involvement whatsoever. Such evidence would impermissibly tempt the jury to conflate Mr. Yuan with Mr. Hsu and convict based on guilt by association, precisely the type of unfair prejudice "[Rule] 403 was intended to exclude." *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992). Moreover, because of the aforementioned factual and temporal distinctions between their cases, the risk that jurors will be confused or misled is substantial. Finally, to the extent that at trial Mr. Hsu would discuss his communications or transactions with Hong Kong Logistics Company, his testimony would be needlessly cumulative of the other evidence concerning that entity that the government plans to introduce.

At bottom, Rule 403 balancing is a matter of proportionality. *See United States v. Mitrovic*, 890 F.3d 1217, 1226 (11th Cir. 2018); *see also United States v. Beechum*, 582 F.2d 898, 915 n.20 (5th Cir. 1978) (instructing that evidence must be excluded when one of the Rule 403 risks "is disproportionate to the probative value of the offered evidence"). So where, as here, "the probative

value is slight, moderate [Rule 403 risk] is unacceptable." *United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004).

## **CONCLUSION**

It is often said that the main thing is to keep the main thing the main thing. Here, that means excluding evidence with, at best, marginal probative value that is substantially outweighed by the risk of unfair prejudice, juror confusion, and distraction from the actual issues. Accordingly, Mr. Yuan respectfully requests that the Court preclude the government from calling Mr. Hsu as a witness at trial during its case-in-chief.

Respectfully submitted,

*/s/ Alexander E. Blanchard*
John L. Brownlee (*pro hac vice*)
Ashley Akers (*pro hac vice*)
Alexander E. Blanchard (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8600

Samuel J. Louis
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone: (713) 821-7000

Hannah Myslik Maloney
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
Phone: (512) 647-4391

*Counsel for Benlin Yuan*

6

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, I filed the foregoing electronically using the Court's

CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard

## CERTIFICATE OF CONSULTATION

Based on the nature of the relief requested, it can be safely assumed that the government

opposes this motion *in limine*.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard