**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.: 4:25-cr-687** |
| **BENLIN YUAN and** | |
| **FANYUE GONG,** | |
| **a/k/a TOM** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT BENLIN YUAN'S MOTION TO COMPEL PRODUCTION OF PROSECUTOR NOTES**

The United States of America, through undersigned counsel, respectfully submits its response to Defendant Benlin Yuan's Motion To Compel Production of Prosecutor Notes (ECF 138, the "Motion") and asks the Court to deny the Motion.

Defendant's Motion attempts to manufacture a discovery issue where none exists. The Government has fulfilled, continues to fulfill, and is committed to fulfilling every disclosure obligation it has to Defendant. Counsel for Defendant's employer – Asiacom Americas Inc. ("Asiacom") – provided some members of the prosecution team a high-level readout of interviews Asiacom's counsel had conducted of two employees alleged to be Defendant's unindicted coconspirators. Not surprisingly, the alleged coconspirators had told their employer's attorneys that they did not commit a crime. This is self-serving hearsay.

Nonetheless, on April 6, 2026, the Government disclosed to defense counsel a summary of the substance of the potentially exculpatory information the Government received from Asiacom's counsel. That disclosure satisfied the Government's constitutional obligation under *Brady v. Maryland*, 373 U.S. 83 (1963). The Government understands that, after the Government made its disclosure to Defendant's counsel, Defendant's counsel then contacted Asiacom's counsel and

received a download from Asiacom's counsel of those interviews.[1] Defendant did not disclose in his Motion that he had received the same high-level readout of the two Asiacom employees as the Government. The Government only learned that information recently after speaking with Asiacom's counsel after Defendant filed his Motion.

Despite the fact that Defendant has received the same or substantially similar information as the Government, Defendant filed this Motion seeking a Court order compelling the Government to produce any notes its prosecutors took while listening to the same high-level readout of the interviews as Defendant's counsel. Put another way, Defendant seeks attorney work product. Defendant demands that the Government turn over its prosecutors' contemporaneous notes of an attorney-proffer of interview readouts (not witness interviews), on the speculative theory that the notes "almost certainly" contain additional exculpatory information not yet disclosed. Mot at 7. Defendant is wrong on the law and on the facts. *Brady* protects Defendant's right to disclosure of exculpatory *information* by the Government, not the right to inspect prosecutors' work product. *See United States v. Bagley*, 473 U.S. 667, 675 (1985). The Federal Rules of Criminal Procedure categorically exclude attorney work product from criminal discovery. Fed. R. Crim. P. 16(a)(2). And pure speculation that "additional exculpatory statements" must exist (Mot. at 3) is not a substitute for an actual showing that such information has been withheld, especially when Defendant is in possession of the same information that Defendant independently obtained from the same source. The Court should deny Defendant's Motion.

### **RELEVANT BACKGROUND**

In a meeting with Government counsel and a BIS special agent on March 25, 2026, counsel for Asiacom (of which Defendant is Co-chief Executive Officer) and Beijing Asiacom Information

---

[1] The Government learned of this recently based on a phone call with Asiacom counsel. It is unclear why Defendant chose not to include this information in his Motion.

Technology Co., Ltd. ("Asiacom Beijing") (the parent company of Asiacom) provided information regarding the corporate entities, including company structure, information about the business activities, information about compliance, and high-level readouts of interviews with certain Asiacom and Asiacom Beijing employees, including two alleged unindicted coconspirators in this case. In providing high-level summaries of the interviews, counsel stated that the two individuals identified as Co-conspirator 2 and Co-conspirator 3 made statements during their interviews with Asiacom counsel about their understanding of the destination of the export-controlled GPUs at issue in this case. The Government identified these statements as potentially exculpatory as to Defendant. Neither Co-conspirator 2 nor Co-conspirator 3 will be called by the Government to testify – both are resident in China.

Consistent with the Government's broad duty to provide exculpatory information to Defendant under *Brady*, because certain statements of those individuals were potentially exculpatory as to Defendant, the Government then called Asiacom counsel to confirm the substance of those statements.

