UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

UNITED STATES OF AMERICA

    v.

BENLIN YUAN,
**Defendant**

CRIMINAL NO.: 4:25-cr-687

## MOTION TO RECONSIDER

The United States of America, by and through the undersigned counsel, respectfully moves this Court to reconsider its June 1, 2026 Order (Dkt. 218) (the "Order") granting in part Defendant's discovery motion (Dkt. 125) (the "Motion"). As a threshold matter, the Order runs contrary to binding Fifth Circuit precedent, which limits the proper scope of the prosecution team to only "investigative and prosecutorial personnel." *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979). The President and the White House are not "actively involved in trial preparation, [the] production of evidence, [or the] examination of witnesses" and do not "work hand in hand with" law enforcement in investigating and "presenting [Defendant's] case before the courts." *Fierro v. Johnson*, 197 F.3d 147, 155–56 (5th Cir. 1999). They are neither investigative nor prosecutorial personnel whose knowledge can be imputed to the prosecution team, and their records are not subject to examination in this case for discovery purposes under Rule 16.

Moreover, even if the law could require the prosecution team to search such records outside its possession and control, such a search would not be necessary here to achieve the Court's stated aim of granting Defendant access to certain policy documents. Following the entry of the Court's Order, the U.S. Department of Commerce's Bureau of Industry and Security ("BIS"), whose case agents are members of the prosecution team, identified the documents relevant to policies

established by the President that relate to the export or sale of advanced computing chips to China. BIS identified ten of these documents, which the Government has produced to Defendant contemporaneously with the filing of this motion for reconsideration.[1] These ten documents, which are publicly available, are the relevant materials actually effectuating the President's policies in this area. Presidential communications, memoranda and other materials that the President or others may consider as part of the deliberative process are not policy. Moreover, these types of materials are generally shielded by various privileges, including the state secrets privilege, the presidential communications privilege, the deliberative process privilege, and in some cases the attorney-client and work product privileges.

The Government therefore respectfully requests that the Court reconsider its Order directing the Government to conduct a broad examination of information held by individuals and entities outside the prosecution team and, including among others, the President of the United States. Such a broad examination would exceed the limits on the scope of the Government's discovery obligations established by the Fifth Circuit and is not necessary to provide Defendant with the policy statements that the Court has deemed relevant to the defense. The Court should reconsider the Order and deny Defendant's Motion in its entirety.

## BACKGROUND

On April 20, 2026, Defendant filed a motion seeking dismissal of the Indictment or, in the alternative, an order compelling the Government to

> "search governmental repositories for and produce:
>
> - all communications—including notes, recordings, memoranda, readouts, cables, and policy papers—between

---

[1] Although these materials are being produced to Defendant, the Government maintains that they do not fall within the Government's discovery obligations, are not relevant, and are not admissible pursuant to Rule 401 and 403.

any employee or official of the U.S. government (including the President, members of his staff and Cabinet, and officials of the Department of Commerce, the Department of Justice, and the Department of Homeland Security) and any employee of Nvidia Corporation (including Jensen Huang) concerning potential or actual restrictions on the export of Nvidia GPUs, GPU baseboards, or GPU servers to China, from January 1, 2025 through the date of this Order; and

- all readouts, summaries, transcripts, or other records of telephone calls or other communications between President Trump and President Xi of China, or any other person, concerning the export, sale, or transfer of Nvidia GPUs or related products to China, from January 1, 2025 through the date of this Order."

Dkt. 125.

On May 5, 2026, the Government filed its response to the Motion, noting, in part, that the information sought by Defendant was not in the possession of the prosecution team. Dkt. 147 at 8-9.

On May 15, 2026, Defendant filed a notice of "[r]ecent developments" in support of the Motion. Dkt. 172.

On May 17, 2026, Defendant filed a second notice in support of the Motion. Dkt. 174.

