IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Houston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-687 |
| | ) | |
| BENLIN YUAN, | ) | Hon. Kenneth M. Hoyt |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BENLIN YUAN'S MOTION TO STRIKE
GOVERNMENT'S AUDIO EXHIBIT FOR SUPPRESSION HEARING**

In aid of its appeal of an adverse suppression ruling, the government has unilaterally lodged with the Court—and attempted to shoehorn into the appellate record—a USB drive containing files the government created that purportedly sync audio from Benlin Yuan's recorded pre-arrest interview with corresponding portions of the written transcript thereof. The government's belated clerical filing is an effort to accomplish what it failed to do during the hearing itself: formally place the audio evidence into the record. Because the Federal Rules do not permit this maneuver, and because the omission of the USB drive poses no prejudice, the government's late-stage supplementation of the record should be promptly stricken.

**RELEVANT BACKGROUND**

On May 20, 2026, the Court held an evidentiary hearing on Mr. Yuan's Motion to Suppress Statements Made During BIS Interview (Dkt. 128). The government called two witnesses, the first of whom was Special Agent ("SA") Tyler Fox. Tr. (Vol. 3, Part 1) at 64:13-14. Before SA Fox took the stand, government counsel, AUSA Mark McIntyre, averred that he intended to introduce two exhibits during SA Fox's testimony—namely, a transcript of the recording of SA Fox's interview of Mr. Yuan (Exhibit 1) and "the audio version . . . synced up with the transcript"

(Exhibit 2). *Id.* at 64:17–65:5. After the Court questioned the need to listen to the interview on top of reviewing the transcript, AUSA McIntyre responded: "There's at least portions of [Exhibit 2] that we'd like the Court to hear, we think they're important, if that's a better way to do it." *Id.* at 66:4-5. "Well," the Court rejoined, "if you're going to pull something out, that's fine; but I'm not going to listen to the whole thing and then have to read it later on anyway." *Id.* at 66:7-9.

Thereafter, AUSA McIntyre conducted his direct examination of SA Fox. He did not, however, play for SA Fox any of the audio contained on Exhibit 2 or seek its admission. Later, on redirect, AUSA McIntyre turned to Exhibit 2. *See* Tr. (Vol. 3, Part 2) at 179:23-24 ("Your Honor, I had a few clips I wanted to have my paralegal play if that's okay."); *id.* at 180:10-11 ("There's nine [clips], but I think they're less than five minutes and I can play them just back-to-back."). Again, the Court expressed some reservation, noting that "if you're going to question the witness after each clip and go through them, then it could be another hour." *Id.* at 180:14-15. After AUSA McIntyre confirmed that he was not going to do that, the Court permitted him to proceed and the audio files were played without interruption. *Id.* at 180:16-22. However, there is nothing in the record—not in the transcript of the suppression hearing or anywhere else—indicating the duration of those audio files or the portions of the interview transcript to which they correspond.

After the audio clips were played, AUSA McIntyre indicated that he wished to ask SA Fox some questions. *Id.* at 180:23-24. The following colloquy ensued:

> THE COURT: All right. What I'm going to ask of you is to have your operator or yourself indicate where those takeouts exist in the exhibits -- in the exhibits that you have provided to me.
>
> MR. MCINTYRE: Yes, Your Honor.
>
> THE COURT: In other words, give me a page and line number, et cetera, so I can go back and reflect on those as I go through.
>
> MR. MCINTYRE: Yes, Your Honor.

2

THE COURT: All right. Go ahead.

MR. MCINTYRE: And I think that was nine cuts, right? I don't know if you want it marked. I guess those would be Government's 2 through 10 if you --

THE COURT: You've already offered the document into evidence.[1]

MR. MCINTYRE: Yes.

THE COURT: You're just simply telling me where it is that you are responding to the cross-examination, so I think that's sufficient. And if you want to file it as an official document, that's fine. When I say, "file it as an official document," I mean if you want to file it saying that "These are the responsive takeouts" or whatever word you want to use to Exhibit Number 1, it would be like taking a deposition and saying, "These are the parts that I want to put some emphasis on in redirect examination."

MR. MCINTYRE: Yes.

THE COURT: So that's what I want you to do.

MR. MCINTYRE: All right.

*Id.* at 180:25 – 182:2. At no point were any of the audio clips offered or admitted into evidence, nor did the government ever move to reopen the suppression hearing.

