**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **Criminal No.  4:25-CR-687** |
| | § | |
| **BENLIN YUAN,** | § | |
| **Defendant.** | § | |

**UNITED STATES' SUPPLEMENTAL RESPONSE TO YUAN'S MOTION TO STRIKE AUDIO EXHIBIT FOR SUPPRESSION HEARING**

The United States provides this Supplemental Response to aid the Court in advance of, and during the status conference on that motion set for July 28, 2026. *See* Dkt. Nos. 267 and 281. Yuan's contentions that the United States "concedes" to any part of his argument or that the United States "fails to engage with the transcript almost entirely" are false.[1] *See* Dkt. No. 280 at 1-2. To assist the Court, the United States provides this summary of the transcripts and portions of the record that address the audio recording (Exhibit 2).

**I.      Summary of the record and transcripts.**

As previously addressed, this Court's minute entry for the May 20, 2026, evidentiary hearing makes clear that the Government Exhibits and Defense Exhibits were admitted:

---

[1] The United States cited to the transcripts, Dkt. Nos. 193 and 240, a total of eleven (11) times in the Response to Yuan's Motion to Strike Audio Exhibit for Suppression Hearing. Dkt. No. 277 at 3-5, 10-11.

| 05/20/2026 | 185 | Minute Entry for proceedings held before Judge Kenneth M Hoyt: MOTION HEARING as to Benlin Yuan held on 5/20/2026. Defense evidence continues; Defense rests. Witnesses sworn. Gov't Exhibit 1-Transcript, 2-Audio of Transcript offered and admitted; Defense Exhibits Nos. 1, 2, 3, 4, and 5, which are audio clips were offered and admitted. Witnesses1)SA Manuel Egurrola, 2)SA Tyler Fox, 3)SA Danny Luo. Rulings as stated on the record. Supplemental statements, disputed or undisputed of what the testimony shows are due within seven (7) days, May 27, 2026; no responses required. Pretrial Conference set for 6/11/2026 at 09:00 AM in Courtroom 8B before Judge Kenneth M Hoyt ; Jury Selection/Trial set for 6/15/2026 at 10:00 AM in Courtroom 8B before Judge Kenneth M Hoyt. Appearances: Robert Searls Johnson, Stephen Mark McIntyre, Fatema Merchant, John Leslie Brownlee, Ashley Akers, Alexander Edward Blanchard, Samuel J. Louis, Chinese Mandarin Interpreter.(Court Reporter: Monica Walker-Bailey(AM); Lanie Smith(PM) Deft remanded to Bond, filed. (cjh4). (Entered: 05/20/2026) |

Dkt. No. 185.[2]

The following excerpts from the transcripts involved all relevant references, in context, to Exhibit 2 (audio of the transcript) at the May 20, 2026, hearing that the United States has located. The United States has added emphasis to highlight, for the Court's convenience, specific references to the audio recording.

**A. Prior to the testimony of Special Agent Fox.**

THE COURT: Who is the first witness?

MR. MCINTYRE: It's going to be Tyler Fox, Your Honor.

THE COURT: All right. Is he in the courtroom?

MR. MCINTYRE: He's in the courtroom. I have two exhibits. I've already provided it to defense counsel. This is going to be a transcript of the interview (handing). And then also my paralegal, who is fantastic –

THE COURT: What you've handed me is Exhibit No. 1 --

---

[2] The electronic record on appeal will include "a certified copy of the docket entries prepared by the district clerk" which will include the minute entry showing that Government's Exhibit 2, the audio of the transcript, was offered and admitted. *See* Fed. R. App. P. 10(a)(3); Dkt. No. 185.

MR. MCINTYRE: Yes, sir.

THE COURT: -- associated with Document No. 128. It's a transcript of what, now?

MR. MCINTYRE: It's a transcript of the interview of the defendant on November 28th of 2025.

THE COURT: All right. Okay. Very good.