After confirming the substance of the information provided by Asiacom counsel, on April 6, 2026, the Government sent an email to defense counsel disclosing that information. Mot. Ex. A. That email – which Defendant attaches and quotes – conveyed the potentially exculpatory information in plain terms. Specifically, the Government disclosed in an email: "Asiacom counsel orally informed DOJ of the following: When interviewed, [Co-conspirator-2] said that he understood the GPUs could not be exported to China. He was told by [Executive of Hong Kong Logistics Company] that the GPUs were destined for Southeast Asia and the inventory check did

not create a problem. When interviewed, [Co-conspirator-3] said that he did not recall being told that the destination was China until [CW-1] said they were supposed to go to China."[2]

Later that same day, defense counsel responded and requested "complete summaries of all interviews the government has received from Asiacom counsel." Mot. at 3. The Government does not have any "summaries of interviews" because the Government was not present for these interviews and Asiacom counsel had conveyed summary information about these interviews through oral proffer.

Defense counsel sent an email on April 21, 2026, stating that "we presume that an agent was present when Asiacom's counsel provided the government with readouts from their interviews, and we further presume that a report memorializing the meeting was prepared." Mot. Ex. A at 3. The Government responded and confirmed that an agent was present but that the agent did not take notes or prepare a report. Mot. Ex. A at 2. [3] Nor was an agent obligated to do so. As noted above, this was not a witness interview. This was an attorney presentation that included proffering high-level readouts of interviews conducted by Asiacom counsel, not the Government.

Sometime after the Government's April 6, 2026 disclosure – but before the filing of the instant Motion – Defendant's counsel reached out to Asiacom's counsel and obtained the same or substantially similar readouts of the interviews of Co-conspirator 2 and Co-conspirator 3. Thus, Defendant has obtained the same information from the same source as the Government.

---

[2] The Government notes that the high-level interview readouts contained other information in addition to the potentially exculpatory statements. To the extent defense counsel received the same high-level readouts, they already have that information. And to the extent they did not, defense counsel clearly can request from Asiacom the same information as that the Government received.

[3] Defendant highlights that the Government did not respond to defense counsel's emails on April 21 or April 27 requesting additional information regarding the attorney proffer. Mot. At 3. There were multiple communications from defense counsel during this period that the Government was reviewing and responding to regarding discovery.

Despite the fact that the Defendant has the same information as the Government, the Defendant now demands the Government produce any notes of the readouts that its prosecutors took to either the Defendant or, alternatively, to the Court for *in camera* review. Mot. at 9-10.

**APPLICABLE LAW**

I.      ***Brady* and Its Progeny Requires the Disclosure of Exculpatory Information, Not the Production of Attorney Work Product**

*Brady* and its progeny require the Government to disclose "evidence favorable to an accused" that is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. That duty extends to impeachment information. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

At its core, the Government has a duty to disclose information – the substance of which is favorable to the defense – not a duty to disclose specific documents in the prosecutors' case files. *See United States v. Bagley*, 473 U.S. 667, 675 (1985).

*Brady* is satisfied when the Government discloses exculpatory *information*; there is no freestanding duty to disclose any document that contains that information or in which the prosecutor encounters the information. *United States v. Skilling*, 554 F.3d 529, 577-80 (5th Cir. 2009) (there is no *Brady* violation where the suppressed information is duplicative of information otherwise disclosed). Moreover, "*Brady* does not obligate the government to produce for a defendant evidence or information already known to him, or that he could have obtained from other sources by exercising reasonable diligence." *United States v. Dixon*, 132 F.3d 192, 199 (5th Cir.1997) (alteration and internal quotation marks omitted).

II.     **Federal Rule of Criminal Procedure 16(a)(2) Protects Attorney Work Product from Disclosure to the Defendant**

"There is no general constitutional right to discovery in a criminal case ... ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *accord United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979). "Rather, discovery in criminal cases is narrowly limited and is largely governed

by the Federal Rules of Criminal Procedure." *United States v. Ware*, No. 9:18-CR-43, 2019 WL 2268959, at *1 (E.D. Tex. May 24, 2019) (citing *United States v. Fischel*, 686 F.2d 1082, 1090 (5th Cir. 1982)).

Rule 16 is a discovery tool that protects defendants by requiring the prosecution disclose certain evidence. *Yates v. United States*, 574 U.S. 528, 539 (2015); *see* Fed. R. Crim. P. 16. Specifically, Rule 16(a)(1)(E) requires the disclosure of documents and other tangible items "within the government's possession, custody, or control" that (i) are material to preparing the defense, (ii) the government intends to use in its case-in-chief at trial, or (iii) were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). *United States v. Liang*, No. 4:17-CR-00001, 2021 WL 5323570, at *1 (E.D. Tex. Nov. 16, 2021).