On May 18, 2026, the Court entered an order denying Defendant's motion to dismiss and granting "the motion as it relates to *Brady*, Giglio and/or Jencks disclosure pursuant to Fed. Rules of Crm. P., Rule 16." Dkt. 180.

At the conclusion of an evidentiary hearing held on May 20, 2026, Defendant requested clarification of the Court's May 18 order and, in response, the Court advised that it would be issuing a subsequent order specifying what the Court is requiring the government to produce. Tr. Hearing, Dkt. 193 at 245-46.

On June 1, 2026, the Court entered the order it had alluded to at the May 20 hearing. Dkt.

218. The Order states, in part,

> "It is the Court's view that Rule 16 obligates the government to examine any and all statements published or unpublished to determine whether any policy has been adopted by the President that tangentially or otherwise impacts the enforcement of the laws or statuses under consideration in this case. The Presidency and the Department of Justice ("DOJ") constitute one branch of government. Therefore, irrespective of the relationship between the sitting President and the DOJ, together they represent the arm or branch of the government that prosecutes persons charged with violations of federal law. … The President is not exempt from the law (FRCP, Rule 16), even though it may be argued that he cannot be prosecuted for violations."

*Id*. at 2-3. The Order directed the Government "to provide to the defense any policy documents established by the President that concern the export or sale of the GPC's [sic] chips and baseboards to China." *Id*. at 3.[2]

BIS administers U.S. laws, regulations and policies governing the export and reexport of commodities, software, and technology falling under the jurisdiction of the Export Administration Regulations (EAR). Therefore, any "policy documents established by the President that concern the export or sale of the GPC's [sic] chips and baseboards to China" would be transmitted to the Department of Commerce for implementation of such policy by BIS. BIS is also responsible for enforcing the EAR. Given the prosecution team includes BIS agents, the Government has queried BIS for information that may constitute "policy documents established by the President that

---

[2] While the Order does not define "policy document," the Government applies the plain meaning of that term to understand the Court intended policies established by the President that relate to the export of advanced computing chips to China. We also understand the Court's Order to apply to policy documents during the time period between on or about April 2025 through the date of the Indictment. Though the Government maintains that the December 2025 Truth Social post that Defendant has invoked is not relevant to the case and outside the scope of the conduct at issue, the Government has included the January 2026 documents because that Guidance stemmed from the December 2025 Truth Social post that Defendant has invoked in his Motion to Compel.

concern the export or sale of the GPC's [sic] chips and baseboards to China." That effort resulted in the identification of the following policy documents:[3]

1.      The President's January 20, 2025 America First Trade Policy;

2.      BIS's May 12, 2025 Guidance on the Rescission of Biden-Era Artificial Intelligence Diffusion Rule, Strengthens Chip-Related Export Controls;

3.      BIS's May 13, 2025 Guidance on Application of General Prohibition 10 (GP10) to People's Republic of China (PRC) Advanced-Computing Integrated Circuits (ICs);

4.      BIS's May 13, 2025 Industry Guidance to Prevent Diversion of Advanced Computing Integrated Circuits;

5.      BIS's May 13, 2025 BIS Policy Statement on Controls that May Apply to Advanced Computing Integrated Circuits and Other Commodities Used to Train AI Models;

6.      "Winning the Race: America's AI Action Plan" published July 23, 2025;

7.      The President's July 23, 2025 Executive Order "Promoting the Export of the American AI Technology Stack";

8.      The President's December 11, 2025 Executive Order "Ensuring a National Policy Framework for Artificial Intelligence";

9.      The President's January 14, 2026 Fact Sheet: President Donald J. Trump Takes Action on Certain Advanced Computing Chips to Protect America's Economic and National Security; and

10.     Federal Register Notice (Vol. 91, No. 10 / Thursday, January 15, 2026) Revision to License Review Policy for Advanced Computing Commodities.

---

[3] All these materials have been published and are publicly available. BIS has advised that there are no unpublished policy documents established by the President that concern the export of Nvidia GPUs to China.