On June 9, 2026, the Court granted Mr. Yuan's motion, suppressing the statements that he made during his pre-arrest interview. Dkt. 234. On July 7, 2026, the government noticed its appeal of that interlocutory decision pursuant to 18 U.S.C. § 3731. Dkt. 262. It was only thereafter, on July 16, 2026, that the government—without consulting the defense—filed a submission, styled as "Audio Exhibit for Suppression Hearing," in which it noted that it had "not been able to verify with . . . the Clerk's Office that the audio exhibit"—*i.e.*, Exhibit 2—"is in the record." Dkt. 265 at 1. "Therefore," the submission continued, "in compliance with the Clerk's Notice of the Filing of an Appeal regarding Exhibits, the United States hereby electronically files into the case the

---

[1] Mr. Yuan understands "the document" to refer to Exhibit 1.

aforementioned audio recording[.]" *Id.*[2] The government further attested that it was "hand deliver[ing] the audio exhibit . . . contemporaneously with this filing." *Id.*; *see also* Dkt. 266-1 (memorializing the submission of "USB Exhibit: Suppression Hearing," recorded as "INSTRUMENT #2").

## LEGAL STANDARD

In addition to the transcripts of the proceedings below and a certified copy of the docket sheet, the record on appeal consists of "the original papers and exhibits filed in the district court." Fed. R. App. P. 10(a)(1). Courts have consistently interpreted this to mean that "only those papers and exhibits filed in the district court can constitute the record on appeal." *United States v. Brown*, 88 F.4th 750, 756 (8th Cir. 2023). Thus, "matters that were merely lodged with the clerk or never offered in evidence are excluded from the definition." *In re Arthur Andersen & Co.*, 621 F.2d 37, 39 (1st Cir. 1980) (internal quotation marks and citation omitted).

Rule 10 contains a mechanism by which the district court can correct errors in the record, but, as relevant here, only in two narrow circumstances: when "any difference arises about whether the record truly discloses what occurred," Fed. R. App. P. 10(e)(1); and when "anything material . . . is omitted from . . . the record by error or accident," Fed. R. App. P. 10(e)(2). Courts have uniformly held that Rule 10(e) cannot be used to introduce new evidence that was not before the district court during the proceedings leading to the order under review. As the Fifth Circuit long ago observed, "Rule 10(e) exists to allow the district court to conform the record to what happened,

---

[2] The Notice of the Filing of an Appeal referred to by the government states: "The Fifth Circuit requires exhibits *admitted into evidence* be included in the electronic record for transmission to the Fifth Circuit." Dkt. 264 (emphasis added). As previously noted, Exhibit 2 was not admitted into evidence. The Notice also provides that "[e]xhibits previously returned to the parties must be electronically filed in this case by the attorney[.]" *Id.* But Exhibit 2 was never tendered to, and therefore never returned by, the Court.

not to what did not." *United States v. Smith*, 493 F.2d 906, 907 (5th Cir. 1974); *see also Weathersby v. One Source Mfg. Tech., LLC*, 378 F. App'x 463, 466 (5th Cir. 2010) ("Rule 10(e) exists in order to ensure that the record considered by this court accurately reflects what actually happened at the district court level and not to introduce new evidence[.]"); 16A Catherine T. Struve, *Federal Practice and Procedure* § 3956.1 (5th ed. 2026) ("[O]rdinarily, the court of appeals will not consider matter that was filed with the district court . . . *after* the date of the judgment or order that is challenged on appeal." (citing *Craig v. Bisignano*, 157 F.4th 773, 775 (5th Cir. 2025))).

"[A] motion to strike matter from the record on the ground that it is not properly a part of it must first be presented to the district court." *Zimmerman v. Chi. Bd. of Trade*, 360 F.3d 612, 622 (7th Cir. 2004).[3]

### ARGUMENT

The USB drive containing the audio file(s) constituting Exhibit 2 that the government has submitted to the Clerk's Office was not admitted into evidence at the suppression hearing. Nor was Exhibit 2 admitted in some other manner at that time. Thus, the government's post-ruling, post-notice-of-appeal submission of Exhibit 2 is not a correction of an accidental omission; rather,

---

[3] Rule 10(e) requires parties to first present disputes about the composition of the record to the district court, which retains jurisdiction to decide such motions even after the notice of appeal is filed. By the same token, the district court retains jurisdiction to decide a motion to strike a party's filing (like the government's submission in this case), even if the party has already filed a notice of appeal. Under the general divestiture rule, the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. *See United States v. Sanchez*, 258 F. Supp. 2d 650, 657 (S.D. Tex. 2003) ("Typically, notice of appeal to an appellate court in a criminal case deprives a district court of jurisdiction."). However, the district court retains jurisdiction over matters not involved in the appeal and over actions that will aid the appellate process. *See Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1145 (5th Cir. 1982). Rule 10 expressly provides that the district court may correct or supplement the record before or after the record has been forwarded to the court of appeals, which necessarily implies that the district court retains jurisdiction to rule on motions concerning the composition of the record.