MR. MCINTYRE: And, also, Your Honor, Exhibit No. 2 is going to be the audio version that she synced up with the transcript that we're going to show after this testimony …

…

THE COURT: And No. 2 is going to be a what, an audio of what?

MR. MCINTYRE: It's the audio of 1.

THE COURT: Oh, an audio of this transcript.

MR. MCINTYRE: Yes, Your Honor.

THE COURT: Okay. Now, why am I going to need to listen to it if I have to read it?

MR. MCINTYRE: Well, you can kind of -- the way I have it you can sync it and you can read it. And some of it is in Chinese, so it's nice to hear it.

THE COURT: In Chinese?

MR. MCINTYRE: Some of it is in Chinese, but the transcript is not in Chinese, though.

THE COURT: I'm not sure I'm going to listen to it. I've got the transcript, and I'm not sure. Is this what this witness will be doing, testifying about that event?

MR. MCINTYRE: He's going to be testifying about that event. There's at least portions of that we'd like the Court to hear, we think they're important, if that's a better way to do it.

THE COURT: Well, if you're going to pull something out, that's fine; but I'm not going to listen to the whole thing and then have to read it later on anyway.

MR. MCINTYRE: Yes, sir.

THE COURT: Okay. All right.

Dkt. No. 193 at 64-66.

## B. The direct examination of Special Agent Fox.

MR. MCINTYRE: And after the vehicle drives up and parks, what do you and the other agents do?

SA FOX: We exited our vehicles. <u>I began an audio recording</u> and gave a brief preamble …

Dkt. No. 193 at 71.

MR. MCINTYRE: And then so once you've -- you're in this meeting room inside of this common area in the apartment, what transpired then; did y'all begin to have a conversation?

SA FOX: Yeah, we did. … And when we sat down, I had put my government-issued phone on the table, and <u>I believe his daughter asked if the interview was being recorded, and I replied affirmatively that, yes, the interview was being recorded</u>.

Dkt. No. 193 at 77-78.

MR. MCINTYRE: Now, getting away from the substance of the conversation you had with him, do you know approximately how long this interview of Mr. Yuan lasted?

SA FOX: <u>The entire recording from preamble when we exited the vehicles to whenever the recording was terminated was approximately 50 minutes, 52 minutes.</u>

…

MR. MCINTYRE: And so we discussed the, you know, the length, and the location was in this particular conference room. What was the tone -- what was your tone of the questioning? <u>I know there's an audio version of this</u>. Were you or the other agents threatening or accusatory during the time period you were interviewing these individuals?

SA FOX: No.

Dkt. No. 193 at 79-80.

MR. MCINTYRE: Now, during the time period of this interview, his daughter was in the room; is that correct?

SA FOX: That's correct.

MR. MCINTYRE: <u>And when you listen to the audio</u>, does she interject during the interview on several occasions?

SA FOX: Yes, she interjects.

Dkt. No. 193 at 81-82.

MR. MCINTYRE: And so as the conversation continued on, can you sort of give us some of the highlights that relate to this conversation, with the understanding that it was all recorded, I guess, from the start to the finish; is that correct?

SA FOX: <u>It was -- yeah, it was recorded</u>. Yes.

Dkt. No. 193 at 83.

**C. The cross-examination of Special Agent Fox.**

MR. BLANCHARD: And this interview lasted nearly an hour, right?

SA FOX: The interview portion, no. The entire recording from preamble to when the recording was terminated was approximately 52 minutes, I believe.

MR. BLANCHARD: Okay. And you said that maybe the first three minutes was, you make introductions, or what have you, so the substantive interview was, say, 49 or 50 minutes?

SA FOX: Yeah, 45, somewhere in there. <u>I mean the recording would reflect that, but roughly, yes</u>.

Dkt. No. 93 at 116-117.

MR. BLANCHARD: Agent Fox, I'd like to invite your attention to what's been marked for identification purposes as Defendant's Exhibit 1, which is at Tab 1 in the binder. And I'll just tell you, Agent Fox, that several of these tabs in this binder are excerpts from Government's Exhibit 1 that focus on particular aspects of the -- of the interview. And so my first question is just with respect to Defendant's Exhibit 1. Generally speaking, looking at this, do you recognize this as being from the transcript of your interview of Mr. Yuan?