Federal Rule of Criminal Procedure 16(a)(2), however, states: "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government…in connection with investigating or prosecuting the case." This rule reflects the work-product doctrine's long-standing application in criminal proceedings. *See United States v. Nobles*, 422 U.S. 225, 238 (1975). However, while Rule 16(a)(2) shields work product from disclosure, it must yield to the Constitution. *See Dickson v. Quarterman*, 432 F.3d 470, 479 n. 7 (5th Cir. 2006) ("[T]he work-product immunity for discovery in Rule 16(a)(2) prohibits discovery under Rule 16 but it does not alter the prosecutor's duty to disclose material that is within *Brady*.") (quoting 2 Charles Alan Wright, Federal Practice and Procedure § 254.2 (2d ed. 1982)). Therefore, *Brady* may override Rule 16's work-product doctrine in some cases.

## ARGUMENT

**I.    Defendant Received the Same Information as the Government from the Same Source**

Defendant's Motion fundamentally conflates two legal principles: the duty to disclose exculpatory information (owed by *Brady*) and the discovery duties under Rule 16, constrained by Rule 16(a)(2)'s work-product exclusion. Defendant's Motion treats them as identical. They are not.

*Brady* requires the Government to disclose "evidence favorable to the accused" that is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The Government did precisely that in its April 6 email to defense counsel when the Government relayed, in writing, the potentially exculpatory *information* that Asiacom's counsel had communicated.[4] There is no *Brady* issue here. To the contrary, the Government made a timely, written, voluntary disclosure of potentially exculpatory information.

What Defendant now seeks is not *Brady* disclosure. Rather, Defendant seeks something very different: a court order compelling the Government to produce attorney work product. That request implicates Rule 16 and not *Brady*. Rule 16 does not authorize it. Fed. R. Crim. P. 16(a)(2).

Federal Rule of Criminal Procedure 16(a)(2) excludes from criminal discovery "reports, memoranda, or other internal government documents made by an attorney for the government … in connection with investigating or prosecuting a case." Fed. R. Crim. P. 16(a)(2). Any notes

---

[4] Defendant also acknowledges by citing the *Justice Manual* and Texas Disciplinary Rules of Professional Conduct that the obligation applies to exculpatory "information" and not specific documents or materials. However, we note the *Justice Manual* does not create a remedy for a defendant as a formal matter. *See United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009) (collecting cases and noting, "[s]everal sister circuits have held that the Department of Justice guidelines and policies do not crate enforceable rights for criminal defendants").

taken by a prosecutor during an attorney proffer fall within that exclusion. They are work product created by a government attorney in connection with prosecuting a case. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("[A] defendant may examine documents material to his defense, but, under Rule 16(a)(2), he may not examine Government work product in connection with his case.").

Defendant invokes the principle that *Brady* can override Rule 16(a)(2)'s work-product exclusion but misconstrues how it applies to this situation. *Brady* need only "override" Rule 16 when the underlying exculpatory information is *only* found in the attorney work product in question. *See United States v. Gupta*, 848 F. Supp. 2d 491, 497 (S.D.N.Y. 2012). When the information and the source of that information has been disclosed, there is nothing to override. The case Defendant cites in support of his argument makes precisely that point: "*If* [work product] material be of a *Brady* nature, *then* it must be produced." *United States v. Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) (emphasis added); *see also United States v. Ryan*, No. 20-65, 2022 WL 1538404, at *2 (E.D. La. 2022) (work-product immunity is not absolute and can be overcome by *Brady*). Information that has already been produced is not information that "must be produced" in a document form. *Brady* has been satisfied and therefore Rule 16(a)(2) governs.

Defendant's lead authority in support of his request for the production of the Government attorneys' notes is distinguishable. In *United States v. Park*, 319 F. Supp. 2d 1177 (D. Guam 2004), the district court ordered the production of notes "allegedly taken by an Assistant U.S. Attorney during an interview regarding information material to the defendant's guilt." 1179. The notes at issue in that case were a contemporaneous record of the interviews of two *witnesses* over a five-hour period that the AUSA conducted. *Id.* at 1177. The AUSA provided details of the exculpatory information from those interviews but refused to produce the contemporaneous

notes upon request. *Id.* at 1178. There, the district court found that the provided summaries were insufficient, in part, because of their failure to capture "context, emphasis, and subtle distinctions." *Id*. at 1170. Here, we are not dealing with detailed, lengthy interviews of a witness, but rather high-level summaries from Asiacom counsel of interviews that Asiacom's counsel conducted. The nature of the information is distinguishable and the concerns of the *Park* court are not present. The sources at issue here are high-level attorney proffers, not witness interviews, so there is no risk in failing to capture the "context, emphasis and subtle distinctions" that one might expect to capture in an interview of a witness. Not only that, Defendant has the same information as obtained by the Government from the same source.