**LEGAL STANDARD**

"Although [motions for reconsideration] are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991). Reconsideration is an "extraordinary remedy that should be used sparingly," and the Court has "considerable discretion to grant or deny." *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012) (*citing Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) and *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993)). "Absent specific guidance from the Federal Rules of Criminal Procedure, courts should apply the standards set forth in the Federal Rules of Civil Procedure to motions for reconsideration." *CITGO*, 908 F. Supp. 2d at 820 (citation omitted).

"In the civil context, a motion for reconsideration that challenges a final civil judgment is treated either as a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure, or as a motion seeking relief from judgment under Rule 60(b)." *United States v. Garay*, No. 3:19-CR-122-S, 2021 WL 807254 *2 (N.D. Tex. 2021) *citing United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991). "A motion for reconsideration of an interlocutory order is generally evaluated under Rule 54(b) of the Federal Rules of Civil Procedure." *United States v. Mouton*, 4:20-CR-00501, 2024 WL 1545178 (S.D. Tex. 2024) *citing Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017) and *Garay* at *2. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

"Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or

clarification of the substantive law." *Austin v. Kroger Texas, L.P.* 864 F.3d 326, 336 (5th Cir. 2017). The correction of manifest errors of law is also a basis to grant a motion to reconsider of an interlocutory order pursuant to Rule 54(b). *Garay* at *2.

## ARGUMENT

### The Court Should Reconsider the Order,
### Which Is Contrary to Binding Fifth Circuit Precedent

The Government requests that the Court reconsider its finding "that Rule 16 obligates the government to examine any and all statements published or unpublished to determine whether any policy has been adopted by the President that tangentially or otherwise impacts the enforcement of the laws or statuses under consideration in this case" as it expands the definition of the prosecution team and the Government's discovery obligations under Rule 16 and *Brady* contrary to additional long-standing binding Fifth Circuit precedent and other persuasive authorities that were not previously cited by the Defendant in his motion or the Government in its May 5, 2026 response.

The Government's discovery obligations under Rule 16 and *Brady* extend to "the defendant's adversary, the prosecution," not all agencies of the federal government. *United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977). "[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately [take] 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1988) (citation omitted); *see also United States v. Hunter*, 32 F.4th 22, 37 (2d Cir. 2022) ("Limiting disclosure obligations to the 'prosecution team' prudently prevents a prosecutor from needing to search the 'whole-of-government' for possibly material information in myriad cases and controversies before the courts. Such an obligation would clearly be an unworkable

encumbrance on the system of justice.").

The Government is not required to search for information held by individuals and entities who are not part of the prosecution team. *Trevino*, 556 F.2d at 1270–72; *United States v. Escobar*, 674 F.2d 469, 479 (5th Cir. 1982); *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975) ("*Brady* clearly does not impose an affirmative duty on the Government to take action to discover information which it does not possess."); *see Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (The prosecution "has a duty to learn of any favorable evidence known *to the others acting on the government's behalf in the case,* including the police." (emphasis added)); *see also United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024) ("As to those agencies that are not involved in the investigation, the prosecutor need not comb the files of every federal agency which might have documents; rather, the obligation to disclose turns on the extent to which the prosecutor has knowledge of and access to the documents." (cleaned up)); *United States v. Causey*, 356 F. Supp. 2d 681, 691 (S.D. Tex. 2005) (a prosecution team does not "have a duty to learn of favorable evidence known to other [executive branch agencies]" if they have not "acted on the government's behalf" in the investigation).