it is an impermissible attempt to retroactively supplement the record with new evidence that neither Rule 10(e) nor any other rule countenances. The underlying principle here is foundational: "[an appellate court] can act on no evidence which was not before the court below[.]" *Boone v. Chiles*, 35 U.S. 177, 178 (1836).[4]

Moreover, the government cannot, as it must, demonstrate that it would be prejudiced were Exhibit 2 to be excluded from the appellate record. *See Fulton v. United Airlines, Inc.*, No. H-17-528, 2020 WL 13605207, at *1 (S.D. Tex. June 3, 2020) ("A party asserting the [appellate] record is inaccurate must identify specific prejudice."). This is so for three reasons. *First*, there is no risk of the Fifth Circuit failing to grasp how Mr. Yuan's pre-arrest interview unfolded given that Exhibit 1, the full transcript of the interview, will be part of the record on appeal. *Second*, the government had a full and fair opportunity to formally move to admit the audio files during the suppression hearing. Its failure to do so—whether a function of oversight or strategy—cannot logically amount to prejudice (and cannot be remedied after the fact by a unilateral filing designed to improve its appellate record). *Cf. United States v. Page*, 661 F.2d 1080, 1082 (5th Cir. 1981) (stating that Rule 10(e) was not "designed to supply what might have been done but was not").

---

[4] The government might contend that Exhibit 2 was "before the court below" insofar as the audio files were played for the Court during the suppression hearing. To be sure, "it is not always the case that a document must have been admitted into evidence in order to be included in the record." Struve, *supra*, § 3956.1 (footnote omitted). It must, however, "have been *considered* by the court—as, for instance, when the district judge considers a proffered exhibit and refuses to admit it into evidence." *Id.* (footnote omitted). This point cuts in Mr. Yuan's favor. If the audio clips played at the hearing were relied upon by the Court in granting the suppression motion, they are already part of the appellate record by virtue of having been played and considered, and no post-ruling filing is necessary or appropriate. If, on the other hand, the Court did not rely on the audio clips in granting suppression—which is the more likely scenario given that they were never formally admitted—then they are not part of the record and cannot be added to it through a belated filing. At bottom, the government cannot have it both ways: if Exhibit 2 was not relied upon, it is not part of the record and cannot be added; if Exhibit 2 was relied upon, it is already part of the record and its submission is superfluous.

6

*Third*, it is Mr. Yuan, not the government, who stands to be prejudiced. If the Court blesses the government's gambit, it would permit the government to bolster the appellate record with evidence that was never subjected to the procedural requirements of formal admission at the suppression hearing.

Additionally, it is unclear what, exactly, is on the USB drive. At the suppression hearing, as previously summarized, the government first referred to Exhibit 2 as a single audio file. Later, during SA Fox's redirect, the government referenced nine audio clips, which were subsequently played in some fashion. *See* Tr. (Vol. 3, Part 2) at 180:22 ("(Audio was played.)"). Thereafter, the government suggested that those nine audio files would be Exhibits 2 through 10. But that never came to pass. Instead, in its submission on July 16, 2026, the government described "Exhibit No. 2" as "the audio exhibit" (twice) and as the "audio recording," all singular. Dkt. 265 at 1. And the document acknowledging receipt of the USB drive describes it simply as "USB Exhibit: Suppression Hearing." Dkt. 266-1. Questions abound (*e.g.*, how many files are on the USB drive? How long is each file? What portions of the interview transcript have been synced up with those audio clips?). Yet nothing in the record supplies an answer, underscoring the impropriety of the government's approach and the need to rectify its misstep.

## **CONCLUSION**

For the reasons stated, the Court should grant the instant motion, strike docket entries 265 and 266-1, and order that Exhibit 2 be removed from the record before it is transmitted to the Fifth Circuit.

Respectfully submitted,


/s/ Alexander E. Blanchard
John L. Brownlee (*pro hac vice*)
Ashley Akers (*pro hac vice*)
Alexander E. Blanchard (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8600

Samuel J. Louis
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone: (713) 821-7000

Hannah Myslik Maloney
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
Phone: (512) 647-4391

*Counsel for Benlin Yuan*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I filed the foregoing electronically using the Court's CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard

## CERTIFICATE OF CONSULTATION

The instant motion asks the Court to strike a submission that the government made unilaterally—*i.e.*, without consulting the defense and without obtaining the Court's leave. In this posture, and based on the arguments made herein, it is safe to say that the government opposes the relief requested.

*/s/ Alexander E. Blanchard*
Alexander E. Blanchard