SA FOX: I do.

MR. BLANCHARD: And, Your Honor, <u>we've excised the audio that corresponds to these transcript excerpts. And so with the Court's permission for this one, and the subsequent ones that I ask Agent Fox about, I'd ask for permission to be able to play the corresponding audio clip</u>?

THE COURT: Well, let's see. I don't have a problem with demonstrating it, but <u>I do not want the recordings, unless you're going to place them in evidence to be another exhibit since this is the transcript itself</u>.

MR. BLANCHARD: <u>That's fine with us, Your Honor, if we need them to be exhibits. I think there are about five of them</u>, and they are probably, at most, 30 seconds, some of them are shorter.

THE COURT: All right. Let's see how we go.

MR. BLANCHARD: Okay. Ms. Akers, if we could <u>play the file</u> corresponding to Defendant's Exhibit 1. And, Agent Fox, <u>if you would listen and follow along on the transcript</u>, and I'll have some questions for you.

(<u>The audio was played</u>.)

MR. BLANCHARD: And if we could restart it with a little volume. Thank you.

(<u>The audio was replayed</u>.)

MR. BLANCHARD: And, Your Honor, we move to admit Defendant's Exhibit 1 at this time.

THE COURT: <u>I'll admit it but the entire document has been admitted, correct?</u>

MR. BLANCHARD: Yes -- well, insofar as Government's Exhibit 1 is the entire transcript, these excerpts of course are –

THE COURT: No, I get it, for identification and for purposes of arguments, and that sort. I agree. No problem.

MR. BLANCHARD: Okay. Thank you, Your Honor.

Dkt. No. 193 at 131-133.

MR. BLANCHARD: All right. Let's go to Tab 2, and what's been marked for identification purposes as Defendant's Exhibit 2.

THE COURT: We're going to break after this.

MR. BLANCHARD: Yes, Your Honor. <u>And if we could play this audio file as well</u>, Ms. Akers.

(<u>The audio was played.</u>)

MR. BLANCHARD: Before we break, Your Honor, may I just move to admit this exhibit, please?

THE COURT: Objection?

MR. MCINTYRE: No objection, Your Honor.

THE COURT: Admitted. Let's pick up with the questioning later.

Dkt. No. 193 at 135.

MR. BLANCHARD: Agent Fox. So when we left off prior to the lunch break we were looking at Defendant's Exhibit 2 and we played the audio. I don't think we need to play that again, but I'd invite your attention to that exhibit in your binder and I have some questions about it and I'd like to start with --

Dkt. No. 240 at 141.

MR. BLANCHARD: Okay. And in response I think it's fair to say that Mr. Yuan was enthusiastic, right? He said, "Yeah. That's great."

SA FOX: I would have to listen to the audio to hear his tone, but, yeah, it's great. Yeah.

Dkt. No. 240 at 143.

MR. BLANCHARD: And then after he said, "I think so," he tried to say something, right?

SA FOX: I don't know what he tried to say.

MR. BLANCHARD: Right. I'm not asking what it was. It's clear that we can't tell. It says, "unintelligible" ultimately. I'm asking whether he was trying to say something after he said, "I think so."

SA FOX: I would have to listen to the audio.

MR. BLANCHARD: Would you like to listen to it again?

SA FOX: Yeah.

8

MR. BLANCHARD: Okay. <u>Can we play 2 again</u>, please, if that's okay with Your Honor?

THE COURT: Proceed.

MR. BLANCHARD: Thank you.

(<u>Audio was played.</u>)

MR. BLANCHARD: Okay. So he was speaking when Agent Luo interjected -- interrupted him, really, right?

SA FOX: Yeah.

MR. BLANCHARD:  He was trying to explain something; but he wasn't allowed to finish, correct?