More instructive is Defendant's citation to *Gupta,* 848 F. Supp. 2d at 491. Mot. at 8 n. 3. In *Gupta*, the defendant sought production of notes obtained during 44 witness interviews. *Gupta* at 492-93. There, the district court correctly held that the government was required to provide any *Brady* information it obtained from the interviews and stated, "to the extent Gupta seeks disclosure of the notes and memoranda beyond any *Brady* material, he has not met the burden to overcome the work product protection." *Id*. at 497. To overcome the work product protection, Defendant must show a need for the information and that he "cannot, without undue hardship, obtain their substantial equivalent by other means." *Gupta* at 496. The Court should similarly rule here as Defendant was able to obtain the same or substantially similar information from the same source by the exact same means as the Government.

Additionally, *Brady* and Jencks Act material notwithstanding, attorney proffers of non-testifying witnesses are not discoverable. *See United States v. Lopez*, No. 1:19-CR-0014, 2019 WL 5960148, at *2 (E.D. Cal. 2019) (attorney proffers of a non-testifying witness's statements do "not fall within the boundaries of Rule 16"); *United States v. Nacchio*, No. 05-cr-00545, 2006

WL 8439750, at *8 (D. Colo. 2006) (attorney proffer of testifying witness discoverable pursuant to Jencks Act).

The cases relied upon by the Defendant are inapposite. None of the cited authorities involve: (1) purported statements of a non-testifying witness; (2) where the same information, both in source and substance, has been provided to the defense; and (3) where the defense has identified no specific reason or facts to believe that the prosecutors' notes contain additional exculpatory information beyond what was already disclosed. Here, the information that the Defendant complains he has been deprived of is attorney proffered statements of two non-testifying witnesses; the exculpatory information has been provided to the Defendant; the Defendant not only had the ability to obtain the same information from the same source as the Government, but did so; and the Government, as it has represented, has provided all exculpatory information in its possession.

Additionally, the Government's production of a summary of the information from the attorney proffer is sufficient. *See United States v. Brown*, 640 F.3d 581, 588-91 (5th Cir. 2011) (no *Brady* violation where prosecution provided a summary of exculpatory information); *United States v. Blankenship*, No. 5-14-CR-00244, 2015 WL 3687864 *7 (S.D. W. Va. 2015) ("To the extent the Defendant has separately requested handwritten notes and attorney proffers which fall under *Brady*, the Court finds that the *substance* of the same should, of course, be produced. The Government, however, is not required to produce its work product.") (emphasis in original)).

## II.    Defendant's Motion Rests on Pure Speculation

Defendant's arguments that the notes "almost certainly" contain additional *Brady* material rests on purely speculative grounds. Defendant says it is "implausible" that the substance of the readouts could be reduced to "just three sentences" and "doubtful" that the two

co-conspirators had "nothing else exculpating to say." Mot at 3. Speculation is not a *Brady*

ground. *See Strickler v. Greene*, 527 U.S. 263, 286 (1999) ("Mere speculation that some

exculpatory material may have been withheld is unlikely to establish good cause for a discovery

request."). Defendant's position is that there must be more exculpatory information the

Government failed to report. Defendant has no basis for that because, in fact, it is incorrect. What

Defendant is really seeking is the notetaker's mental impressions of the information given that

Defendant already has the information from Asiacom's counsel.

In the context of discovery of material under Jencks, in *United States v. Riley*, 115 F.4th

604 (D.C. Cir. 2024), the defendant argued on appeal that the Government's production of a

testifying agent's Jencks material "should have been significant" because the testifying agent

"was one of the Government's principal witnesses relating to the grand jury investigation . . . and

because defense counsel had asked the government before trial to review the FBI messaging

system for Jencks Act material." *Id.* at 617. Based on this set of circumstances, the defendant

"surmise[d]" that prior statements of the testifying agent "must exist," which in turn "apparently

led defense counsel to the belated inference that the government withheld material in its

possession in in violation of the Jencks Act." *Id.* at 616-17. The D.C. Circuit held that "[t]hat

inference alone does not show any substantial prejudice that could support a determination of

plain error." *Id; see also United States v. Nichols*, No. 21-cr-00117-RCL, 2023 WL 6809937, at

*14 (D.D.C. Oct. 16, 2023) ("Neither the Constitution nor the Federal Rules of Criminal

Procedure require the prosecution to undertake a 'broad or blind fishing expedition among

[items] possessed by the Government on the chance that something impeaching' or exculpatory

'might turn up.'") (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)).