The "prosecution team" consists of the "investigative and prosecutorial personnel" who have worked on the criminal case. *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979); *see United States v. Esteves*, 2025 WL 1912748, at *3 (5th Cir. 2025) (unpublished) (the duty of disclosure only involves evidence known to the prosecutors and *others acting on the government's behalf in the case*). The prosecution team includes the prosecutors as well as the individuals and entities who, under normal "principles of agency law," "functioned as agents of" the prosecutors. *Id.* at 570. Even when some agency personnel are part of the prosecution team, the Government's discovery obligations do not extend to other personnel at the same agency who had no involvement

in the investigation. *See United States v. Locascio*, 6 F.3d 924, 948–49 (2d Cir. 1993) (although FBI was lead investigative agency, prosecution had no duty to disclose reports written by other FBI agents "uninvolved in the investigation or trial of the defendants"); *United States v. Pelullo*, 399 F.3d 197, 216–18 (3d Cir. 2005) (although "certain [Labor Department] agents were integral members of the prosecution team," prosecution had no duty to disclose documents possessed by another arm of Labor Department not involved in prosecution); *United States v. Baker*, 2014 WL 722097, at *3 (W.D. Tex. Feb. 21, 2014) (denying a motion to compel disclosure from the SEC because there was "no overlap of personnel or direction … [and] no reason to believe the SEC was or is a member of the Government's prosecution team[.]").

"The extent to which the 'prosecution team' includes individuals or agencies beyond the prosecutors themselves depends on a 'case-by-case analysis of the extent of the interaction and cooperation between' those individuals or agencies and the prosecutors pursuant to agency law." *Esteves*, 2025 WL 1912748, at *3 (quoting *Avila v. Quarterman*, 560 F.3d 299, 308 (5th Cir. 2009)). In *Esteves*, the Court held that the defendant had not shown the "requisite 'interaction and cooperation'" to show that the evidence at issues was accessible to the prosecution team. *Id.* at *4. In that case, the Fifth Circuit held that the government did not have access to the recorded jail calls of a key government witness because the detention center was not part of the prosecution team, and the AUSAs involved did not have access to the calls and had not listened to them. *Id.*

The President is the head of the executive branch of government of which the Department of Justice is a part. However, that fact does not make the President a part of the prosecution team. *Antone* at 569 (the "prosecution team" consists of the "investigative and prosecutorial personnel"). The President was not involved in the investigation or prosecution of the Defendant and is therefore not a part of the prosecution team. *See Esteves*, 2025 WL 1912748, at *4; *Trevino* at

1270-72; *Fierro* at 156 (personnel at another state agency that "neither work with the police in a common enterprise, nor are . . . in the business of prosecuting crime" are not on the prosecution team, preventing the imputation of constructive knowledge).

Pursuant to well-established and binding Fifth Circuit precedent, the Government's discovery obligations under Rule 16 extend only to the prosecution team, that is, the "investigative and prosecutorial personnel" who have worked on the criminal case again the Defendant, *Antone* at 569, which does not include the President. Therefore, to correct a clear error of law, the Government respectfully requests the Court to reconsider the Order and deny the Motion. Such reconsideration is particularly appropriate here, where, as set forth above, the Government has examined records in the custody and control of the prosecution team and has produced policy documents to Defendant of the type contemplated in the Court's Order. Reconsideration is therefore not only legally required but can be accomplished here while securing for the defense the documents to which the Court has found Defendant entitled.

**CONCLUSION**

The United States of America, therefore, respectfully requests the Court to reconsider the Order and deny the Motion.

Respectfully submitted,

**JOHN MARCK**
ACTING UNITED STATES ATTORNEY

BY:     *Robert Johnson*
ROBERT JOHNSON
S. MARK MCINTYRE
CRAIG FEAZEL
ASSISTANT U.S. ATTORNEYS

**JOHN A. EISENBERG**
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

BY:     */s/ Aaron L. Jennen*
AARON L. JENNEN
FATEMA MERCHANT
TRIAL ATTORNEYS

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 9, 2026, the foregoing pleading was filed with the Court through the

Court's CM/ECF system on all parties and counsel registered with the Court CM/ECF system.


<u>/s/ Aaron L. Jennen</u>
Aaron L. Jennen
Trial Attorney