SA FOX: I don't know what he was trying to say. I don't know if he was trying to explain something or -- I just don't know.

MR. BLANCHARD: Let's move to Defense Exhibit 3; <u>and if we could, play this one as well</u>.

(<u>Audio was played</u>.)

MR. BLANCHARD: And, Your Honor, could we please move to admit Defense Exhibit 3?

THE COURT: Any objection?

MR. MCINTYRE: No objection, Your Honor.

THE COURT: Admitted.

MR. BLANCHARD: Thank you.

MR. BLANCHARD: <u>Agent Fox this is you talking at the outset of the clip, right</u>?

SA FOX: <u>The clip we listened to, yes</u>.

9

MR. BLANCHARD: And you say, "Wherever you want to go, it's fine," right?

Dkt. No. 240 at 144-145.

MR. BLANCHARD: Okay. Let's go back to Defense Exhibit 3. After you say, Agent Fox, "You're free to," you kind of interrupt yourself and you say, "You don't have to talk to us if you don't want to," right?

SA FOX: Yes.

MR. BLANCHARD: And do you recall was this while you were walking from the parking lot to the clubhouse? And if it helps jog your memory, the header on Defendant's Exhibit 3 is the time interval on the recording, reflecting that this excerpt began a minute and 44 seconds after your recording started?

SA FOX: I think this is before.

Dkt. No. 240 at 152-153.

MR. BLANCHARD: Let's move to Defendant's Exhibit 4, please; and once again, Ms. Akers, if we could, play this.

(Audio was played.)

MR. BLANCHARD: Your Honor, could we replay this one? I think it was a little faint at the beginning.

THE COURT: That's fine.

(Audio was played.)

MR. BLANCHARD: Agent Fox, you're the one speaking at the outset of this clip, right?

SA FOX: Yes.

MR. BLANCHARD: And you say, "If you don't like to talk to us, you don't," right?

SA FOX: Yes.

MR. BLANCHARD: Did you mean to say, "have to"?

SA FOX: No. I just said, "If you don't like to talk to us, you don't have" -- like, you know, it said, "unintelligible." I don't remember what I was trying to say, but that's what I meant.

MR. BLANCHARD: Okay. So you meant to say, "have to"; but you didn't actually say that, did you?

SA FOX: It was kind of muffled.

MR. BLANCHARD: Well, it doesn't say that in the transcript, right?

SA FOX: No, it doesn't say that in the transcript.

Dkt. No. 240 at 155-156.

MR. BLANCHARD: Let's go to Defendant's Exhibit 5, please; and, Ms. Akers, if it's okay with Your Honor, if we could, play this one.

(Audio was played.)

MR. BLANCHARD: So as the exhibit reflects, Agent Fox, this was Agent Diffley asking the question, right?

SA FOX: Uh-huh.

MR. BLANCHARD: But you were present for this, correct?

SA FOX: I was.

MR. BLANCHARD: You'd agree, wouldn't you, that Mr. Yuan's response is essentially nonsensical to the question that was asked, right?

SA FOX: What he -- in terms of he -- I think if I -- he said, like, "We're family, yes."

MR. BLANCHARD: <u>Well, forget the audio</u>. Let's look at the transcript. It says, "You guys all work together in the company as a family?" That's a "yes" or "no" question and, in fact, Mr. Yuan's wife -- well, first of all, do you agree that "UF1" is Ms. Yuan?

SA FOX: Yes.

Dkt. No. 240 at 158-159.

### D. The re-direct examination of Special Agent Fox.

MR. MCINTYRE: Your Honor, <u>I had a few clips I wanted to have my paralegal play if that's okay</u>. It's going -- they're all pretty short. The first one is the longest, but I think it would be helpful to the Court to see the transcript and actually hear the audio.

THE COURT: <u>Well, I had opted out of that; and then defense had three or four.</u> So what are we talking about? Because I've got the transcript and --

MR. MCINTYRE: I understand. I just think it would be -- I think you would get a little more flavor when you actually hear these portions.

THE COURT: How many clips are we talking about?