Defendant's speculation and inference are insufficient grounds for Defendant's Motion, especially where the Government has represented it has provided all potentially exculpatory information and, more importantly here, Defendant has obtained the information he now seeks from the same source as the Government.

### III.   *In Camera* Review Is Unwarranted

Defendant's alternative request for *in camera* review of the prosecutors' notes (Mot. at 9-10), fails for the same reasons. Seeking *in camera* review is not a default response to a discovery dispute over work product. Rather, it is a specific remedy in cases where there is an articulated basis to believe that protected materials contain *Brady* information that has not been otherwise disclosed or available to the defendant. *See United States v. Runyan*, 290 F.3d 223, 245-46 (5th Cir. 2002) (neither order to compel nor *in camera* review necessary where a defendant has access to the information); *United States v. Gonzalez*, 466 F.2d 1286, 1288 (5th Cir. 1972) ("The government's denial that it possessed any undisclosed exculpatory evidence was ample justification for the trial judge's refusal to make an *in camera* inspection of the government's file, given the absence of any particularized showing by the defendant of materiality or usefulness.").

The cases cited by Defendant in support of his request for an *in camera* review of the Government attorneys' notes are inapplicable. In *United States v. Smith*, 31 F.3d 1294 (4th Cir. 1994), the Fourth Circuit examined the district court's *in camera* examination of notes taken during a pretrial interview of a testifying witness. *Id.* at 1302. Here, however, Defendant does not seek pretrial statements of testifying witnesses taken by the Government, but rather an attorney proffer of information obtained during interviews of non-testifying witnesses conducted by third-party counsel.  Additionally, unlike here, summaries of the contested notes in *Smith* were never

produced and their existence only discovered during the cross-examination of the witness. *Id*. Here, Defendant received the same information as the Government.

In *United States v. Dupuy*, 760 F.2d 1492 (9th Cir. 1985), the notes at issue were made by the government in plea negotiations with counsel for two co-defendants with their clients present. *Dupuy* at 1500-01. During those negotiations, potential *Brady* material was disclosed. *Id*. at 1501. The notes were not disclosed and, instead, the government consulted the district court and provided the district court with the notes, who advised the defendants that potentially exculpatory information was obtained from the two co-defendants and that they could "independently proceed to ascertain the *Brady* material" without reviewing the notes. *Id*. at 1500-01. The Fourth Circuit found that the district court should have conducted an *in camera* review of the notes. *Id*. at 1503. *Dupuy* is not instructive here as the facts are different from those presented here. In *Dupuy*, neither the Government nor the district court made a disclosure to the defense, whereas here the Government already disclosed to Defendant the information he is entitled to.

In *Ferrara v. United States*, 384 F. Supp. 2d 384 (D. Mass. 2005), the government had received exculpatory information from its primary witness, specifically that one of the co-defendants had told him that the defendant had not ordered the murder with which he was charged. 387. The defendant, without the benefit of this information, entered into a plea agreement. *Ferrara* at 388. During the trial of a co-defendant, it was discovered that the government failed to disclose exculpatory evidence and the district court recommended an *in camera* review of the government's notes, to which the government objected. *Id*. at 402. Instead, the district court ordered the government to review its notes for exculpatory information, after which, contrary to the facts, the Government advised that there was none. *Id.* Here, unlike the

prosecution in *Ferrara*, the Government has provided the potentially exculpatory information obtained from the high-level attorney proffer.

*In camera* review presupposes a particularized concern. None has been shown. Accordingly, Defendant's Motion should be denied.

## CONCLUSION

For the reasons stated herein, the United States respectfully requests that the Court deny Defendant Benlin Yuan's Motion To Compel Production of Prosecutor Notes.

Respectfully submitted,

**JOHN MARCK**
ACTING UNITED STATES ATTORNEY

BY:    _____
S. MARK MCINTYRE
ROBERT JOHNSON
CRAIG FEAZEL
ASSISTANT U.S. ATTORNEYS

**JOHN A. EISENBERG**
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

BY:    _____ */s/ Fatema Merchant*
FATEMA MERCHANT
TRIAL ATTORNEY

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Motion was delivered to all counsel of record on May 10, 2026, by electronic filing.

*/s/ Fatema Merchant*
Fatema Merchant
Trial Attorney