MR. MCINTYRE: <u>There's nine, but I think they're less than five minutes and I can play them just back-to-back.</u> It shouldn't take more than --

THE COURT: The reason I'm asking it that way is because if you're going to question the witness after each clip and go through them, then it could be another hour.

MR. MCINTYRE: I'm not going to do that.

THE COURT: And I'm not going to permit you to start all over again. All right. <u>Let's go ahead and play them if it's going to be short</u>.

MR. MCINTYRE: I'm always going to go the route that you permit me to go.

(<u>Audio was played.</u>)

MR. MCINTYRE: That's it, Your Honor; but I have a couple of questions for him.

THE COURT: All right. What I'm going to ask of you is to have your operator or yourself indicate where those takeouts exist in the exhibits -- in the exhibits that you have provided to me.

MR. MCINTYRE: Yes, Your Honor.

THE COURT: In other words, give me a page and line number, et cetera, so I can go back and reflect on those as I go through.

MR. MCINTYRE: Yes, Your Honor.

THE COURT: All right. Go ahead.

MR. MCINTYRE: And I think that was nine cuts, right? I don't know if you want it marked. I guess those would be Government's 2 through 10 if you --

THE COURT: You've already offered the document into evidence.

MR. MCINTYRE: Yes.

THE COURT: You're just simply telling me where it is that you are responding to the cross-examination, so I think that's sufficient. And if you want to file it as an official document, that's fine. When I say, "file it as an official document," I mean if you want to file it saying that "These are the responsive takeouts" or whatever word you want to use to Exhibit Number 1, it would be like taking a deposition and saying, "These are the parts that I want to put some emphasis on in redirect examination."

MR. MCINTYRE: Yes.

THE COURT: So that's what I want you to do.

MR. MCINTYRE: All right.

THE COURT: All right. Let's proceed.

MR. MCINTYRE: Thank you.

Dkt. No. 240 at 179-182.

### E. Direct examination of Special Agent Luo.

MR. LOUIS: And we'll ask you questions about it later, but did you -- have you reviewed the transcript of the interview with Mr. Yuan?

SA LUO: I've not reviewed the full transcript.

MR. LOUIS: Okay. Did you review any of it?

SA LUO: I've read some of it, and I've listened to the recording.

MR. LOUIS: And can you confirm that when you listen to it, you can hear the wind howling on the recording?

SA LUO: Yeah, I wouldn't say, "howling"; but you can hear the wind, because it's hard to judge based on the recording device how strong the wind was. But I do remember it was windy that day.

Dkt. No. 240 at 196.

MR. LOUIS: And to your recollection did anyone write a report of the interview of Mr. Yuan?

SA LUO: I don't remember -- I don't remember who wrote it. I -- because he was also recorded, so at occasions we would just get the transcript instead of the report. So I'm not aware of a specific report of the interview.

Dkt. No. 240 at 199.

MR. LOUIS: Okay. And just so we can have a frame of reference, when you say you haven't reviewed the entire transcript, what have you reviewed of that interview so that we can make sure we're on the same page?

SA LUO: <u>Yes, sir, I have reviewed the recording of the interview</u>.

MR. LOUIS: Okay. And when was the last time you did that?

SA LUO: Yesterday.

MR. LOUIS: All right. <u>And so in listening to the recording, you are aware that after that, Agent Fox introduced himself, correct</u>?

SA LUO: Correct, yes.
…
MR. LOUIS: <u>And so in listening to that recording</u>, would it be fair to say very accurate that early on Mr. Yuan had some difficulty understanding the questioning?

SA LUO: Yes.

Dkt. No. 240 at 200-201.

MR. LOUIS: So if you weren't doing that, that transcript may be an issue with respect to some of the things that you summarized. Would that be fair?

SA LUO: Are you talking about this specific transcript?

MR. LOUIS: Yes, sir.

SA LUO: But the way I understand this transcript is -- and please let me know if I'm wrong -- is that when Mr. Yuan, for example, would give an answer in Chinese, that is translated verbatim in addition to whatever summary I provided, which is also transcribed verbatim on this transcript.

MR. LOUIS: You've not reviewed the transcript. <u>You heard the audio. That's what I heard.</u>

SA LUO: Yes, but my understanding of how the transcript was done was that there was also a verbatim translation done of Mr. Yuan's answers provided -- verbal answers from that day.

15

MR. LOUIS: <u>Well, in order for you to be able to give complete and accurate testimony, you would have had to actually listen to that audio, correct?</u>

SA LUO: <u>Yes.</u>

MR. LOUIS: And then review the transcript, correct?

SA LUO: <u>Well, I would say listen to the audio, yeah</u>.

Dkt. No. 240 at 217.

## II. Conclusion.

Exhibit 2, the audio of the transcript, was presented to the Court, numerous excerpts were played, and the witnesses repeatedly answered questions about the recording and otherwise addressed the recording of the interview. The audio recording was, by any reasonable reading of the record, presented to the Court at the May 20, 2026, hearing, and the minute entry of the Court states the exhibit was admitted.

Matters that were in fact presented to the district court are considered part of the record on appeal. *In re Arthur Andersen & Co.*, 621 F.2d 37, 39 (1st Cir. 1980) (citing 16 Wright and Miller, Fed. Prac. & Proc., § 3956, at 386). It is not always the case that a document must have been admitted into evidence in order to be included in the record, but it must have been considered by the court; for instance, in a circumstance where a district judge considers a proffered exhibit and refuses to admit it into evidence. 16A Wright and Miller, Fed. Prac. & Proc. § 3956.1 (5th ed.). The record on appeal includes items presented to the district court and not admitted

into evidence. *Waldorf v. Shuta*, 142 F.3d 601, 620 (3d Cir. 1998) (citing *United States v. Burke*, 781 F.2d 1234, 1246 (7th Cir.1986) (admitting transcripts of audio tapes that were not admitted into evidence, where the audio tapes themselves were played to the jury and admitted); Fed. R. App. P. 10(a)). In *Waldorf*, the Court determined that videotapes shown during trial, but apparently not admitted into evidence, were part of the appellate record because they were presented before the district court and the "videotapes were especially relevant to the issues [the Court] was deciding[.]" *Id*.

The Fifth Circuit has been clear, the district court is obligated to "conform the record to what happened[.]" *United States v. Smith*, 493 F.2d 906, 907 (5th Cir. 1974) (affirming the denial of a motion to "modify parties' stipulations or make new findings of fact after docketing of the appeal in the court of appeals."); *Weathersby v. One Source Mfg. Technology, L.L.C.*, 378 F. App'x 463, 466 (5th Cir. 2010) (Rule 10 exists to ensure the record accurately reflects what actually happened in the district court). The Fifth Circuit has excluded filings "that were not available to the district court" but that does not apply to evidence that was "available for consideration by the district court[.]" *Craig v. Bisignano*, 157 F.4th 773, 775 (5th Cir. 2025).

Yuan's effort to keep the Fifth Circuit from viewing an accurate reflection of what was before this Court is counter to the law and the Rules of Appellate Procedure. This Court should deny his motion to strike.

Respectfully submitted,

AARON F. REITZ
United States Attorney

BY:   */s/ Seth C. Gagliardi*
       SETH C. GAGLIARDI
       S. MARK MCINTYRE
       ROBERT JOHNSON
       CRAIG FEAZEL
       Assistant United States Attorneys

       JOHN A. EISENBERG
       Assistant Attorney General
       National Security Division

BY:   */s/ Fatema Merchant*
       FATEMA MERCHANT
       AARON JENNEN
       Trial Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 27, 2026, I electronically filed the foregoing United States' Supplemental Response to Yuan's Motion to Strike Audio Exhibit for Suppression Hearing using the ECF/CM system for filing and service on all counsel of record.

/s/ *Seth C. Gagliardi*
SETH C. GAGLIARDI
Assistant United States Attorney